ORAL ARGUMENT NOT YET SCHEDULED

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 24-3021**

---

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**MURALI YAMAZULA VENKATA,**
*Defendant-Appellant.*

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

---

**APPENDIX FOR APPELLANT
VOLUME I OF VIII**

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

MATTHEW L. FARLEY
Assistant Federal Public Defender
625 Indiana Ave. NW, Suite 550
Washington, D.C. 20004
(202) 208-7500
Matthew_Farley@fd.org

District Court
Cr. No. 20-066-RDM-2

# Appendix – Volume I
## Table of Contents

### ECF Filings

Docket ........................................................................................ A0001

Indictment ................................................................................. A0044
   03/05/20 [ECF No. 1]

Notice of Public Authority Entrapment Defense ..................... A0065
   12/01/21 [ECF No. 57]

Gov. Motion to Preclude Unavailable Affirmative Defenses ... A0068
   03/07/22 [ECF No. 98]

Gov. Trial Brief ......................................................................... A0083
   03/07/22 [ECF No. 99]

Def. Response to Motion to Preclude ....................................... A0107
   03/14/22 [ECF No. 101]

Gov. Reply in Support of Motion to Preclude .......................... A0120
   03/16/22 [ECF No. 102]

Def. Proposed Jury Instructions ............................................... A0128
   04/01/22 [ECF No. 125]

Gov. Response to Def. Proposed Jury Instructions .................. A0147
   04/02/22 [ECF No. 126]

Def. Reply in Support of Proposed Jury Instructions .............. A0158
   04/04/22 [ECF No. 130]

Def. Notice of Additional Authority ......................................... A0172
   04/05/22 [ECF No. 135]

Def. Notice of Supplemental Authority .................................... A0175
   04/05/22 [ECF No. 137]

Gov. Proposed Jury Instructions ............................................. A0179
    04/06/22 [ECF No. 138]

Proposed Defense Theory of the Case..................................... A0183
    04/06/22 [ECF No. 140]

Revised Proposed Defense Theory of the Case........................ A0186
    04/06/22 [ECF No. 141]

Gov. Response to Def. Proposed Theory of the Case ............... A0188
    04/06/22 [ECF No. 144]

Final Jury Instructions ........................................................... A0192
    04/07/22 [ECF No. 146]

APPEAL,CAT B,CLOSED,STAYED

## U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:20-cr-00066-RDM-2

Case title: USA v. EDWARDS et al                    Date Filed: 03/05/2020

Assigned to: Judge Randolph D. Moss

Appeals court case number: 24-3021

### Defendant (2)

**MURALI YAMAZULA VENKATA**              represented by   **Kamil R. Shields**
                                                          SULLIVAN & CROMWELL LLP
                                                          1700 New York Avenue NW
                                                          Suite 700
                                                          Washington, DC 20006
                                                          202-956-7040
                                                          Email: shieldska@sullcrom.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Pro Bono*

                                                          **Katherine Savarese**
                                                          SULLIVAN & CROMWELL LLP
                                                          125 Broad Street
                                                          Suite 4000
                                                          New York, NY 10004
                                                          212-558-4000
                                                          Email: savaresek@sullcrom.com
                                                          *TERMINATED: 09/20/2025*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Pro Bono*

                                                          **Michelle M. Peterson**
                                                          FEDERAL PUBLIC DEFENDER FOR
                                                          THE DISTRICT OF COLUMBIA
                                                          625 Indiana Avenue, NW
                                                          Suite 550
                                                          Washington, DC 20004
                                                          (202) 208-7500 ext 125
                                                          Fax: (202) 208-7515
                                                          Email: shelli_peterson@fd.org
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Public Defender or*
                                                          *Community Defender Appointment*

                                                          **Tara Ohrtman**

SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Suite 700
Washington, DC 20006
202-956-6936
Email: ohrtmant@sullcrom.com
*TERMINATED: 08/28/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Pro Bono*

**Jared Rosenfeld**
SULLIVAN & CROMWELL LLP
125 Broad Street
Room 2701
New York, NY 10004-2498
212-558-4000
Email: jrosenfeld@maglaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pardis Gheibi**
DOJ-Civ
Civil Division, Federal Programs Branch
1100 L Street NW
Room 11526
Washington, DC 20005
202-305-3246
Email: pardis.gheibi@usdoj.gov
*TERMINATED: 05/08/2023*
*Designation: Pro Bono*

**Sara E. Kropf**
KROPF MOSELEY SCHMITT PLLC
1100 H Street NW
Suite 1220
Washington, DC 20005
202-627-6900
Email: sara@kmlawfirm.com
*TERMINATED: 04/27/2020*
*Designation: Retained*

**Pending Counts**

18:371; CONSPIRACY TO DEFRAUD
THE UNITED STATES; Conspiracy to
Commit Theft of Government Property and
to Defraud the United States
(1)

18:641 and 2; PUBLIC MONEY,
PROPERTY OR RECORDS; Theft of

**Disposition**

4 months incarceration with BOP to run
concurrent with counts 2,11 and 16; 24
months supervised release with the first 8
months as home incarceration to run
concurrently; $296.00 Restitution and
$400.00 special assessment.

4 months incarceration with BOP to run
concurrent with counts 1,11 and 16; 24

| | |
|---|---|
| Government Property and Aiding and Abetting and Causing an Act to be Done (2) | months supervised release with the first 8 months as home incarceration to run concurrently; $296.00 Restitution and $400.00 special assessment. |
| 18:1343; FRAUD BY WIRE, RADIO, OR TELEVISION; Wire Fraud (11) | 4 months incarceration with BOP to run concurrent with counts 1,2, and 16; 24 months supervised release with the first 8 months as home incarceration to run concurrently; $296.00 Restitution and $400.00 special assessment. |
| 18:1028A and 2; FRAUD WITH IDENTIFICATION DOCUMENTS; Aggravated Identity Theft and Aiding and Abetting and Causing an Act to be Done (12) | Dismissed on Defendant's Motion |
| 18:1028A and 2; FRAUD WITH IDENTIFICATION DOCUMENTS; Aggravated Identity Theft and Aiding and Abetting and Causing an Act to be Done (13) | Dismissed on Government's Motion |
| 18:1028A and 2; FRAUD WITH IDENTIFICATION DOCUMENTS; Aggravated Identity Theft and Aiding and Abetting and Causing an Act to be Done (14-15) | Dismissed on Defendant's Motion |
| 18:1519; DESTRUCTION, ALTERATION OR FALSIFICATION OF RECORDS IN FEDERAL INVESTIGATIONS; Destruction of Records (16) | 4 months incarceration with BOP to run concurrent with counts 1,2, and 11; 24 months supervised with the first 8 months as home incarceration to run concurrently; $296.00 Restitution and $400.00 special assessment. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

**USA**                           represented by   **Celia Ruth Choy**
                                                   DOJ-Crm

**A0003**

Appellate Section
950 Pennsylvania Avenue NW
Washington, DC 20530
202-514-2000
Email: celia.choy@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Christine Michelle Macey**
DOJ-USAO
601 D Street NW
Washington, DC 20530
202-252-7058
Email: christine.macey@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Joseph P Cooney**
GASTON & COONEY PLLC
1455 Pennsylvania Ave., NW
Ste 400
20004
Washington, DC 20004
202-657-0012
Email: jpcooney@gastoncooney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Victor R. Salgado**
DOJ-CRM
1301 New York Avenue, NW
10th Floor
Washington, DC 20005
202-353-4580
Email: victor.salgado@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Anne P. McNamara**
DOJ-USAO
District of Columbia
555 4th Street NW
Washington, DC 20530
(202) 809-3502
Email: anne.mcnamara2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**David B. Kent**
VERDI & OGLETREE PLLC

1325 G Street, N.W.
Suite 500
Washington, DC 20005
202-449-7703
Email: dkent@verdiogletree.com
*TERMINATED: 09/27/2021*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/05/2020 | 1 | SEALED INDICTMENT as to CHARLES KUMAR EDWARDS (1) count(s) 1, 2, 3-11, 12-15. MURALI YAMAZULA VENKATA (2) count(s) 1, 2, 11, 12-15, 16. (zed, ) Modified to remove count 16 for defendant (1) pursuant to 15 Motion to Clarify on 3/31/2020 (zed, ). (Entered: 03/06/2020) |
| 03/05/2020 | 2 | MOTION to Seal Case by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachment: # 1 Text of Proposed Order)(zed, ) (Entered: 03/06/2020) |
| 03/06/2020 | 4 | NOTICE OF ATTORNEY APPEARANCE: Sara E. Kropf appearing for MURALI YAMAZULA VENKATA (zed, ) (Entered: 03/06/2020) |
| 03/06/2020 | 5 | MOTION to Effectuate Unsealingby USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (zed, ) (Entered: 03/06/2020) |
| 03/06/2020 | | Arrest of Defendant MURALI YAMAZULA VENKATA (2). (kk) (Entered: 03/09/2020) |
| 03/06/2020 | 9 | Arrest Warrant, dated 3/5/2020, returned executed on 3/6/2020 as to Defendant MURALI YAMAZULA VENKATA (2). (kk) (Entered: 03/09/2020) |
| 03/06/2020 | | ORAL MOTION by USA to Unseal Entire Case as to Defendants CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2). (kk) (Entered: 03/09/2020) |
| 03/06/2020 | | Minute Entry for Initial Appearance and Arraignment as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held before Magistrate Judge Robin M. Meriweather on 3/6/2020 : Oral Motion by USA to Unseal Entire Case as to both defendants, heard and granted. Pleas of Not Guilty entered by Defendant CHARLES KUMAR EDWARDS (1) to Counts 1, 2, 3-11, 12-15 and Defendant MURALI YAMAZULA VENKATA (2) to Counts 1, 2, 11, 12-15 and 16. Status Hearing set before Judge Randolph D. Moss on 3/10/2020 at 10:30 AM in Courtroom 21. Bond Status of Defendants: Defendants released on Personal Recognizance Bond. Releases issued. Court Reporter: FTR Gold - Ctrm. 7; FTR Time Frame: 3:18:01 - 3:49:40. Defense Attorneys: (1): Jonathan Jeffress, (2): Sara Kropf; U.S. Attorney: David Kent and DOJ Attorney: Victor Salgado; Pretrial Officer: Christine Schuck. (kk) Modified to remove count 16 for defendant (1) pursuant to 15 Motion to Clarify on to 3/31/2020 (zed, ). (Entered: 03/09/2020) |
| 03/06/2020 | 11 | ORDER Setting Conditions of Release : Defendant MURALI YAMAZULA VENKATA (2) released on Personal Recognizance Bond, signed by Magistrate Judge Robin M. Meriweather on 3/6/2020. (Attachment: Appearance Bond) (kk) (Entered: 03/09/2020) |
| 03/06/2020 | | Case unsealed as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA pursuant to minute entry on 3/6/2020. (zed, ) (Entered: 03/10/2020) |
| 03/10/2020 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 3/10/2020. Unopposed oral motion by Defendant Edwards for his attorney to be permitted to maintain custody of his passport as opposed to Pretrial Services; HEARD |

| | | |
|---|---|---|
| | | and GRANTED. A further Status Conference is set for 5/1/2020, at 11:15 AM, in Courtroom 21, before Judge Randolph D. Moss. Speedy Trial (XT) as to BOTH DEFENDANTS is tolled in the interest of justice from 3/10/2020 to 5/1/2020. Bond Status of Defendants: Both Defendants remain on Personal Recognizance Bonds; Court Reporter: Jeff Hook; Defense Attorneys: Jonathan Jeffress (1) and Sara E. Kropf (2); U.S. Attorney: David B. Kent. (kt) (Entered: 03/10/2020) |
| 03/13/2020 | 13 | Unopposed MOTION for Protective Order *Governing Discovery* by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Kent, David) (Entered: 03/13/2020) |
| 03/13/2020 | 14 | PROTECTIVE ORDER as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2): Upon consideration of the Government's unopposed motion for a protective order, Dkt. 13, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the parties shall comply with the terms of the stipulated protective order, which the Court adopts in full. See document for details. Signed by Judge Randolph D. Moss on 03/13/2020. (lcrdm2, ) (Entered: 03/13/2020) |
| 03/30/2020 | 15 | MOTION to Clarify *the Docket* by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Kent, David) (Entered: 03/30/2020) |
| 03/30/2020 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2): Upon consideration of the Government's motion to clarify, Dkt. 15, it is hereby ORDERED that the motion is GRANTED. The Clerk of the Court shall revise the docket to reflect that the offense of Destruction of Records in violation of 18 U.S.C. § 1519, as alleged in Count 16 of the Indictment, Dkt. 1 at 19-21, applies only to Defendant Venkata and does not apply to Defendant Edwards. Signed by Judge Randolph D. Moss on 03/30/2020. (lcrdm2, ) (Entered: 03/30/2020) |
| 04/17/2020 | 16 | NOTICE OF ATTORNEY APPEARANCE: Michelle M. Peterson appearing for MURALI YAMAZULA VENKATA (Peterson, Michelle) (Entered: 04/17/2020) |
| 04/27/2020 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): In light of the current public health emergency, it is hereby ORDERED that the status conference scheduled for May 1, 2020 at 11:15 a.m. shall be conducted via teleconference. Signed by Judge Randolph D. Moss on 4/27/2020. (lcrdm1) Modified on 4/28/2020 to add "MINUTE" in front of "ORDER" and add defendant's numbers behind their names (kt). (Entered: 04/27/2020) |
| 04/27/2020 | 17 | NOTICE *OF WITHDRAWAL OF APPEARANCE* by MURALI YAMAZULA VENKATA (Kropf, Sara) (Entered: 04/27/2020) |
| 04/27/2020 | | Attorney update in case as to MURALI YAMAZULA VENKATA (2): Attorney Sara E. Kropf terminated. (kt) (Entered: 04/28/2020) |
| 05/01/2020 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 5/1/2020. All parties, the Defendants, and the Court, appeared via telephone. Both Defendants orally consented to proceed telephonically for today's matter. A further Status Conference is set for 7/20/2020, at 11:00 AM, in Courtroom 21, before Judge Randolph D. Moss. Speedy Trial (XT) as to BOTH DEFENDANTS is tolled in the interest of justice from 5/1/2020 to 7/20/2020. Bond Status of Defendants: Both Defendants remain on Personal Recognizance Bonds; Court Reporter: Jeff Hook; Defense Attorneys: Jonathan Jeffress (1) and Michelle M. Peterson (2); U.S. Attorneys: David B. Kent and Victor R. Salgado. (kt) (Entered: 05/01/2020) |

| | |
|---|---|
| 07/10/2020 | MINUTE ORDER: In light of the current public health emergency and Judge Howell's June 9, 2020 Order, available on the Courts website, it is hereby ORDERED that the status conference originally scheduled for July 20, 2020 in Courtroom 21 shall be conducted telephonically. The parties shall use the same teleconference number and access code previously provided to them. Signed by Judge Randolph D. Moss on 7/10/2020. (lcrdm1) (Entered: 07/10/2020) |
| 07/20/2020 | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 7/20/2020. The parties, and the Defendants, consent to proceeding by telephone. A further Telephonic Status Conference is set for 9/16/2020, at 11:00 AM, before Judge Randolph D. Moss. Speedy Trial (XT) as to BOTH DEFENDANTS is tolled in the interest of justice from 7/20/2020 to 9/16/2020. Bond Status of Defendants: Both Defendants remain on Personal Recognizance Bonds; Court Reporter: Jeff Hook; Defense Attorneys: Jonathan Jeffress (1) and Michelle M. Peterson (2); U.S. Attorneys: David B. Kent and Victor R. Salgado. (kt) (Entered: 07/20/2020) |
| 09/16/2020 | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 9/16/2020. The parties, and the Defendants, consent to proceeding by telephone. A further Telephonic Status Conference is set for 11/17/2020, at 2:00 PM, before Judge Randolph D. Moss. The parties shall utilize the same teleconference number and access code. Speedy Trial (XT) is tolled in the interest of justice from 9/16/2020 to 11/17/2020 as to BOTH Defendants. Bond Status of Defendants: Both Defendants remain on Personal Recognizance Bonds; Court Reporter: Sara Wick; Defense Attorneys: Jonathan Jeffress (1) and Michelle M. Peterson (2); U.S. Attorneys: David B. Kent and Victor R. Salgado. (kt) Modified on 4/28/2021 to add speedy trial language (kt). (Entered: 09/16/2020) |
| 11/12/2020 | Set/Reset Hearings as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): The telephonic Status Conference set for 11/17/2020, at 2:00 PM is RESCHEDULED for 3:00 PM, before Judge Randolph D. Moss. (kt) (Entered: 11/12/2020) |
| 11/17/2020 | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 11/17/2020. All parties consent to proceeding telephonically. Order forthcoming as to Due Process Protections Act that was orally read into the record by the Court. A further Status Conference is set for 1/26/2021, at 10:00 AM, by telephone, before Judge Randolph D. Moss. The parties shall utilize the same teleconference number and access code. Speedy Trial (XT) is tolled in the interest of justice from 11/17/2020 to 1/26/2021 as to BOTH Defendants Bond Status of Defendants: Both Defendants remain on Personal Recognizance Bonds; Court Reporter: Timothy Miller; Defense Attorneys: Jonathan Jeffress (1) and Michelle M. Peterson (2); U.S. Attorneys: David B. Kent and Victor R. Salgado. (kt) Modified on 1/26/2021 to correct typo (kt). Modified on 4/28/2021 to add speedy trial language (kt). (Entered: 11/17/2020) |

**A0007**

| | | |
|---|---|---|
| 11/17/2020 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): Pursuant to the Due Process Protections Act, it is hereby ORDERED that all government counsel shall review their disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, as set forth in Local Criminal Rule 5.1, and comply with those provisions. The failure to comply could result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, continuances, Bar discipline, or any other remedy that is just under the circumstances. Signed by Judge Randolph D. Moss on 11/17/2020. (lcrdm1) (Entered: 11/17/2020) |
| 01/26/2021 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 1/26/2021. All parties consented to proceeding telephonically. A further Telephonic Status Conference is set for 4/28/2021, at 2:00 PM, before Judge Randolph D. Moss. The parties shall utilize the same teleconference number and access code. Bond Status of Defendants: Speedy Trial (XT) is tolled in the interest of justice from 1/26/2021 to 4/28/2021 as to BOTH Defendants. Both Defendants remain on PR Bonds; Court Reporter: Jeff Hook; Defense Attorneys: Jonathan Jeffress (1) and Michelle M. Peterson (2); U.S. Attorneys: David B. Kent and Victor R. Salgado. (kt) Modified on 4/28/2021 to add speedy trial language. (kt). (Entered: 01/26/2021) |
| 01/27/2021 | 30 | Unopposed MOTION for Protective Order *(Supplemental) Governing Discovery* by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Kent, David) (Entered: 01/27/2021) |
| 01/28/2021 | 31 | PROTECTIVE ORDER as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2): Upon consideration of the government's unopposed motion for a supplemental protective order, Dkt. 30 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the parties shall comply with the terms of the supplemental protective order, which the Court adopts in full. See document for details. Signed by Judge Randolph D. Moss on 1/28/2021. (lcrdm2) (Entered: 01/28/2021) |
| 03/26/2021 | 32 | NOTICE OF ATTORNEY APPEARANCE Anne P. McNamara appearing for USA. (McNamara, Anne) (Entered: 03/26/2021) |
| 04/28/2021 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 4/28/2021. Both Defendants consented to proceeding telephonically. A two-week Jury Trial is set to commence on 1/7/2022, at 9:30 AM, in Courtroom 21 before Judge Randolph D. Moss. For the reasons stated on the record, the parties shall file a proposed schedule/joint status report by 5/21/2021. Speedy Trial (XT) is tolled in the interest of justice from 4/28/2021 to 1/7/2022. Bond Status of Defendant: Defendants remain on PR Bonds; Court Reporter: Jeff Hook; Defense Attorneys: Jonathan Jeffress (1) and Michelle M. Peterson (2); U.S. Attorneys: Victor Salgado and Anne McNamara. (kt) (Entered: 04/28/2021) |
| 05/21/2021 | 35 | NOTICE of Proposed Order *Proposed Joint Scheduling Order* by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA (Salgado, Victor) (Entered: 05/21/2021) |
| 05/24/2021 | 36 | SCHEDULING ORDER as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2): Upon consideration of the parties' proposed scheduling order, Dkt. 35 , it is hereby ORDERED that the following schedule shall govern future proceedings in this case: the parties shall file any motions to dismiss, motions alleging a defect in the prosecution or indictment, motions to suppress, or motions to sever on or before October 11, 2021, file any responses thereto on or before October 25, 2021, and |

file any replies on or before November 1, 2021; the parties shall produce any discovery or file any notices pursuant to Fed. R. Crim. P. 16(a)(1)(F) or (G) or 16(b)(1)(B) or (C) on or before October 11, 2021, Defendants shall present any notice of alibi defenses on or before October 11, 2021, and the parties shall file any responses thereto on or before October 25, 2021; the government shall produce any remaining Jencks material on or before December 7, 2021; the parties shall file any motions in limine on or before November 8, 2021, file any responses thereto on or before November 22, 2021, and file any replies on or before December 3, 2021; the parties shall file any unique proposed jury instructions and any proposed voir dire on or before November 8, 2021; the government shall provide defense counsel with its proposed witness and exhibit lists and shall also provide defense counsel with courtesy copies of each marked exhibit on or before December 14, 2021, and defense counsel shall notify the government of any objections to those marked exhibits on or before December 21, 2021; the parties shall submit their positions on the need for any special order governing the case under Local Criminal Rule 57.7(c) on or before December 21, 2021; and the parties shall appear for a final pretrial conference on December 17, 2021, at 9 a.m. in Courtroom 21. Signed by Judge Randolph D. Moss on 5/24/2021. (lcrdm2) (Entered: 05/24/2021)

| | | |
|---|---|---|
| 09/27/2021 | 37 | NOTICE OF ATTORNEY APPEARANCE: Kamil R. Shields appearing for MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 09/27/2021) |
| 09/27/2021 | 38 | Notice of Withdrawal of Appearance as Co-Counsel by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Kent, David) Modified text on 9/29/2021 (zltp). (Entered: 09/27/2021) |
| 09/29/2021 | 39 | MOTION for Leave to Appear Pro Hac Vice Katherine Savarese Filing fee $ 100, receipt number ADCDC-8767273. Fee Status: Fee Paid. by MURALI YAMAZULA VENKATA. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Shields, Kamil) (Entered: 09/29/2021) |
| 09/29/2021 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's Motion for Admission Pro Hac Vice 39 , it is hereby ORDERED that the motion is GRANTED. Katherine M. Savarese is hereby granted leave to appear pro hac vice in this case. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to to LCvR 83.6(a)/LCrR 44.5(a). Click for Instructions**. Signed by Judge Randolph D. Moss on 09/29/2021. (lcrdm2) (Entered: 09/29/2021) |
| 10/06/2021 | 40 | Joint MOTION to Continue *Briefing Schedule and Trial and Waiver of Speedy Trial Rights* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Jeffress, Jonathan) (Entered: 10/06/2021) |
| 10/06/2021 | 41 | MOTION to Exclude Time Under the Speedy Trial Act by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (See docket entry 40 to view document.) (zltp) (Entered: 10/07/2021) |
| 10/07/2021 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): In light of Defendants' joint motion to continue 40 , it is hereby ORDERED that the government shall file a response to Defendants' motion on or before October 14, 2021. Signed by Judge Randolph D. Moss on 10/07/2021. (lcrdm2) (Entered: 10/07/2021) |
| 10/08/2021 | 42 | NOTICE OF ATTORNEY APPEARANCE J.P. Cooney appearing for USA. (Cooney, J.P.) (Entered: 10/08/2021) |

**A0009**

| | | |
|---|---|---|
| 10/08/2021 | [43](#) | RESPONSE by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re [40](#) Joint MOTION to Continue *Briefing Schedule and Trial and Waiver of Speedy Trial Rights* (Salgado, Victor) (Entered: 10/08/2021) |
| 10/11/2021 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): In light of the government's response [43](#) to Defendants' joint motion to continue [40](#) , it is hereby ORDERED that Defendants shall file a reply on or before October 14, 2021. Signed by Judge Randolph D. Moss on 10/11/2021. (lcrdm2) (Entered: 10/11/2021) |
| 10/11/2021 | [44](#) | NOTICE by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA (Salgado, Victor) (Entered: 10/11/2021) |
| 10/13/2021 | [45](#) | NOTICE OF ATTORNEY APPEARANCE: Katherine Savarese appearing for MURALI YAMAZULA VENKATA (Savarese, Katherine) (Entered: 10/13/2021) |
| 10/15/2021 | [47](#) | Joint REPLY in Support by CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re [40](#) Joint MOTION to Continue *Briefing Schedule and Trial and Waiver of Speedy Trial Rights (Redacted)* (Attachments: # [1](#) Redacted Exhibit 1, # [2](#) Redacted Exhibit 2)(Zapf, William) Modified text on 10/15/2021 (zstd). (Entered: 10/15/2021) |
| 10/15/2021 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): Upon consideration of Defendants' motion to continue [40](#) , the government's response [43](#) , and Defendants' reply [47](#) , it is hereby ORDERED that the parties shall appear telephonically for a conference on the motion at 10:00 a.m. on October 20, 2021. The parties can obtain a teleconference number and access code from the deputy clerk prior to the conference. Signed by Judge Randolph D. Moss on 10/15/2021. (lcrdm2) (Entered: 10/15/2021) |
| 10/18/2021 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): Upon consideration of Defendants' sealed motion for leave to file under seal, Dkt. 46 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Defendants' motion and the accompanying exhibits are hereby deemed FILED UNDER SEAL. Signed by Judge Randolph D. Moss on 10/18/2021. (lcrdm2) (Entered: 10/18/2021) |
| 10/20/2021 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Motion Hearing as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 10/20/2021 re: [40](#) and 41 Joint MOTION to Continue *Briefing Schedule and Trial and Waiver of Speedy Trial Rights* filed by CHARLES KUMAR EDWARDS. Both defendants consented to appearing by telephone. Motions held in abeyance. For the reasons stated on the record, the parties shall confer and contact the Courtroom Deputy Clerk to propose and discuss new jury trial dates. A Status Conference is set for 10/25/2021, at 11:30 AM, by telephone, before Judge Randolph D. Moss, to discuss further scheduling and speedy trial. Defendants consented to proceeding by telephone for the status conference, and the parties shall utilize the same teleconference number and access code. Bond Status of Defendants: Defendants remain on PR Bonds; Court Reporter: Jeff Hook; Defense Attorneys: William Zapf (1), Kamil Shields (2), Katherine Savarese (2), and Michelle Peterson (2); U.S. Attorneys: J.P. Cooney, Victor Salgado, and Anne McNamara. (kt) (Entered: 10/20/2021) |
| 10/25/2021 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Telephonic Status Conference as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2) held on 10/25/2021. For the reasons stated on the record, the parties shall file a Joint Status Report by 10/26/2021 to propose a pretrial motions/hearing schedule and a jury trial date. Bond Status of Defendants: Defendants remain on PR Bonds; Court Reporter: Jeff Hook; Defense Attorneys: William Zapf (1), Kamil Shields (2), Katherine |

| | | |
|---|---|---|
| | | Savarese (2), and Michelle Peterson (2); U.S. Attorneys: J.P. Cooney, Victor Salgado, and Anne McNamara. (kt) (Entered: 10/25/2021) |
| 10/26/2021 | 51 | Joint STATUS REPORT *and Motion for Scheduling Order* by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA (Attachments: # 1 Text of Proposed Order)(Cooney, J.P.) (Entered: 10/26/2021) |
| 10/26/2021 | 52 | MOTION for Scheduling Order by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (See docket entry 51 to view document.) (zltp) (Entered: 10/27/2021) |
| 10/27/2021 | 53 | SCHEDULING ORDER as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2): Upon consideration of Defendants' motion to continue 40 , motion for waiver of Speedy Trial rights 41 , and the parties' joint motion for scheduling order 52 , it is hereby ORDERED that the motions are GRANTED in part and DENIED in part. It is further ORDERED that the trial currently scheduled for January 7, 2022, at 9:30 a.m. is VACATED and RESCHEDULED for February 18, 2022, at 9:30 a.m. It is further ORDERED that the scheduling order entered May 24, 2021, *see* Dkt. 36 , is VACATED. The following schedule shall govern future proceedings in this case: the parties shall file any motions to dismiss, motions alleging a defect in the prosecution or indictment, motions to suppress, or motions to sever on or before December 2, 2021, file any responses thereto on or before December 15, 2021, and file any replies on or before December 22, 2021; the parties shall produce any discovery or file any notices pursuant to Fed. R. Crim. P. 16(a)(1)(F) or (G) or 16(b)(1)(B) or (C) on or before December 10, 2021, Defendants shall present any notice of alibi defenses on or before December 1, 2021, and the parties shall file any responses thereto on or before December 14, 2021; the government shall produce any remaining Jencks material on or before January 18, 2022; the parties shall file any motions in limine on or before December 20, 2021, file any responses thereto on or before January 5, 2022, and file any replies on or before January 12, 2022; the parties shall file any unique proposed jury instructions and any proposed voir dire on or before February 1, 2022; the government shall provide defense counsel with its proposed witness and exhibit lists and shall also provide defense counsel with courtesy copies of each marked exhibit on or before January 24, 2022, and defense counsel shall notify the government of any objections to those marked exhibits on or before January 31, 2022; the parties shall submit their positions on the need for any special order governing the case under Local Criminal Rule 57.7(c) on or before February 1, 2022; and the parties shall appear for a final pretrial conference on February 10, 2022, at 10:00 a.m. in Courtroom 21. The pretrial conference set for December 17, 2021 is VACATED. The Court FINDS that, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), the ends of justice served by continuing the trial date from January 7, 2022, to February 18, 2022, outweigh the best interest of the public and the defendant in a speedy trial in light of defense counsel's need for additional time to review the "voluminous discovery" in this matter, the need for recently added counsel to review the relevant materials and to prepare, and the defense expert's need to prepare for trial. *See* Dkt. 40 at 1-2. In light of these considerations, Defendants have "informed their respective counsel that they wish to waive [their Speedy Trial] rights... to accommodate the requested continuance." *Id.* at 1. For these reasons, time shall be excluded through February 18, 2022 under the "ends of justice" exception to the Act. See document for details. Signed by Judge Randolph D. Moss on 10/27/21. (lcrdm2) Modified on 10/27/2021 to vacate December pretrial conference (kt). (Entered: 10/27/2021) |
| 10/27/2021 | | Terminate Deadlines and Hearings as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2). (kt) (Entered: 10/27/2021) |

A0011

| | | |
|---|---|---|
| 10/27/2021 | | Set/Reset Hearings as to CHARLES KUMAR EDWARDS (1) and MURALI YAMAZULA VENKATA (2): Jury Selection/Jury Trial set for 2/18/2022 at 9:30 AM, in Courtroom 20 (Ceremonial Courtroom), before Judge Randolph D. Moss. (kt) (Entered: 10/27/2021) |
| 11/01/2021 | 54 | MOTION for Leave to Appear Pro Hac Vice Kamil Shields Fee Status: No Fee Paid. by MURALI YAMAZULA VENKATA. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Shields, Kamil) (Entered: 11/01/2021) |
| 11/02/2021 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's Motion for Admission Pro Hac Vice 54 , it is hereby ORDERED that the motion is GRANTED. Pardis Gheibi is hereby granted leave to appear pro hac vice in this case. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a). Click for Instructions**. Signed by Judge Randolph D. Moss o n 11/2/2021. (lcrdm2) (Entered: 11/02/2021) |
| 11/04/2021 | 55 | NOTICE OF ATTORNEY APPEARANCE: Pardis Gheibi appearing for MURALI YAMAZULA VENKATA (Gheibi, Pardis) (Entered: 11/04/2021) |
| 12/01/2021 | 57 | NOTICE *of Public Authority Entrapment Defenses* by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 12/01/2021) |
| 12/02/2021 | 59 | MOTION to Dismiss Count *2 for Duplicity* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Chong-Smith, Jade) (Entered: 12/02/2021) |
| 12/02/2021 | 60 | MOTION to Dismiss Count *1 and Counts 3-11 for Lack of Requisite Specificity and/or Failure to State Offenses* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Forrest, Courtney) (Entered: 12/02/2021) |
| 12/02/2021 | 61 | MOTION to Dismiss Count *2 of the Indictment in Part for Alleged Conduct from Outside the Statute of Limitations* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Chong-Smith, Jade) (Entered: 12/02/2021) |
| 12/02/2021 | 62 | MOTION to Dismiss Count *s Alleging Aggravated Identity Theft (Counts 12-15)* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Chong-Smith, Jade) (Entered: 12/02/2021) |
| 12/02/2021 | 63 | MOTION to Dismiss Count *1 and Count 2 of the Indictment in Part for Failure to State an Offense* by CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Zapf, William) (Entered: 12/02/2021) |
| 12/10/2021 | 64 | NOTICE by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA (Salgado, Victor) (Entered: 12/10/2021) |
| 12/15/2021 | 66 | RESPONSE by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re 60 MOTION to Dismiss Count *1 and Counts 3-11 for Lack of Requisite Specificity and/or Failure to State Offenses*, 59 MOTION to Dismiss Count *2 for Duplicity*, 62 MOTION to Dismiss Count *s Alleging Aggravated Identity Theft (Counts 12-15)*, 63 MOTION to Dismiss Count *1 and Count 2 of the Indictment in Part for Failure to State an Offense*, 61 MOTION to Dismiss Count *2 of the Indictment in Part for Alleged Conduct from Outside the Statute of Limitations* (Salgado, Victor) (Entered: 12/15/2021) |
| 12/20/2021 | 67 | MOTION in Limine *To Preclude Use of Term "EDS 2.0"* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA |

| 12/20/2021 | 68 | MOTION to Seal *Portions of Motion in Limine and Entirety of Accompanying Exhibits* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Chong-Smith, Jade) (Entered: 12/20/2021) |
|---|---|---|
| 12/20/2021 | 69 | MOTION in Limine *to Preclude the Government from Presenting Evidence Relating to Computer Access Agreements* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Chong-Smith, Jade) (Entered: 12/20/2021) |
| 12/22/2021 | 71 | REPLY in Support by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re 60 MOTION to Dismiss Count *1 and Counts 3-11 for Lack of Requisite Specificity and/or Failure to State Offenses* (Forrest, Courtney) (Entered: 12/22/2021) |
| 12/22/2021 | 72 | REPLY in Support by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re 62 MOTION to Dismiss Count *s Alleging Aggravated Identity Theft (Counts 12-15)* (Chong-Smith, Jade) (Entered: 12/22/2021) |
| 12/22/2021 | 73 | REPLY in Support by CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re 63 MOTION to Dismiss Count *1 and Count 2 of the Indictment in Part for Failure to State an Offense* (Zapf, William) (Entered: 12/22/2021) |
| 12/22/2021 | 74 | REPLY in Support by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re 59 MOTION to Dismiss Count *2 for Duplicity* (Chong-Smith, Jade) (Entered: 12/22/2021) |
| 12/22/2021 | 75 | REPLY in Support by CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re 61 MOTION to Dismiss Count *2 of the Indictment in Part for Alleged Conduct from Outside the Statute of Limitations* (Chong-Smith, Jade) (Entered: 12/22/2021) |
| 12/30/2021 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's motion for leave to file under seal, Dkt. 70 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Defendants' motion in limine and the accompanying exhibits, Dkt. 70 , are hereby deemed FILED UNDER SEAL. It is further ORDERED that Defendants' motion to seal 68 is DENIED as moot. Signed by Judge Randolph D. Moss on 12/30/2021. (lcrdm2) (Entered: 12/30/2021) |
| 01/03/2022 | 76 | Joint MOTION for Extension of Time to File *Motions in Limine* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Forrest, Courtney) (Entered: 01/03/2022) |
| 01/04/2022 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2): Upon consideration of the parties' motion for extension of time, Dkt. 76 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that motions in limine concerning expert testimony shall be filed on or before January 10, 2022; responses shall be filed on or before January 21, 2022; and replies, if necessary, shall be filed on or before January 28, 2022. It is further ORDERED that the government's response to defendants' non-expert motions in limine shall be filed on or before January 12, 2022, and replies, if necessary, shall be filed on or before January 19, 2022. Signed by Judge Randolph D. Moss on 1/4/2022. (lcrdm2) (Entered: 01/04/2022) |

A0013

| | | |
|---|---|---|
| 01/12/2022 | 78 | RESPONSE by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA re 69 MOTION in Limine *to Preclude the Government from Presenting Evidence Relating to Computer Access Agreements*, 67 MOTION in Limine *To Preclude Use of Term "EDS 2.0"* (Salgado, Victor) (Entered: 01/12/2022) |
| 01/18/2022 | 82 | MOTION for Extension of Time to *deadlines proposed in the Scheduling Order (ECF No. 53)* by MURALI YAMAZULA VENKATA. (Shields, Kamil) (Entered: 01/18/2022) |
| 01/18/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's motion for extension of time, Dkt. 82 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the pre-trial schedule 53 is hereby VACATED and that the following deadlines shall apply: the government shall provide Jencks material on or before January 24, 2022; the parties shall file proposed jury instructions and voir dire on or before February 7, 2022; and the parties shall exchange trial documents on or before January 31, 2022. Signed by Judge Randolph D. Moss on 1/18/2022. (lcrdm2) (Entered: 01/18/2022) |
| 01/24/2022 | 83 | MOTION for Leave to Appear Pro Hac Vice Tara Naoko Ohrtman Fee Status: No Fee Paid. by MURALI YAMAZULA VENKATA. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Shields, Kamil) Modified to correct Pro Hac Vice Attorney on 1/25/2022 (zstd). (Entered: 01/24/2022) |
| 01/25/2022 | 84 | NOTICE OF ATTORNEY APPEARANCE Celia Ruth Choy appearing for USA. (Attachments: # 1 Certificate of Service)(Choy, Celia) (Entered: 01/25/2022) |
| 01/25/2022 | 85 | MOTION to Exclude *Evidence or in the Alternative to Continue Trial* by MURALI YAMAZULA VENKATA. (Shields, Kamil) (Entered: 01/25/2022) |
| 01/25/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): In light of Defendant Venkata's motion to exclude 85 , the Court hereby ORDERS the government to file a response on or before January 28, 2022. It is further ORDERED that the parties shall appear for a status conference on the motion, to occur via Zoom, on January 31, 2022, at 1:00 p.m. Signed by Judge Randolph D. Moss on 1/25/2022. (lcrdm2) (Entered: 01/25/2022) |
| 01/26/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's Motion for Admission Pro Hac Vice 83 , it is hereby ORDERED that the motion is GRANTED. Tara N. Ohrtman is hereby granted leave to appear pro hac vice in this case. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a). Click for Instructions** Signed by Judge Randolph D. Moss on 1/26/2022. (lcrdm2) (Entered: 01/26/2022) |
| 01/26/2022 | | Set/Reset Hearings as to MURALI YAMAZULA VENKATA (2): Status Conference set for 1/31/2022, at 1:00 PM, by video, before Judge Randolph D. Moss. (kt) (Entered: 01/26/2022) |
| 01/28/2022 | 86 | NOTICE OF ATTORNEY APPEARANCE: Tara Ohrtman appearing for MURALI YAMAZULA VENKATA (Ohrtman, Tara) (Entered: 01/28/2022) |
| 01/28/2022 | 87 | RESPONSE by USA as to MURALI YAMAZULA VENKATA re 85 MOTION to Exclude *Evidence or in the Alternative to Continue Trial* (Cooney, J.P.) Modified text to remove unassociated defendant on 1/31/2022 (zltp). (Entered: 01/28/2022) |
| 01/31/2022 | 89 | TRANSCRIPT OF TELEPHONIC MOTION HEARING in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on October 20, 2021. Page Numbers: 1 - 22. Date of Issuance: January 31, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/21/2022. Redacted Transcript Deadline set for 3/3/2022. Release of Transcript Restriction set for 5/1/2022.(Hook, Jeff) (Entered: 01/31/2022)

| 01/31/2022 | 90 | TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on October 25, 2021. Page Numbers: 1 - 18. Date of Issuance: January 31, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/21/2022. Redacted Transcript Deadline set for 3/3/2022. Release of Transcript Restriction set for 5/1/2022.(Hook, Jeff) (Entered: 01/31/2022) |
| 01/31/2022 |  | Minute Entry for proceedings held before Judge Randolph D. Moss: Video (Zoom) Status Conference as to MURALI YAMAZULA VENKATA (2) held on 1/31/2022. Defendant consented to proceeding by video. For the reasons stated on the record, Defendant's 85 MOTION to Exclude Evidence or in the Alternative to Continue Trial is GRANTED IN PART and DENIED IN PART. The Government shall provide the forensic images within 3 days from today. Any Motions in Limine are now due by 3/7/2022; Any Oppositions are due by 3/14/2022; Any Replies are due by 3/16/2022. Proposed Voir Dire, Proposed Jury Instructions, and Pretrial Statement due by 3/7/2022. Exhibit lists due by 2/28/2022. The Pretrial Conference set for 2/10/2022 is VACATED and RESCHEDULED for 3/21/2022, at 2:00 PM, by video, before Judge Randolph D. Moss. The parties shall use the same link for connecting to the hearing. The Jury Selection/Jury Trial set for 2/18/2022 is VACATED and RESCHEDULED for 3/28/2022, at 9:30 AM, in the Ceremonial Courtroom, before Judge Randolph D. Moss. Trial is expected to last 1.5 weeks. Speedy Trial (XT) is tolled in the interest of justice from 2/18/2022 to 3/28/2022. Bond Status of Defendant: PR Bond; Court Reporter: Janice Dickman; Defense Attorneys: Michelle Peterson, Kamil Shields, Katherine Savarese, Pardis Gheibi, and Tara Ohrtman; U.S. Attorneys: J.P. Cooney, Victor Salgado, and Celia Choy. (kt) (Entered: 01/31/2022) |

| | | |
|---|---|---|
| 02/02/2022 | | Payment for 83 MOTION for Leave to Appear Pro Hac Vice Kamil R. Shields Fee Status: No Fee Paid. by MURALI YAMAZULA VENKATA. Receipt # 201454 ($100) (zltp) (Entered: 02/03/2022) |
| 03/02/2022 | 91 | NOTICE OF ATTORNEY APPEARANCE Christine Michelle Macey appearing for USA. (Attachments: # 1 Certificate of Service)(Macey, Christine) (Entered: 03/02/2022) |
| 03/06/2022 | 92 | NOTICE *OF RESPONSE TO DEFENDANT'S NOTICE OF INTENT TO ASSERT A PUBLIC AUTHORITY DEFENSE* by USA as to MURALI YAMAZULA VENKATA re 57 Notice (Other) (Attachments: # 1 Notice to Counsel/Party)(Macey, Christine) (Entered: 03/06/2022) |
| 03/07/2022 | 93 | STATEMENT OF CASE by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 03/07/2022) |
| 03/07/2022 | 94 | Proposed Voir Dire by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 03/07/2022) |
| 03/07/2022 | 95 | Proposed Jury Instructions by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 03/07/2022) |
| 03/07/2022 | 97 | Proposed Jury Instructions by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 03/07/2022) |
| 03/07/2022 | 98 | MOTION in Limine *to Preclude Unavailable Affirmative Defenses* by USA as to MURALI YAMAZULA VENKATA. (Choy, Celia) (Entered: 03/07/2022) |
| 03/07/2022 | 99 | TRIAL BRIEF by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 03/07/2022) |
| 03/08/2022 | 100 | NOTICE *OF REQUEST FOR ORAL ARGUMENT ON MOTIONS TO DISMISS* by MURALI YAMAZULA VENKATA (Gheibi, Pardis) (Entered: 03/08/2022) |
| 03/14/2022 | 101 | RESPONSE by MURALI YAMAZULA VENKATA re 98 MOTION in Limine *to Preclude Unavailable Affirmative Defenses* (Shields, Kamil) (Entered: 03/14/2022) |
| 03/15/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's notice of request for oral argument, Dkt. 100 , the Court will hear argument on the pending motions to dismiss at the pretrial conference on March 21, 2022. Signed by Judge Randolph D. Moss on 3/15/2022. (lcrdm2) (Entered: 03/15/2022) |
| 03/16/2022 | 102 | REPLY in Support by USA as to MURALI YAMAZULA VENKATA re 98 MOTION in Limine *to Preclude Unavailable Affirmative Defenses* (Choy, Celia) (Entered: 03/16/2022) |
| 03/18/2022 | 104 | ORDER as to MURALI YAMAZULA VENKATA (2): The parties are hereby ORDERED to review the draft voir dire provided herein. See document for details. Signed by Judge Randolph D. Moss on 3/18/2022.(lcrdm2) (Entered: 03/18/2022) |
| 03/21/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Video (Zoom) Pretrial Conference as to MURALI YAMAZULA VENKATA (2) held on 3/21/2022. Defendant consented to proceeding by video. Defendant's 59 Motion to Dismiss Count 2 for Duplicity; HEARD and GRANTED IN PART and DENIED IN PART, without prejudice. Defendant's 60 Motion to Dismiss Count 1 and Counts 3-11 for Lack of Requisite Specificity and/or Failure to State Offenses; HEARD and DENIED for the reasons stated on the record. Defendant's 61 Motion to Dismiss Count 2 of the Indictment in Part for Alleged Conduct from Outside the Statute of Limitations; HEARD and DENIED IN PART and GRANTED IN PART. Defendant's 62 Motion to Dismiss Count s Alleging Aggravated Identity Theft (Counts 12-15); HEARD and HELD IN |

| | | |
|---|---|---|
| | | ABEYANCE. Further supplementation by Defendant re: [62] is due by tomorrow; Government's response, if any, due by midday Wednesday. Defendant's [63] Motion to Dismiss Count 1 and Count 2 of the Indictment in Part for Failure to State an Offense; HEARD and DENIED without prejudice, for the reasons stated on the record. Any supplemental filings due no later than midday Wednesday. Defendant's [67] Motion in Limine To Preclude Use of Term "EDS 2.0" is WITHDRAWN. Defendant's [69] Motion in Limine to Preclude the Government from Presenting Evidence Relating to Computer Access Agreements, and 77 Sealed Motion in Limine are DENIED, for the reasons stated on the record. Defendant's [98] Motion in Limine to Preclude Unavailable Affirmative Defenses is GRANTED TENTATIVELY and DEFERRED IN PART, for the reasons stated on the record. Witness Lists are due by 3/25/2022. Bond Status of Defendant: PR Bond; Court Reporter: Jeff Hook; Defense Attorneys: Kamil Shields, Katherine Savarese, Pardis Gheibi, Tara Ohrtman, and Michelle Peterson; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey. (kt) (Entered: 03/21/2022) |
| 03/22/2022 | [105] | Supplemental MOTION to Dismiss Count *Alleging Aggravated Identity Theft (Counts 12-15)* by MURALI YAMAZULA VENKATA. (Gheibi, Pardis) (Entered: 03/22/2022) |
| 03/23/2022 | [106] | RESPONSE by USA as to MURALI YAMAZULA VENKATA re [105] Supplemental MOTION to Dismiss Count *Alleging Aggravated Identity Theft (Counts 12-15)* (Choy, Celia) (Entered: 03/23/2022) |
| 03/23/2022 | [107] | Supplemental MOTION to Dismiss Count *Two of the Indictment for Failure to State an Offense* by MURALI YAMAZULA VENKATA. (Shields, Kamil) (Entered: 03/23/2022) |
| 03/23/2022 | [108] | SUPPLEMENT by USA as to MURALI YAMAZULA VENKATA re [107] Supplemental MOTION to Dismiss Count *Two of the Indictment for Failure to State an Offense* (Salgado, Victor) (Entered: 03/23/2022) |
| 03/24/2022 | [109] | MOTION to Strike *Exhibits Provided After Deadline* by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 03/24/2022) |
| 03/25/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): In light of Defendant's motion to strike, Dkt. [109] , the parties are hereby ORDERED to appear for a status conference at 2:00 p.m. today, March 25, 2022, to occur via Zoom. The parties are directed to use the same Zoom login information as previously provided. Any questions for the Courtroom Deputy Clerk regarding the status conference should be sent to Moss_Chambers@dcd.uscourts.gov. Signed by Judge Randolph D. Moss on 3/25/2022. (lcrdm2) (Entered: 03/25/2022) |
| 03/25/2022 | | Minute Entry for Video Status Conference proceeding held before Judge Randolph D. Moss as to MURALI YAMAZULA VENKATA (2) on 3/25/2022. Defense Brief regarding late exhibits due by 3/25/2022. Government's Response to [109] Motion to Strike due by 5pm on 3/27/2022. Jury Trial remains scheduled for 3/28/2022 at 9:30 A.M. Bond Status of Defendant: Continued on Personal Recognizance Bond/Appeared by Video. US Attorneys: Victor Salgado, Celia Choy and Christine Macey. Defense Attorneys: Kamil Shields, Pardis Gheibi, Katherine Savarese, Tara Ohrtman and Michelle Peterson. Court Reporter: Jeff Hook. (smc) (Entered: 03/25/2022) |
| 03/26/2022 | [110] | MEMORANDUM OPINION and ORDER as to MURALI YAMAZULA VENKATA (2): For the reasons stated in the attached Memorandum Opinion and Order, Defendant's motion to dismiss Counts 12-15 of the indictment for failure to state an offense, Dkt. [62] ; Dkt. [105] , is DENIED. The Court further ORDERS that Defendant's supplemental motion to dismiss three of the four aggravated identity theft counts, Dkt. [105] , shall be held in ABEYANCE pending further briefing from the parties. It is further ORDERED that the parties shall submit supplemental briefs on the multiplicity issue on or before April 1, |

| | | |
|---|---|---|
| | | 2022. See document for details. Signed by Judge Randolph D. Moss on 3/26/2022. (lcrdm2) (Entered: 03/26/2022) |
| 03/26/2022 | 111 | ORDER as to MURALI YAMAZULA VENKATA (2): For the reasons stated in the attached Order, it is hereby ORDERED that Defendant's supplemental motion to dismiss Count 2 of the indictment, Dkt. 107 , is DENIED. See document for details. Signed by Judge Randolph D. Moss on 3/26/2022. (lcrdm2) (Entered: 03/26/2022) |
| 03/26/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): The Court notes that the deadline for the parties to submit lists of potential witnesses and other persons who may be mentioned during trial was March 25, 2022. *See* Minute Entry (Mar. 21, 2022). The parties have not yet filed such lists, however, which are necessary for voir dire. Accordingly, it is hereby ORDERED that the parties' shall file their respective lists of potential witnesses and other persons who may be mentioned at trial on or before Sunday, March 27, 2022, at 12:00 p.m. Signed by Judge Randolph D. Moss on 3/26/2022. (lcrdm2) (Entered: 03/26/2022) |
| 03/26/2022 | 112 | NOTICE *United States' List of Names for Voir Dire* by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 03/26/2022) |
| 03/26/2022 | 113 | TRIAL ORDER as to MURALI YAMAZULA VENKATA (2): The parties are instructed to comply with the directives set forth in the attached Trial Order. See document for details. Signed by Judge Randolph D. Moss on 3/26/2022.(lcrdm2) (Entered: 03/26/2022) |
| 03/26/2022 | 114 | NOTICE *of Defendant Venkata's List of Names for Voir Dire* by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 03/26/2022) |
| 03/26/2022 | 115 | ORDER as to MURALI YAMAZULA VENKATA (2): The parties are hereby ORDERED to review the draft preliminary jury instructions for comment provided herein. The parties will be permitted to suggest revisions, if any, on the record or by filing a notice with the court on or before Monday, March, 28, 2022 at 5:00 p.m. Signed by Judge Randolph D. Moss on 3/26/2022.(lcrdm2) (Entered: 03/26/2022) |
| 03/27/2022 | 116 | Memorandum in Opposition by USA as to MURALI YAMAZULA VENKATA re 109 MOTION to Strike *Exhibits Provided After Deadline* (Attachments: # 1 Exhibit Email from Choy to Shields dated 2-28-22)(Choy, Celia) (Entered: 03/27/2022) |
| 03/27/2022 | 118 | STIPULATION by USA (Attachments: # 1 Exhibit)(Salgado, Victor) (Entered: 03/27/2022) |
| 03/28/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Selection as to MURALI YAMAZULA VENKATA (2) begun and held on 3/28/2022, on Counts 1, 2, 11, 12-15, and 16. Twelve (12) jurors and two (2) alternates selected, but not sworn. Jury Selection continued to 3/29/2022, at 9:00 AM, in Courtroom 8, before Judge Randolph D. Moss, when jury will be sworn. Jury Trial set for 3/29/2022, at 9:00 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and William Zaremba (PM); Defense Attorneys: Kamil Shields, Katherine Savarese, Michelle Peterson, Pardis Gheibi, and Tara Ohrtman; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey. (kt) (Entered: 03/28/2022) |
| 03/29/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) begun and held on 3/29/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Jury Selection concluded; Jury sworn. Jury Trial continued to 3/30/2022, at 9:15 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and Nancy Meyer (PM); Defense Attorneys: Kamil Shields, Katherine Savarese, and Pardis Gheibi; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine |

A0018

| | | |
|---|---|---|
| | | Macey; Government Witnesses: Chad Steel (begun and continued), Charles Kumar Edwards (begun and continued). (kt) (Entered: 03/29/2022) |
| 03/30/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) resumed and held on 3/30/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Jury Trial continued to 3/31/2022, at 9:15 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and William Zaremba (PM); Defense Attorneys: Kamil Shields, Katherine Savarese, and Tara Ohrtman; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey; Government Witnesses: Charles Edwards (resumed and concluded), Christopher Lowder (begun and concluded).(kt) (Entered: 03/30/2022) |
| 03/31/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) resumed and held on 3/31/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Defendant shall file his proposed final jury instructions by end of day tomorrow. Jury Trial continued to 4/1/2022, at 10:00 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and Nancy Meyer (PM); Defense Attorneys: Kamil Shields, Katherine Savarese, Tara Ohrtman, and Pardis Gheibi; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey; Government Witnesses: Scott Balfour (begun and concluded), Michael Carlson (begun and concluded), Brea Ulbright (begun and concluded), Kenneth Cleevely (begun and concluded), Peter Paradis (begun and concluded), and David Reynolds (begun and continued). (kt) (Entered: 03/31/2022) |
| 04/01/2022 | 123 | RESPONSE TO ORDER OF THE COURT by USA as to MURALI YAMAZULA VENKATA re 110 Memorandum Opinion,,, Set Deadlines,, (Salgado, Victor) (Entered: 04/01/2022) |
| 04/01/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) resumed and held on 4/1/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Jury Trial continued to 4/4/2022, at 10:00 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and William Zaremba (PM); Defense Attorneys: Kamil Shields, Katherine Savarese, and Pardis Gheibi; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey; Government Witnesses: David Reynolds (resumed and concluded), Narasimha Ambati (begun and concluded), Judy Kuo (begun and concluded), Lillian Morales (begun and concluded), and Chad Steel (resumed and continued). (kt) (Entered: 04/01/2022) |
| 04/01/2022 | 124 | Supplemental MOTION to Dismiss Count *Alleging Aggravated Identity Theft* by MURALI YAMAZULA VENKATA. (Gheibi, Pardis) (Entered: 04/01/2022) |
| 04/01/2022 | 125 | Proposed Jury Instructions by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 04/01/2022) |
| 04/02/2022 | 126 | RESPONSE by USA as to MURALI YAMAZULA VENKATA re 125 Proposed Jury Instructions (Choy, Celia) (Entered: 04/02/2022) |
| 04/02/2022 | 127 | RESPONSE TO ORDER OF THE COURT by USA as to MURALI YAMAZULA VENKATA re Jury Trial,,,, Set Hearings,, *Procedure regarding 1028A Counts* (Choy, Celia) (Entered: 04/02/2022) |
| 04/03/2022 | 128 | MOTION for Leave to Appear Pro Hac Vice Jared H. Rosenfeld Fee Status: No Fee Paid. by MURALI YAMAZULA VENKATA. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Shields, Kamil) (Entered: 04/03/2022) |

A0019

| | | |
|---|---|---|
| 04/03/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's Motion for Admission Pro Hac Vice 128 , it is hereby ORDERED that the motion is GRANTED. Jared H. Rosenfeld is hereby granted leave to appear pro hac vice in this case. **Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a). Click for Instructions**. Signed by Judge Randolph D. Moss on 4/3/2022. (lcrdm2) Modified on 4/3/2022 (lcrdm2). (Entered: 04/03/2022) |
| 04/03/2022 | 129 | ENTERED IN ERROR.....Proposed Jury Instructions by MURALI YAMAZULA VENKATA (Ohrtman, Tara) Modified on 4/4/2022 (zstd). (Entered: 04/03/2022) |
| 04/03/2022 | | NOTICE OF ERROR as to MURALI YAMAZULA VENKATA regarding 129 Proposed Jury Instructions. The following error(s) was corrected: The correct entry is DE #130. (zstd) (Entered: 04/04/2022) |
| 04/04/2022 | 130 | REPLY by MURALI YAMAZULA VENKATA re 126 Response to document *Response by USA to Defendant's Proposed Jury Instructions* (Ohrtman, Tara) (Entered: 04/04/2022) |
| 04/04/2022 | 131 | NOTICE OF ATTORNEY APPEARANCE: Jared Rosenfeld appearing for MURALI YAMAZULA VENKATA (Rosenfeld, Jared) (Entered: 04/04/2022) |
| 04/04/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) resumed and held on 4/4/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Oral motion by Defendant for Rule 29 Judgment of Acquittal; HEARD and RESERVED on by the Court. Jury Trial continued to 4/5/2022, at 9:30 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and Nancy Meyer (PM); Defense Attorneys: Kamil Shields, Katherine Savarese, Tara Ohrtman, Pardis Gheibi, and Jared Rosenfeld; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey; Government Witness: Chad Steel (resumed and concluded). (kt) (Entered: 04/04/2022) |
| 04/04/2022 | 132 | RESPONSE TO ORDER OF THE COURT by USA as to MURALI YAMAZULA VENKATA re Jury Trial,,, Set Hearings,, *Rule 29 Motions and Jury Instruction on Aiding and Abetting* (Choy, Celia) (Entered: 04/04/2022) |
| 04/04/2022 | 133 | NOTICE *of Authority* by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 04/04/2022) |
| 04/04/2022 | | Payment for 128 MOTION for Leave to Appear Pro Hac Vice Jared H. Rosenfeld Fee Status: Fee Paid, Receipt no. 201861 by MURALI YAMAZULA VENKATA. ($100) (zltp) (Entered: 04/18/2022) |
| 04/05/2022 | 134 | NOTICE *OF AUTHORITY* by USA as to MURALI YAMAZULA VENKATA re 133 Notice (Other) (Macey, Christine) (Entered: 04/05/2022) |
| 04/05/2022 | 135 | NOTICE *of Additional Authority* by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 04/05/2022) |
| 04/05/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) resumed and held on 4/5/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Jury Trial continued to 4/6/2022, at 10:00 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and William Zaremba (PM); Defense Attorneys: Kamil Shields,, Tara Ohrtman, Pardis Gheibi, and Jared Rosenfeld; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey; Defendant Witnesses: Murali Nataraj (begun and concluded), Russell Barbee (begun and |

| | | |
|---|---|---|
| | | concluded), Michael Horton, Jr. (begun and concluded); and Sonal Patel (begun and concluded). (kt) (Entered: 04/05/2022) |
| 04/05/2022 | 136 | ORDER as to MURALI YAMAZULA VENKATA (2): The parties are hereby ORDERED to review the draft final jury instructions provided herein. See document for details. Signed by Judge Randolph D. Moss on 4/5/2022. (Attachments: # 1 Appendix Draft Final Jury Instructions) (lcrdm2) (Entered: 04/05/2022) |
| 04/05/2022 | 137 | NOTICE *of Supplemental Authority Concerning A Jury Instruction on Willful Blindness* by MURALI YAMAZULA VENKATA (Rosenfeld, Jared) (Entered: 04/05/2022) |
| 04/06/2022 | 138 | Proposed Jury Instructions by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 04/06/2022) |
| 04/06/2022 | 139 | NOTICE *of Additional Authority* by MURALI YAMAZULA VENKATA (Gheibi, Pardis) (Entered: 04/06/2022) |
| 04/06/2022 | 140 | NOTICE *of Filing* by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 04/06/2022) |
| 04/06/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) resumed and held on 4/6/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Jury Trial continued to 4/7/2022, at 10:30 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporters: Jeff Hook (AM) and Nancy Meyer (PM); Defense Attorneys: Kamil Shields,, Tara Ohrtman, Pardis Gheibi, Jared Rosenfeld, and Katherine Savarese; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey. (kt) (Entered: 04/06/2022) |
| 04/06/2022 | 141 | NOTICE *of Filing* by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 04/06/2022) |
| 04/06/2022 | 142 | ORDER as to MURALI YAMAZULA VENKATA (2): The parties are hereby ORDERED to review the draft verdict form for comment provided herein. See document for details. Signed by Judge Randolph D. Moss on 4/6/2022. (Attachments: # 1 Appendix Draft Verdict Form) (lcrdm2) (Entered: 04/06/2022) |
| 04/06/2022 | 143 | ORDER as to MURALI YAMAZULA VENKATA (2): The parties are hereby ORDERED to review the final jury instructions for comment provided herein. See document for details. Signed by Judge Randolph D. Moss on 4/6/2022. (Attachments: # 1 Appendix Final Jury Instructions) (lcrdm2) (Entered: 04/06/2022) |
| 04/06/2022 | 144 | RESPONSE by USA as to MURALI YAMAZULA VENKATA re 141 Notice (Other) *of Filing of Defendant's Proposed Theory of the Case Instruction* (Choy, Celia) (Entered: 04/06/2022) |
| 04/07/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Trial as to MURALI YAMAZULA VENKATA (2) resumed and concluded on 4/7/2022, on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors and two (2) alternates. Two (2) alternate jurors excused. Jury Deliberation begun and continued to 4/8/2022, at 1:30 PM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporter: Jeff Hook; Defense Attorneys: Kamil Shields, Tara Ohrtman, Pardis Gheibi, and Jared Rosenfeld; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey. (Jury Note: 1). (kt) (Entered: 04/07/2022) |
| 04/07/2022 | 145 | ATTORNEYS' JOINT ACKNOWLEDGMENT OF TRIAL EXHIBITS as to MURALI YAMAZULA VENKATA (2). (kt) (Entered: 04/07/2022) |

A0021

| 04/07/2022 | 146 | FINAL Jury Instructions as to MURALI YAMAZULA VENKATA (2). "Let It Be Filed", Signed by Judge Randolph D. Moss on 4/7/2022. (kt) (Entered: 04/07/2022) |
| --- | --- | --- |
| 04/07/2022 | 147 | EXHIBIT LIST by USA as to MURALI YAMAZULA VENKATA (2). (kt) (Entered: 04/07/2022) |
| 04/07/2022 | 148 | EXHIBIT LIST by MURALI YAMAZULA VENKATA (2). (kt) (Entered: 04/07/2022) |
| 04/07/2022 | 149 | Jury Note (1) as to MURALI YAMAZULA VENKATA (2). (kt) (Entered: 04/07/2022) |
| 04/07/2022 | 150 | **Signature Page of Foreperson** as to MURALI YAMAZULA VENKATA (2) in Jury Note (1). (Access to the PDF Document is restricted pursuant to the E-Government Act. Access is limited to Counsel of Record and the Court.) (zkt) (Entered: 04/07/2022) |
| 04/08/2022 | | MINUTE ORDER: The Court having impaneled the jury in this action, it is hereby ORDERED that during trial and deliberations all meals for said jury shall be paid by the Clerk of the Court for the U.S. District Court for the District of Columbia. A pproved by Judge Randolph D. Moss on 4/8/2022. (kt) (Entered: 04/08/2022) |
| 04/08/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Video (Zoom) Status Conference as to MURALI YAMAZULA VENKATA (2) held on 4/8/2022. For the reasons discussed on the record, the jury will not deliberate today. Jury Deliberation to resume on 4/11/2022, at 9:30 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporter: Jeff Hook; Defense Attorneys: Kamil Shields, Pardis Gheibi, Michelle Peterson, and Tara Ohrtman.; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey. (kt) (Entered: 04/08/2022) |
| 04/11/2022 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Jury Deliberation as to MURALI YAMAZULA VENKATA (2) resumed and concluded on 4/11/2022 on Counts 1, 2, 11, 12-15, and 16, with same twelve (12) jurors. JURY VERDICT: Guilty on Counts 1, 2, 11, 13, and 16. All twelve (12) jurors discharged. Exhibits returned to counsel. For the reasons stated on the record, the parties shall file a Joint Status Report by 4/14/2022. REFERRAL TO PROBATION OFFICE for Presentence Investigation Report as to MURALI YAMAZULA VENKATA (2). Government's Sentencing Memorandum due by 6/13/2022; Defendant's Sentencing Memorandum due by 6/20/2022. Sentencing is set for 6/27/2022, at 10:00 AM, in Courtroom 8, before Judge Randolph D. Moss. Bond Status of Defendant: PR Bond; Court Reporter: Jeff Hook; Defense Attorneys: Kamil Shields, Pardis Gheibi, and Tara Ohrtman; U.S. Attorneys: Victor Salgado, Celia Choy, and Christine Macey. (Jury Note: 1). (kt) Modified on 5/13/2022 to edit guilty counts 12-15 to just 13 per verdict form (kt). Modified on 5/13/2022 (zkt). (Entered: 04/11/2022) |
| 04/11/2022 | 152 | Jury Note (1) as to MURALI YAMAZULA VENKATA (2). (kt) (Entered: 04/11/2022) |
| 04/11/2022 | 153 | **Signature Page of Foreperson** as to MURALI YAMAZULA VENKATA (2) in Jury Note (1). (Access to the PDF Document is restricted pursuant to the E-Government Act. Access is limited to Counsel of Record and the Court.) (zkt) (Entered: 04/11/2022) |
| 04/11/2022 | 154 | VERDICT FORM as to MURALI YAMAZULA VENKATA (2). (kt) (Entered: 04/11/2022) |
| 04/11/2022 | 155 | **Signature Page of Foreperson** as to MURALI YAMAZULA VENKATA (2) in Jury Verdict. (Access to the PDF Document is restricted pursuant to the E-Government Act. Access is limited to Counsel of |

Record and the Court.) (Zkt) (Entered: 04/11/2022)

| | | |
|---|---|---|
| 04/14/2022 | 157 | Joint STATUS REPORT by MURALI YAMAZULA VENKATA (Shields, Kamil) (Entered: 04/14/2022) |
| 04/15/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of the parties' joint status report, Dkt. 157 , it is hereby ORDERED that the following schedule shall govern post-trial motions in this matter: (1) Defendant's Rule 29 and Rule 33 motions shall be due on or before May 13, 2022; (2) the government's response shall be due on or before May 27, 2022; and (3) Defendant's reply shall be due on or before June 3, 2022. Signed by Judge Randolph D. Moss on 4/15/2022. (lcrdm2) (Entered: 04/15/2022) |
| 04/25/2022 | 159 | NOTICE *OF DISCOVERY* by USA as to MURALI YAMAZULA VENKATA (Attachments: # 1 Notice to Counsel/Party)(Macey, Christine) (Entered: 04/25/2022) |
| 05/12/2022 | 162 | MOTION for Extension of Time to File *Rule 29 and Rule 33 Motions* by MURALI YAMAZULA VENKATA. (Shields, Kamil) (Entered: 05/12/2022) |
| 05/13/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's consent motion for extension of time, Dkt. 162 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED Defendant's Rule 29 and Rule 33 motions shall be due on or before May 20, 2022; (2) the government's response shall be due on or before June 3, 2022; and (3) Defendant's reply shall be due on or before June 10, 2022. Signed by Judge Randolph D. Moss on 5/13/2022. (lcrdm2) (Entered: 05/13/2022) |
| 05/20/2022 | 163 | MOTION to Withdraw as Attorney by Jade Chong-Smith. by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Forrest, Courtney) (Entered: 05/20/2022) |
| 05/20/2022 | 166 | MOTION pursuant to Rule 33 for new trial by MURALI YAMAZULA VENKATA. (Attachments: # 1 Memorandum in Support of Defendant's Motion for Acquittal and New Trial, # 2 Text of Proposed Order)(Shields, Kamil) (Entered: 05/20/2022) |
| 05/25/2022 | 168 | Consent MOTION for Extension of Time to File Response/Reply *to Rule 29 & 33 Motions and to Adjourn Sentencing* by USA as to MURALI YAMAZULA VENKATA. (Choy, Celia) (Entered: 05/25/2022) |
| 05/27/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's consent motion for extension of time, Dkt. 168 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED the government's response to Defendant's Rule 29 and Rule 33 motions shall be due on or before June 10, 2022; (2) Defendant's reply shall be due on or before June 24, 2022; and the sentencing currently set for June 27, 2022, is hereby VACATED and RESCHEDULED for August 15, 2022, at 9:00 a.m, in Courtroom 8. The government's sentencing memoranda shall be due on or before July 29, 2022, and Defendants sentencing memoranda shall be due on or before August 8, 2022. Signed by Judge Randolph D. Moss on 5/27/2022. (lcrdm2) (Entered: 05/27/2022) |
| 06/10/2022 | 169 | RESPONSE by USA as to MURALI YAMAZULA VENKATA re 166 MOTION pursuant to Rule 33 for new trial (Salgado, Victor) (Entered: 06/10/2022) |
| 06/25/2022 | 170 | REPLY TO OPPOSITION to Motion by MURALI YAMAZULA VENKATA re 166 MOTION pursuant to Rule 33 for new trial (Shields, Kamil) (Entered: 06/25/2022) |
| 07/06/2022 | 171 | Unopposed MOTION to Continue *Sentencing* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # |

| | | 1 Text of Proposed Order)(Miles, Tony) (Entered: 07/06/2022) |
|---|---|---|
| 07/12/2022 | [172](#) | Unopposed MOTION to Continue by MURALI YAMAZULA VENKATA. (Shields, Kamil) (Entered: 07/12/2022) |
| 07/18/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's unopposed motion for continuance, Dkt. [172](#) , it is hereby ORDERED that the motion is GRANTED and that the sentencing scheduled for August 15, 2022, is VACATED. It is further ORDERED that the sentencing is RESCHEDULED for October 20, 2022, at 2:00 p.m., in Courtroom 8. It is further ORDERED that the government's sentencing memorandum shall be due on or before October 6, 2022, and Defendant's sentencing memorandum shall be due on or before October 13, 2022. Signed by Judge Randolph D. Moss on 7/18/2022. (lcrdm2) (Entered: 07/18/2022) |
| 08/01/2022 | [173](#) | TRANSCRIPT OF PRETRIAL CONFERENCE in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 21, 2022. Page Numbers: 1 - 132. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form](#)  For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchase d from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.  **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.  Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | [174](#) | TRANSCRIPT OF JURY TRIAL - DAY 1 - MORNING SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 29, 2022. Page Numbers: 1 - 104. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form](#)  For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public te rminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.  **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.  Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | [175](#) | TRANSCRIPT OF JURY TRIAL - DAY 1 - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 29, |

| | | |
|---|---|---|
| | | 2022. Page Numbers: 1 - 147. Date of Issuance: August 1, 2022. Court Reporter: Nancy Meyer. Telephone number 202-354-3118. Transcripts may be ordered by submitting the [Transcript Order Form](#)<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | [176](#) | TRANSCRIPT OF JURY TRIAL - DAY 2 - MORNING SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 30, 2022. Page Numbers: 1 - 150. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form](#)<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public ter minal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | [177](#) | TRANSCRIPT OF JURY TRIAL - DAY 2 - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 30, 2022. Page Numbers: 1 - 136. Date of Issuance: August 1, 2022. Court Reporter: William Zaremba. Telephone number 202-354-3249. Transcripts may be ordered by submitting the [Transcript Order Form](#)<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a publ ic terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five |

**A0025**

personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022)

| 08/01/2022 | 178 | TRANSCRIPT OF JURY TRIAL - DAY 3 - MORNING SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 31, 2022; Page Numbers: 1 - 101. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public ter minal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | 179 | TRANSCRIPT OF JURY TRIAL - DAY 3 - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 31, 2022. Page Numbers: 1 - 119. Date of Issuance: August 1, 2022. Court Reporter: Nancy Meyer. Telephone number 202-354-3118. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public t erminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | 180 | TRANSCRIPT OF JURY TRIAL - DAY 4 - MORNING SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 1, 2022. Page Numbers: 1 - 119. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public term inal or purchased from the court reporter referenced above. After 90 days, |

the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022)

| 08/01/2022 | 181 | TRANSCRIPT OF JURY TRIAL - DAY 4 - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 1, 2022. Page Numbers: 1 - 134. Date of Issuance: August 1, 2022. Court Reporter: William Zaremba. Telephone number: 202-354-3249. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a pub lic terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| --- | --- | --- |
| 08/01/2022 | 182 | TRANSCRIPT OF JURY TRIAL - DAY 5 - MORNING SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 4, 2022. Page Numbers: 1 - 119. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public term inal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |

| 08/01/2022 | 183 | TRANSCRIPT OF JURY TRIAL - DAY 5 - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 4, 2022. Page Numbers: 1 - 116. Date of Issuance: August 1, 2022. Court Reporter: William Zaremba. Telephone number 202-354-3249. Transcripts may be ordered by submitting the Transcript Order Form |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a publi c terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022)

| 08/01/2022 | 184 | TRANSCRIPT OF JURY TRIAL - DAY 6 - MORNING SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 5, 2022. Page Numbers: 1 - 112. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public term inal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022)

| 08/01/2022 | 185 | TRANSCRIPT OF JURY TRIAL - DAY 6 - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 5, 2022. Page Numbers: 1 - 119. Date of Issuance: August 1, 2022. Court Reporter: William Zaremba. Telephone number: 202-354-3249. Transcripts may be ordered by submitting the Transcript Order Form |

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a pub lic terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from

| | | |
|---|---|---|
| | | this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | [186](#) | TRANSCRIPT OF JURY TRIAL - DAY 7 - MORNING SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 6, 2022. Page Numbers: 1 - 78. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form](#)<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public termi nal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | [187](#) | TRANSCRIPT OF JURY TRIAL - DAY 7 - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 6, 2022. Page Numbers: 1 - 135. Date of Issuance: August 1, 2022. Court Reporter: Nancy Meyer. Telephone number 202-354-3118. Transcripts may be ordered by submitting the [Transcript Order Form](#)<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public te rminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/01/2022 | [188](#) | TRANSCRIPT OF JURY TRIAL - DAY 8 in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 8, 2022. Page Numbers: 1 - 110. Date of Issuance: August 1, 2022. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form](#) |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/22/2022. Redacted Transcript Deadline set for 9/1/2022. Release of Transcript Restriction set for 10/30/2022.(Hook, Jeff) (Entered: 08/01/2022) |
| 08/22/2022 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS (1): In light of Defendant Murali Yamazula Venkata's pending Motion for Judgment of Acquittal and New Trial, Dkt. 166 , it is hereby ORDERED that the sentencing scheduled on October 13, 2022 is VACATED. It is further ORDERED that the sentencing is RESCHEDULED for Thursday, November 17, 2022 at 9:00am, in Courtroom 8. Signed by Judge Randolph D. Moss on 08/22/2022. (lcrdm2) Modified on 8/22/2022 to add location (kt). (Entered: 08/22/2022) |
| 08/22/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): In light of Defendant Murali Yamazula Venkata's pending Motion for Judgment of Acquittal and New Trial, Dkt. 166 , it is hereby ORDERED that the sentencing scheduled on October 20, 2022 is VACATED. It is further ORDERED that the sentencing is RESCHEDULED for Monday, November 21, 2022, at 9:00am, in Courtroom 8. Signed by Judge Randolph D. Moss on 08/22/2022. (lcrdm2) Modified on 8/22/2022 to add location (kt). (Entered: 08/22/2022) |
| 08/31/2022 | 190 | Joint MOTION to Continue *Deadlines for the Submission of Sentencing Memoranda* by USA as to MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Choy, Celia) (Entered: 08/31/2022) |
| 08/31/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of the parties' Joint Motion to Continue Deadlines for the Submission of Sentencing Memoranda, Dkt. 190 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that the government shall file its sentencing memorandum on or before November 7, 2022. It is further ORDERED that Mr. Venkata shall file his sentencing memorandum on or before November 14, 2022. Signed by Judge Randolph D. Moss on 08/31/2022. (lcrdm2) (Entered: 08/31/2022) |
| 10/07/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): It is hereby ORDERED that the parties shall appear for oral argument on Defendant's Motion for Judgment of Acquittal and New Trial, Dkt. 166 , on November 1, 2022 at 2:00 p.m. in Courtroom 8. Signed by Judge Randolph D. Moss on 10/07/2022. (lcrdm2) Modified on 10/7/2022 to add defendant's number behind his name (kt). (Entered: 10/07/2022) |
| 10/19/2022 | 192 | Unopposed MOTION to Continue *ORAL ARGUMENT AND SENTENCING* by USA as to MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Macey, Christine) (Entered: 10/19/2022) |
| 10/20/2022 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of the Government's Unopposed Motion to Continue Oral Argument and Sentencing, Dkt. 192 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that (1) the oral argument set for November 1, 2022 is VACATED and RESCHEDULED for November 21, 2022, at 9:00 a.m., in Courtroom 8; (2) Mr. Venkata's sentencing set for |

A0030

| | |
|---|---|
| | November 21, 2022 is VACATED and RESCHEDULED for December 13, 2022 at 2:00 p.m., in Courtroom 8; (3) the Government's sentencing memorandum shall be filed on or before November 29, 2022; and (4) Defendant's sentencing memorandum shall be filed on or before December 6, 2022. Signed by Judge Randolph D. Moss on 10/20/2022. (lcrdm2) (Entered: 10/20/2022) |
| 11/10/2022 | MINUTE ORDER as to MURALI YAMAZULA VENKATA: Mr. Venkata was found guilty of violating 18 U.S.C. § 1028A (Count 13). Dkt. 154 at 3. Earlier today, the Supreme Court granted a petition for a writ of certiorari in Dubin v. United States, No. 22-10. The Question Presented in that case is "whether a person commits aggravated identity theft" under 18 U.S.C. § 1028A(a)(1) "any time he mentions or otherwise recites someone else's name while committing a predicate offense." Cert. Pet. at i. The parties are hereby ORDERED to file a joint status report on or before November 15, 2022 addressing how the Court should proceed in light of that cert grant. Signed by Judge Randolph D. Moss on 11/10/2022. (lcrdm2) (Entered: 11/10/2022) |
| 11/15/2022 | 197 Joint STATUS REPORT by MURALI YAMAZULA VENKATA (Savarese, Katherine) (Entered: 11/15/2022) |
| 11/16/2022 | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of the Joint Status Report, Dkt. 197 , it is hereby ORDERED that (1) Mr. Venkata's sentencing set for December 13, 2022 is VACATED; (2) the oral argument set for November 21, 2022 is VACATED; and (3) the Court will STAY proceedings on Mr. Venkata's pending motion, Dkt. 166 , as well as his sentencing, pending the Supreme Court's decision in Dubin v. United States, No. 22-10. On November 10, 2022, the Supreme Court granted a petition for writ of certiorari in Dubin. The Question Presented in that case is "whether a person commits aggravated identity theft," under 18 U.S.C. § 1028A(a)(1) "any time he mentions or otherwise recites someone else's name while committing a predicate offense." Cert. Pet. at i. Like the defendant in Dubin, Venkata was also found guilty of violating 18 U.S.C. § 1028A. And in his pending motion, Venkata raises the same or similar issues as are present in Dubin (indeed, the Dubin opinions are cited throughout the briefing on the pending motion in this case). A decision from the Supreme Court in Dubin is therefore likely to clarify the meaning of § 1028A and, accordingly, may help answer one the central issues raised in Venkata's pending Rule 29 motion.

As the Government notes, the Court "in determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed, or used,... shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of" § 1028A. § 1028A(b)(3). It may be, however, that the Court could consider the total sentence--including the mandatory minimum for violating § 1028A--in determining the sentences for Venkata's other counts. See, e.g., United States v. Vidal-Reyes, 562 F.3d 43, 56 (1st Cir. 2009) ("We thus conclude that a district court, in sentencing a defendant on an 18 U.S.C. § 1028A aggravated identity theft conviction, is not precluded from taking § 1028A's mandatory sentence into account in sentencing a defendant on other counts of conviction charged in the same indictment that are not predicate felonies underlying the § 1028A conviction."); Dean v. United States, 137 S. Ct. 1170, 1176 (2017) ("As a general matter," federal law "permit[s] a court imposing a sentence on one count of conviction to consider sentences imposed on other counts.").

Therefore, in order to ensure that the Court has the benefit of the Supreme Court's guidance on the meaning of § 1028A and has all the relevant information for purposes of sentencing, even on counts that did not involve the transfer, possession, or use of the |

| | | |
|---|---|---|
| | | relevant means of identification, the Court must await the Supreme Court's decision in *Dubin v. United States*. The Court recognizes that the public interest generally favors the prompt imposition of sentence following a conviction and preparation of the required presentence investigation report. But here, in the unique circumstances posed here, the increased certainty that will come with the Supreme Court's guidance on an issue of central importance to this case will avoid unnecessary collateral litigation and appeals and, in the end, will promote the fair, efficient, and final resolution of a case that poses a currently unsettled question of statutory interpretation. Signed by Judge Randolph D. Moss on 11/16/2022. (lcrdm2) (Entered: 11/16/2022) |
| 11/17/2022 | | Terminate Hearings as to MURALI YAMAZULA VENKATA (2): Sentencing and Motion Hearing vacated. (kt) (Entered: 11/17/2022) |
| 11/19/2022 | 198 | Emergency MOTION to Travel by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Miles, Tony) (Entered: 11/19/2022) |
| 11/21/2022 | 199 | Amended MOTION to Travel by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Miles, Tony) (Entered: 11/21/2022) |
| 11/29/2022 | 200 | Unopposed MOTION to Stay *Sentencing* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Miles, Tony) (Entered: 11/29/2022) |
| 05/08/2023 | 202 | NOTICE *of Withdrawal of Counsel* by MURALI YAMAZULA VENKATA (Attachments: # 1 Text of Proposed Order)(Savarese, Katherine) (Entered: 05/08/2023) |
| 06/15/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): It is hereby ORDERED that, on or before June 22, 2023, the parties shall file a joint status report proposing next steps in light of the Supreme Court's decision in *Dubin v. United States*, 22-10. Signed by Judge Randolph D. Moss on 6/15/2023. (lcrdm2) (Entered: 06/15/2023) |
| 06/22/2023 | 203 | Joint STATUS REPORT by USA as to MURALI YAMAZULA VENKATA (Choy, Celia) (Entered: 06/22/2023) |
| 06/26/2023 | | MINUTE ORDER: In light of the parties' Joint Status Report, Dkt. 203 , it is hereby ORDERED that the parties shall appear for a motions hearing on August 29, 2023, at 2:00 p.m., in Courtroom 8. Signed by Judge Randolph D. Moss on 6/26/2023. (lcrdm2) (Entered: 06/26/2023) |
| 07/10/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): On July 7, 2023, counsel for Defendant emailed Chambers inquiring whether "Maxwell Gottschall, an associate at Sullivan & Cromwell LLP who has not yet been admitted to the bar of any state[, may] be permitted to argue aspects of Mr. Venkata's Rule 33 motion." In light of that request, it is hereby ORDERED that (1) on or before July 14, 2023, Defendant shall file a motion addressing whether the Court has the authority to grant that request; and (2) on or before July 21, 2023, the Government may file a response to that motion. The Court has granted defendant's request for argument in the case, in part, to provide an opportunity for less experienced lawyers to have the opportunity to argue in court. The Court, however, needs to ensure that permitting someone who has not yet been admitted to the bar of any state to argue a motion (albeit while under supervision of a member of the bar of this Court) is consistent with the rules of practice. Signed by Judge Randolph D. Moss on 7/10/2023. (lcrdm2) (Entered: 07/10/2023) |
| 07/14/2023 | 204 | MOTION for Leave to Appear by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 07/14/2023) |

**A0032**

| 07/19/2023 | 205 | RESPONSE by USA as to MURALI YAMAZULA VENKATA re 204 MOTION for Leave to Appear (Choy, Celia) (Entered: 07/19/2023) |
|---|---|---|
| 07/20/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of the Motion for Permission for Maxwell Gottschall to Present Oral Argument, Dkt. 204 , it is hereby ORDERED that the motion is DENIED. In the motion, counsel for Defendant seeks permission for Maxwell Gottschall, a law firm associate who is not a member of a bar of any state, to appear and present oral argument on Defendant's behalf. In support, Defendant makes four arguments. First, he points to Local Rule 83.4 of the U.S. District Court for the District of Columbia, which permits law students to appear under certain circumstances. Mr. Gottschall is not a law student, however, and this rule accordingly is inapplicable. Second, he relies on the "Court's inherent authority and discretion to interpret its own rules." *Id.* at 2. While the Court may have discretion on this question, the Court is not sufficiently convinced its discretion entirely mitigates the risk that Mr. Gottschall may inadvertently engage in the unauthorized practice of law if permitted to appear. Third, counsel points to District of Columbia Court of Appeals Rule 49(c)(9)(B) (i)-(iv), which allows certain law school graduates to provide pro bono legal services. That rule requires, however, that "the person is trained and supervised by a D.C. Bar Member who is affiliated with the Public Defender Service or a non-profit organization that provides pro bono legal services on each pro bono matter." The motion indicates that Ms. Shields, an attorney of the law firm Sullivan & Cromwell LLP, would supervise Mr. Gottschall, and as far as the Court is aware, Ms. Shields is not affiliated with PDS or a non-profit organization that provides pro bono legal services. Fourth, counsel argues that permitting Mr. Gotschall's appearance is aligned with the purpose of law student court admission. While that may be true, counsel has failed to identify a rule in this jurisdiction allowing an unlicensed law school graduate to appear, even if supervised by a law firm partner. The Court agrees, however, that offering recent law school graduates in-court experience is valuable and would welcome the opportunity to hear argument now or in the future from any recent law school graduate who is qualified to appear in court either as a member of the bar or pursuant to an applicable exception. Signed by Judge Randolph D. Moss on 7/20/2023. (lcrdm2) (Entered: 07/20/2023) |
| 08/10/2023 | 206 | MOTION to Dismiss Count *Thirteen* by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Choy, Celia) (Entered: 08/10/2023) |
| 08/10/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of the Government's Motion to Dismiss Count Thirteen, Dkt. 206 , it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Count Thirteen of the Indictment is DISMISSED with prejudice. Signed by Judge Randolph D. Moss on 8/10/2023. (lcrdm2) (Entered: 08/10/2023) |
| 08/10/2023 | | DISMISSAL OF COUNT 13 on Government Motion as to MURALI YAMAZULA VENKATA. (zglw) (Entered: 08/10/2023) |
| 08/18/2023 | 207 | NOTICE *OF WITHDRAWAL OF COUNSEL* by MURALI YAMAZULA VENKATA (Attachments: # 1 Text of Proposed Order)(Ohrtman, Tara) (Entered: 08/18/2023) |
| 08/28/2023 | | Attorney update in case as to MURALI YAMAZULA VENKATA. Attorney Tara Ohrtman terminated. (zglw) (Entered: 08/28/2023) |
| 08/29/2023 | | Minute Entry for proceedings held before Judge Randolph D. Moss:Motion Hearing as to MURALI YAMAZULA VENKATA held on 8/29/2023 re 166 MOTION pursuant to Rule 33 for new trial filed by MURALI YAMAZULA VENKATA Parties direct to file any additional Briefs on or before 9/6/2023. Bond Status of Defendant: Continued PR; Court Reporter: Tammi Sefranek; Defense Attorney: Kamil Shields, Jared Rosenthal and |

| | | |
|---|---|---|
| | | Katherine Savarese; US Attorney: Victor Salgado and Celia Choy. (zglw) (Entered: 08/30/2023) |
| 09/05/2023 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS and MURALI YAMAZULA VENKATA: The Court has determined that scheduling a sentencing hearing date is appropriate. It is hereby ORDERED that the parties appear for a sentencing hearing on December 8, 2023, at 2:00 p.m., in Courtroom 8. Signed by Judge Randolph D. Moss on 9/5/23. (lcrdm2) (Entered: 09/05/2023) |
| 09/06/2023 | 209 | SUPPLEMENT by USA as to MURALI YAMAZULA VENKATA re 169 Response to motion *regarding Ciminelli v. United States* (Choy, Celia) (Entered: 09/06/2023) |
| 09/07/2023 | 210 | MOTION for Leave to File *Reply* by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 09/07/2023) |
| 09/11/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA: Upon consideration of Defendant's Motion for Leave to Reply, Dkt. 210 , the Court hereby ORDERS the motion is GRANTED. Defendant Venkata may file a reply, not to exceed 11 pages, on or before October 2, 2023. Signed by Judge Randolph D. Moss on 9/11/23. (lcrdm2) (Entered: 09/11/2023) |
| 10/03/2023 | 211 | REPLY in Support by MURALI YAMAZULA VENKATA re 166 MOTION pursuant to Rule 33 for new trial (Savarese, Katherine) (Entered: 10/03/2023) |
| 11/14/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): As previously reflected in the jury instructions, see Dkt. 146 at 31, although not previously reflected on the docket, the Court decided to submit only one of the four aggravated identity theft counts to the jury -- Count 13 -- in light of Defendant's Motion to Dismiss 105 , Defendant's Supplemental Motion 124 , and the Government's Responses 123 & 127 . The Government has since conceded that Count 13 cannot stand in light of Dubin v. United States, see Dkt. 206 , and the Court dismissed that count with prejudice, see Minute Order (Aug. 10, 2023). In light of that background and for the sake of clarity, it is hereby ORDERED that Counts 12, 14, and 15 are likewise DISMISSED. Signed by Judge Randolph D. Moss on 11/14/23. (lcrdm2) (Entered: 11/14/2023) |
| 11/16/2023 | 214 | MOTION for Victim Rights *Alternative Victim Notification under 18 USC 3771(d)(2)* by USA as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Choy, Celia) (Entered: 11/16/2023) |
| 11/16/2023 | 215 | ORDER granting 214 Motion for Victim Rights as to CHARLES KUMAR EDWARDS (1), MURALI YAMAZULA VENKATA (2). See document for details. Signed by Judge Randolph D. Moss on 11/16/23. (lcrdm2) (Entered: 11/16/2023) |
| 11/17/2023 | | DISMISSAL OF COUNTS 12, 14 and 15 on Motion of MURALI YAMAZULA VENKATA. (zglw) (Entered: 11/17/2023) |
| 11/17/2023 | 216 | MOTION for Reconsideration re 215 Order on Motion for Victim Rights by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 11/17/2023) |
| 11/17/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA: In light of Defendant Venkata's Motion for Reconsideration, Dkt. 216 , it is hereby ORDERED that the Government shall file a response on or before Nov. 22, 2023. This response should include a discussion of the anticipated impact of the alternative victim notification procedures aside from the form of notice itself, specifically what effect the Court's order would have on the sentencing or any claim to relief by the asserted victims. It is further ORDERED that the Court's prior order, Dkt. 215 , is HELD IN ABEYANCE, pending resolution of Defendant's motion. Signed by Judge Randolph D. Moss on 11/17/23. (lcrdm2) (Entered: 11/17/2023) |

| 11/21/2023 | 217 | RESPONSE by USA as to MURALI YAMAZULA VENKATA re 216 MOTION for Reconsideration re 215 Order on Motion for Victim Rights (Attachments: # 1 Text of Proposed Order)(Choy, Celia) (Entered: 11/21/2023) |
| --- | --- | --- |
| 11/30/2023 | 218 | ORDER denying 216 Motion for Reconsideration, withdrawing 215 Order on Motion for Victim Rights, and granting 214 Government's Motion for Alternative Victim Notification. See document for details. Signed by Judge Randolph D. Moss on 11/30/23. (lcrdm2) (Entered: 11/30/2023) |
| 12/05/2023 | 221 | Unopposed MOTION to Continue *Sentencing* by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 12/05/2023) |
| 12/05/2023 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defendant's Unopposed Motion to Continue Sentencing, Dkt. 221 , it is hereby ORDERED that the motion is GRANTED. The sentencing hearing currently set for December 8, 2023, is VACATED and RESCHEDULED for January 4, 2024, at 2:00 p.m., in Courtroom 8. It is further ORDERED that the Government shall submit its memorandum on or before December 19, 2023, and Defendant shall submit his memorandum on or before December 27, 2023. Signed by Judge Randolph D. Moss on 12/5/23. (lcrdm2) Modified on 12/6/2023 (lsj). (Entered: 12/05/2023) |
| 12/19/2023 | 223 | SENTENCING MEMORANDUM by USA as to MURALI YAMAZULA VENKATA (Macey, Christine) (Entered: 12/19/2023) |
| 12/20/2023 | 224 | SUPPLEMENT by USA as to MURALI YAMAZULA VENKATA re 223 Sentencing Memorandum (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Macey, Christine) (Entered: 12/20/2023) |
| 12/28/2023 | 226 | SENTENCING MEMORANDUM by MURALI YAMAZULA VENKATA (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Savarese, Katherine) (Entered: 12/28/2023) |
| 01/02/2024 | 230 | Unopposed MOTION to Continue *Sentencing* by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 01/02/2024) |
| 01/03/2024 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA: Upon consideration of Defendant's Motion to Continue, Dkt. 230 , it is hereby ORDERED that the motion is DENIED. Signed by Judge Randolph D. Moss on 1/3/24. (lcrdm2) (Entered: 01/03/2024) |
| 01/03/2024 | 231 | MEMORANDUM OPINION AND ORDER as to MURALI YAMAZULA VENKATA denying Defendant's Motion for Judgment of Acquittal and New Trial, Dkt. 166 . See document for details. Signed by Judge Randolph D. Moss on 1/3/24. (lcrdm2) (Entered: 01/03/2024) |
| 01/04/2024 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Sentencing held and continued. Government Brief due by 1/12/2024. Respons due by 1/18/2024 and Reply due by 1/22/2024. Sentencing continued to 1/26/2024 at 09:00 AM in Courtroom 8- In Person before Judge Randolph D. Moss. Bond Status of Defendant: Continued PR; Court Reporter: Tammi Sefranek; Defense Attorney: Kamil Shields and Katherine Savarese; US Attorney: Christine Macey & Celia Choy; Probation Officer: Sherry Baker. (zglw) (Entered: 01/09/2024) |
| 01/12/2024 | 233 | Supplemental SENTENCING MEMORANDUM by USA as to MURALI YAMAZULA VENKATA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Choy, Celia) (Main Document 233 replaced on 1/12/2024) (zltp). Modified text on 1/22/2024 (zltp). (Entered: 01/12/2024) |
| 01/19/2024 | 234 | RESPONSE by MURALI YAMAZULA VENKATA re 233 *Supplemental Sentencing Memorandum by USA* (Attachments: # 1 Exhibit A)(Savarese, Katherine) Modified text |

to include link on 1/22/2024 (zltp). (Entered: 01/19/2024)

| 01/21/2024 | 236 | REPLY by USA as to MURALI YAMAZULA VENKATA re 234 Response to document *Reply In Support of Supplemental Brief in Aid of Sentencing* (Choy, Celia) Modified text to remove unassociated defendant on 1/22/2024 (zltp). (Entered: 01/21/2024) |
| --- | --- | --- |
| 01/26/2024 | | Minute Entry for proceedings held before Judge Randolph D. Moss:Sentencing held on 1/26/2024 as to MURALI YAMAZULA VENKATA (2). Defendant sentenced on counts 1, 2, 11 and 16 to 4 months incarceration with BOP to run concurrent; 24 months supervised release with the first 8 months as home incarceration to run concurrently; $296.00 Restitution and $400.00 special assessment. Bond Status of Defendant: Continued on PR until advised by Probation to self-surrender. Court Reporter: Tammi Sefranek; Defense Attorney: Katherine Savarese, Michelle Peterson, Jared Rosenfeld; US Attorney: Celia Choy & Christine Macey; Probation Officer: Hana Field. (zglw) (Entered: 01/29/2024) |
| 01/31/2024 | 245 | JUDGMENT as to MURALI YAMAZULA VENKATA. Statement of Reasons Not Included. Signed by Judge Randolph D. Moss on 1/31/2024. (zltp) (Entered: 02/09/2024) |
| 01/31/2024 | 246 | STATEMENT OF REASONS as to MURALI YAMAZULA VENKATA. re 245 Judgment Access to the PDF Document is restricted per Judicial Conference Policy. Access is limited to Counsel of Record and the Court. Signed by Judge Randolph D. Moss on 1/31/2024. (zltp) (Entered: 02/09/2024) |
| 02/02/2024 | 240 | TRANSCRIPT OF MOTION HEARING in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on 8/29/23; Page Numbers: 1-74. Date of Issuance:2/2/24. Court Reporter/Transcriber Tamara Sefranek, Telephone number 202-354-3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/23/2024. Redacted Transcript Deadline set for 3/4/2024. Release of Transcript Restriction set for 5/2/2024.(Sefranek, Tamara) (Entered: 02/02/2024) |
| 02/02/2024 | 241 | TRANSCRIPT OF SENTENCING in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on 1/04/24; Page Numbers: 1-59. Date of Issuance:2/2/24. Court Reporter/Transcriber Tamara Sefranek, Telephone number 202-354-3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from |

this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 2/23/2024. Redacted Transcript Deadline set for 3/4/2024. Release of Transcript Restriction set for 5/2/2024.(Sefranek, Tamara) (Entered: 02/02/2024)

| | | |
|---|---|---|
| 02/07/2024 | | MINUTE ORDER as to CHARLES KUMAR EDWARDS: In light of Defendant Edwards' Objection to Proposed Computer-Related Conditions of Supervised Release, Dkt. 242 , the government is directed to file a response on or before February 21, 2024. Signed by Judge Randolph D. Moss on 2/7/24. (lcrdm2) (Entered: 02/07/2024) |
| 02/12/2024 | 247 | NOTICE OF APPEAL - Final Judgment by MURALI YAMAZULA VENKATA re 245 Judgment. Fee Status: No Fee Paid. Parties have been notified. (Peterson, Michelle) (Entered: 02/12/2024) |
| 02/14/2024 | 248 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The fee was not paid as the defendant is represented by FPD as to MURALI YAMAZULA VENKATA re 247 Notice of Appeal - Final Judgment. (zltp) (Entered: 02/14/2024) |
| 02/28/2024 | | USCA Case Number as to MURALI YAMAZULA VENKATA 24-3021 for 247 Notice of Appeal - Final Judgment filed by MURALI YAMAZULA VENKATA. (zltp) (Entered: 02/29/2024) |
| 03/29/2024 | 250 | Unopposed MOTION for Extension of Time to *Voluntarily Surrender* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Miles, Tony) (Entered: 03/29/2024) |
| 04/09/2024 | 251 | TRANSCRIPT OF STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on 11-17-20; Page Numbers: 1-11; Date of Issuance: 4-9-24; Court Reporter: Timothy R. Miller, Telephone Number (202) 354-3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/30/2024. Redacted Transcript Deadline set for 5/10/2024. Release of Transcript Restriction set for 7/8/2024.(Miller, Timothy) (Entered: 04/09/2024) |
| 05/07/2024 | 252 | TRANSCRIPT OF STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 10, 2020. Page Numbers: 1 - 7. Date of Issuance: May 7, 2024. Court Reporter: |

Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form]

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024)

| 05/07/2024 | [253] | TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on May 1, 2020. Page Numbers: 1 - 11. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form]

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024) |
|---|---|---|
| 05/07/2024 | [254] | TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on July 20, 2020. Page Numbers: 1 - 13. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form]

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024)

| 05/07/2024 | 255 | TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on January 26, 2021. Page Numbers: 1 - 11. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024) |
| 05/07/2024 | 256 | TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 28, 2021. Page Numbers: 1 - 13. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024) |
| 05/07/2024 | 257 | TRANSCRIPT OF VIDEO STATUS CONFERENCE in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 25, 2022. Page Numbers: 1 - 36. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. |

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024)

| | | |
|---|---|---|
| 05/07/2024 | [258](#) | TRANSCRIPT OF JURY SELECTION - A.M. SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 28, 2022. Page Numbers: 1 - 190. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form](#)<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024) |
| 05/07/2024 | [259](#) | TRANSCRIPT OF VIDEO STATUS CONFERENCE in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 8, 2022. Page Numbers: 1 - 7. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone number: 202-354-3373. Transcripts may be ordered by submitting the [Transcript Order Form](#)<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024) |
| 05/07/2024 | [260](#) | TRANSCRIPT OF JURY DELIBERATIONS/VERDICT in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on April 11, 2022. Page Numbers: 1 - 11. Date of Issuance: May 7, 2024. Court Reporter: Jeff Hook. Telephone |

number: 202-354-3373. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/28/2024. Redacted Transcript Deadline set for 6/7/2024. Release of Transcript Restriction set for 8/5/2024.(Hook, Jeff) (Entered: 05/07/2024)

| 05/13/2024 | 261 | STIPULATION *REGARDING RETURN OF DIGITAL DEVICES AND ELECTRONICALLY STORED INFORMATION* by USA (Macey, Christine) (Entered: 05/13/2024) |
| --- | --- | --- |
| 05/24/2024 | 262 | TRANSCRIPT OF STATUS CONFERENCE in case as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on 09/16/2020. Page Numbers: 1-10. Date of Issuance: 05/24/2024. Court Reporter: Sara Wick, telephone number 202-354-3284. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/14/2024. Redacted Transcript Deadline set for 6/24/2024. Release of Transcript Restriction set for 8/22/2024.(Wick, Sara) (Entered: 05/24/2024) |
| 05/29/2024 | 263 | TRANSCRIPT OF JURY SELECTION PROCEEDINGS - AFTERNOON SESSION in case as to MURALI YAMAZULA VENKATA before Judge Randolph D. Moss held on March 28, 2022; Page Numbers: 1-104. Date of Issuance: May 29, 2024. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from |

| | | |
|---|---|---|
| | | this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/19/2024. Redacted Transcript Deadline set for 6/29/2024. Release of Transcript Restriction set for 8/27/2024.(Zaremba, William) (Entered: 05/29/2024) |
| 07/23/2024 | | MINUTE ORDER as to CHARLES EDWARDS: Upon consideration of Defendant Edwards' Objection to Proposed Computer-Related Conditions of Supervised Release, Dkt. 242 , and the Governments Response, Dkt. 249 , it is hereby ORDERED that the objection is DENIED without prejudice. Edwards may renew his objection upon his release from incarceration at which point the Court will be in a better position to evaluate the appropriateness of the condition. Signed by Judge Randolph D. Moss on 7/23/24. (lcrdm2) (Entered: 07/23/2024) |
| 08/15/2024 | 264 | MOTION to Travel by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 08/15/2024) |
| 08/16/2024 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA: Upon consideration of Defendant Venkata's Motion to Travel, Dkt. 264 , it is hereby ORDERED that the motion is GRANTED. Mr. Venkata shall be permitted to travel from his home to his daughter's apartment in Richmond, Virginia, on Saturday, August 17, 2024, between 8 a.m. and 7 p.m. Signed by Judge Randolph D. Moss on 8/16/2024. (lcrdm2) (Entered: 08/16/2024) |
| 11/05/2024 | 265 | Unopposed MOTION to Travel by MURALI YAMAZULA VENKATA. (Savarese, Katherine) (Entered: 11/05/2024) |
| 11/07/2024 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA: It is hereby ORDERED that the government shall respond to Mr. Venkata's Motion to Travel, Dkt. 265 , on or before November 8, 2024. Signed by Judge Randolph D. Moss on 11/7/2024. (lcrdm2) (Entered: 11/07/2024) |
| 11/07/2024 | 266 | RESPONSE by USA as to MURALI YAMAZULA VENKATA re 265 Unopposed MOTION to Travel (Macey, Christine) (Entered: 11/07/2024) |
| 11/07/2024 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA: Upon consideration of Defendant Venkata's Motion to Travel, Dkt. 265 , it is hereby ORDERED that the motion is GRANTED. Mr. Venkata shall be permitted to travel from his home to his daughter's apartment in Richmond, Virginia, on the dates and times requested in his motion. Signed by Judge Randolph D. Moss on 11/7/2024. (lcrdm2) (Entered: 11/07/2024) |
| 06/23/2025 | 269 | Unopposed MOTION for Extension of Time to *Extend Briefing Schedule* by CHARLES KUMAR EDWARDS as to CHARLES KUMAR EDWARDS, MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Jeffress, Jonathan) (Entered: 06/23/2025) |
| 09/19/2025 | 273 | MOTION to Withdraw as Attorney by Katherine Savarese. by MURALI YAMAZULA VENKATA. (Attachments: # 1 Text of Proposed Order)(Savarese, Katherine) (Entered: 09/19/2025) |
| 09/20/2025 | | MINUTE ORDER as to MURALI YAMAZULA VENKATA (2): Upon consideration of Defense Counsel's Motion to Withdraw, Dkt. 273 , it is hereby ORDERED that the motion is GRANTED and Katherine Savarese is DEEMED WITHDRAWN as counsel for Defendant. Signed by Judge Randolph D. Moss on 09/20/2025. (lcrdm2) (Entered: 09/20/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/08/2025 10:08:17 | | | |
| **PACER Login:** | Axamtx204 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cr-00066-RDM |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 7, 2019**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | |
| **v.** | : | **GRAND JURY ORIGINAL** |
| | : | |
| **CHARLES KUMAR EDWARDS and** | : | **VIOLATIONS:** |
| **MURALI YAMAZULA VENKATA,** | : | |
| | : | **18 U.S.C. § 371 (Conspiracy to Commit** |
| **Defendants.** | : | **Theft of Government Property and to** |
| | : | **Defraud the United States)** |
| | : | **18 U.S.C. § 641 (Theft of Government** |
| | : | **Property)** |
| | : | **18 U.S.C. § 1343 (Wire Fraud)** |
| | : | **18 U.S.C. § 1028A (Aggravated Identity** |
| | : | **Theft)** |
| | : | **18 U.S.C. § 1519 (Destruction of Records)** |
| | : | **18 U.S.C. § 2 (Aiding and Abetting;** |
| | : | **Causing an Act to be Done)** |

### INDICTMENT

The Grand Jury charges that:

### Introduction

At all times material to this Indictment:

1.      The core mission of the U.S. Department of Homeland Security – Office of Inspector General ("DHS-OIG") is to provide independent oversight and to promote excellence, integrity, and accountability within the U.S. Department of Homeland Security ("DHS"). DHS-OIG Headquarters was located at 1120 Vermont Avenue, N.W., Washington, D.C.

2.      Defendant CHARLES KUMAR EDWARDS worked for DHS-OIG from in and around February 2008 to in and around December 2013, including as DHS-OIG's Acting Inspector General. Prior to working at DHS-OIG, Defendant EDWARDS worked at the Transportation

Security Administration ("TSA") and the U.S. Postal Service – Office of Inspector General ("USPS-OIG"). After leaving DHS-OIG, Defendant EDWARDS founded Delta Business Solutions, Inc. ("DBS"), a Maryland corporation, in and around September 2015.

3.    Defendant MURALI YAMAZULA VENKATA worked as an Information Technology ("IT") Specialist in the IT Division at DHS-OIG Headquarters. When VENKATA joined DHS-OIG in and around June 2010, he signed a Computer Access Agreement in which he acknowledged:

> I will protect displayed, stored data, magnetic media, printouts in accordance with the highest level of data sensitivity contained on that media. I will follow OIG policy for transmitting sensitive data (such as name, ssn, home address, etc.) by utilizing WinZip or other OIG standard encryption software.

In his signed Computer Access Agreement, Defendant VENKATA further acknowledged:

> I will not remove DHS computer systems or software from Government work spaces without express written permission. I understand I am personally responsible for providing physical security and keeping items under my exclusive control.

Prior to joining DHS-OIG in and around June 2010, Defendant VENKATA worked at USPS-OIG. While at DHS-OIG, Defendant VENKATA did not request or receive any authorizations for outside employment.

4.    Sonal Patel worked as an Enterprise Applications Branch Chief in the IT Division at DHS-OIG Headquarters. Patel oversaw the development and maintenance of DHS-OIG's Enforcement Database System ("EDS"). When Patel joined DHS-OIG in February 2009, she signed a Computer Access Agreement in which she acknowledged:

> I will protect displayed, stored data, magnetic media, printouts in accordance with the highest level of data sensitivity contained on that media. I will follow OIG policy for transmitting sensitive data (such as name, ssn, home address, etc.) by utilizing WinZip or other OIG standard encryption software.

In her signed Computer Access Agreement, Patel further acknowledged:

2

**A0045**

> I will not remove DHS computer systems or software from Government work
> spaces without express written permission.    I understand I am personally
> responsible for providing physical security and keeping items under my exclusive
> control.

Prior to joining DHS-OIG in and around February 2009, Patel worked at TSA and USPS-OIG.

While at DHS-OIG, Patel did not request or receive any authorizations for outside employment.

5.       While at DHS-OIG, Defendant EDWARDS supervised Patel, both directly and

indirectly.   Defendant EDWARDS began supervising Patel at USPS-OIG when Defendant

EDWARDS was the Director of Information Technology and the Deputy Chief Information

Officer.   At DHS-OIG, Patel supervised Defendant VENKATA.   While at USPS-OIG, Patel

worked on USPS-OIG's case management systems, including USPS-OIG's STARS database,

which was used primarily for investigations and audits, as well as USPS-OIG's Performance and

Results Information System ("PARIS"), which USPS-OIG employees used to interface with the

STARS database.   In and around 2009, Defendant EDWARDS provided Patel with a CD

containing USPS-OIG's STARS database, source code, scripts, and file server contents, which

included the personally identifiable information ("PII") of USPS employees.    Defendant

EDWARDS had Patel copy the contents of the CD onto the DHS-OIG server to enhance DHS-

OIG's audit systems.

6.       DBS was founded by Defendant EDWARDS on or about September 2, 2015, as a

Maryland Stock Corporation.   The principal office address for DBS was located at Defendant

EDWARDS's residence in Sandy Spring, Maryland.

7.       Company A was a software development company based in Bangalore, India.

8.       EDS was the case management system used by the DHS-OIG Office of

Investigations. In and around 2008, DHS obtained ownership rights to the EDS source code. Since

in and around 2008, DHS-OIG has substantially modified and enhanced the EDS system. The

initial contract for the EDS system cost DHS approximately \$3,161,620.30. One substantial modification to EDS was the creation of an "eSubpoena" module. The functional specifications for the module were finalized on or about September 29, 2014. Patel oversaw the development and implementation of this module by government employees and government contractors working under her. These employees included Defendant VENKATA, who was the principal developer of this module.

9. DHS-OIG also owned and maintained Multiple Activation Keys and a Key Management Services Code associated with various Microsoft software products. These Multiple Activation Keys and Key Management Services Code, which could be used to download Microsoft software products without payment, were the property of DHS-OIG and the United States Government and had a value of approximately \$348,362.00.

## COUNT ONE
### (Conspiracy to Commit Theft of Government Property and to Defraud the United States)

10. The allegations set forth in paragraphs 1 through 9 of this Indictment are realleged and incorporated by reference.

11. From in and around October 2014 to in and around April 2017, within the District of Columbia and elsewhere, Defendants EDWARDS and VENKATA, and Patel, did knowingly and willfully conspire, combine, confederate, and agree together and with each other, and with others known and unknown to the Grand Jury:

a. to commit offenses against the United States, that is: to willfully and knowingly steal, purloin, and convert copies of DHS-OIG's EDS system, copies of DHS-OIG's EDS source code and database files, copies of USPS-OIG's case management system, copies of USPS-OIG's STARS database and PARIS system, the PII of approximately 246,167 DHS employees and approximately 6,723 U.S. Postal Service ("USPS") employees, and Multiple

4

**A0047**

Activation Keys and a Key Management Services Code associated with various Microsoft software products, of a value exceeding $1,000, of goods and property of the United States, in violation of 18 U.S.C. § 641; and

    b. to defraud the United States by devising and intending to devise a scheme to defraud and for obtaining money and property from the U.S. Department of Agriculture – Office of Inspector General ("USDA-OIG") means of materially false and fraudulent pretenses, representations, and promises, and by concealing material facts.

## The Purposes of the Conspiracy

    12. It was a purpose of the conspiracy for Defendants EDWARDS and VENKATA and Patel to use their positions to access, copy, steal, purloin, and convert (1) DHS-OIG's EDS system; (2) DHS-OIG's EDS source code, including the eSubpoena module; (3) DHS-OIG's database, which included the PII of DHS employees; and (4) USPS-OIG's STARS database and PARIS system, which included the PII of USPS employees; so that Defendant EDWARDS and his business DBS could create and develop a private, commercially owned version of a case management system to be offered for sale to government agencies for the benefit, enrichment, and profit of Defendant EDWARDS and his business DBS.

    13. It also was a purpose of the conspiracy for Defendant VENKATA and Patel to use their positions at DHS-OIG to access and copy Multiple Activation Keys and a Key Management Services Code associated with various Microsoft software products for Defendant EDWARDS and his business DBS to assist with the creation and development of a private, commercially owned version of a case management system to be offered for sale to government agencies for the benefit, enrichment, and profit of Defendant EDWARDS and his business DBS.

    14. It also was a purpose of the conspiracy for Defendants EDWARDS and VENKATA

and Patel to conceal from DHS-OIG, USDA-OIG, and others the theft and provision of (1) DHS-OIG's EDS system; (2) DHS-OIG's EDS source code, including the eSubpoena module; and (3) DHS-OIG's database, which included the PII of DHS employees, to Defendant EDWARDS.

**Manner and Means of the Conspiracy**

15.     The manner and means by which these purposes were carried out included the following:

a.     Defendant VENKATA and Patel accessed and copied (1) DHS-OIG's EDS system; (2) DHS-OIG's EDS source code, including the eSubpoena module; (3) DHS-OIG's database, which included the PII of DHS employees; and (4) USPS-OIG's STARS database and PARIS system, which included the PII of USPS employees, which Defendant VENKATA and Patel delivered and transmitted to Defendant EDWARDS after Defendant EDWARDS had left his employment with DHS-OIG.

b.     Defendant VENKATA and Patel accessed and copied Multiple Activation Keys and a Key Management Services Code associated with various Microsoft software products, which Defendant VENKATA and Patel delivered and transmitted to Defendant EDWARDS.

c.     Defendant VENKATA and Patel transmitted DHS-OIG and USPS-OIG documents and information to Defendant EDWARDS to assist Defendant EDWARDS with the creation and development of a private, commercially owned version of a case management system to be offered for sale to government agencies for the benefit, enrichment, and profit of Defendant EDWARDS and his business DBS.

d.     Defendant VENKATA and Patel accessed Defendant EDWARDS's laptop and computer servers containing the case management system under development to provide technical and configuration advice, assistance, and support to Defendant EDWARDS and his

6

business DBS.

      e.      Defendant EDWARDS used, possessed, and transferred stolen DHS-OIG and USPS-OIG documents and information, including PII of DHS and USPS employees, to software developers in India who were assisting Defendant EDWARDS with the creation and development of a private, commercially owned version of a case management system to be offered for sale to government agencies for the benefit, enrichment, and profit of Defendant EDWARDS and his business DBS.

      f.      Defendants EDWARDS and VENKATA and Patel concealed their theft and the provision of software, source code, databases, documents, information, and PII to Defendant EDWARDS by arranging roadside meetings to pass media and equipment to Defendant EDWARDS, by emailing documents to their personal email accounts before forwarding them on to Defendant EDWARDS, and by concealing from DHS-OIG employees the purpose of their request for software.

      g.      Defendant EDWARDS and Patel concealed their theft of EDS-related software, source code, databases, documents, information, and PII from USDA-OIG through false and fraudulent pretenses, representations, and promises to Witness One to encourage and induce USDA-OIG into purchasing EDS 2.0 for the benefit, enrichment, and profit of Defendant EDWARDS and his business DBS.

## Overt Acts

16.      In furtherance of the conspiracy, and in order to effect the objects thereof, Defendants EDWARDS and VENKATA, Patel, and co-conspirators not indicted herein who are both known and unknown to the Grand Jury, in various combinations, directly and indirectly, within the District of Columbia and elsewhere, committed overt acts, including, but not limited to,

7

**A0050**

the following:

   a. On or about October 14, 2014, after Defendant EDWARDS had left DHS-OIG, Patel copied the EDS source code, which included the eSubpoena module, and database files from the DHS-OIG computer network onto an optical disk.

   b. On or about November 4, 2014, Patel instructed a subordinate DHS-OIG employee to send Patel instructions on how to install the EDS system. Patel concealed the purpose for which she was requesting the instructions. Patel caused the DHS-OIG employee to provide Patel with instructions on how to rebuild the EDS system on an alternate server.

   c. On or about November 4, 2015, Patel sent, from her personal Yahoo! email account to Defendant EDWARDS's personal Verizon email account, a list of Multiple Activation Keys and a Key Management Services Code associated with various Microsoft software products licensed to DHS-OIG.

   d. On or about December 1, 2015, Patel called an employee at USDA-OIG ("Witness One") to discourage USDA-OIG from acquiring EDS from DHS-OIG free of charge based on a Memorandum of Understanding between the agencies. Patel told Witness One that she thought USDA-OIG would be better served by EDS 2.0, a commercial product being developed by Defendant EDWARDS, with Patel's and Defendant VENKATA's assistance. Patel further stated that she and Defendant EDWARDS would like to meet with Witness One to discuss EDS 2.0.

   e. On or about May 6, 2016, Patel promoted EDS 2.0 to Witness One by describing EDS 2.0 as having the same modules and feel as EDS, but with a more modular, plug-and-play design.

   f. On or about May 10, 2016, Patel emailed, from her DHS-OIG government

8

**A0051**

email account, Witness One asking to meet Witness One for lunch to discuss EDS 2.0.

g.      On or about May 12, 2016, Defendant VENKATA and Patel exchanged text messages to coordinate a meeting with Defendant EDWARDS to discuss EDS 2.0.

h.      On or about May 25, 2016, Patel emailed, from her DHS-OIG government email account, Witness One to confirm a lunch meeting with Defendant EDWARDS to discuss EDS 2.0.

i.      On or about May 25, 2016, Patel sent, from her personal Yahoo! email account to Defendant EDWARDS's personal Verizon email account, a list of the key benefits of EDS 2.0.

j.      On or about May 26, 2016, Patel and Defendant EDWARDS met with Witness One at a restaurant in the District of Columbia. At that meeting, Patel and Defendant EDWARDS discussed the benefits of EDS 2.0 and the disadvantages of DHS-OIG's EDS. During the meeting, Patel stated that she could "tell him [Defendant EDWARDS] the concepts" of eSubpoena so that Defendant EDWARDS could incorporate eSubpoena into EDS 2.0. Patel further stated that Defendant VENKATA could incorporate eSubpoena into EDS 2.0. Defendant EDWARDS stated that he would give Patel his input so that the costs for USDA-OIG to purchase EDS 2.0 could be developed. Defendant EDWARDS and Patel also discussed providing the original version of EDS to Witness One on a laptop for Witness One to show his supervisors in the short term that he was not "dragging [his] feet" on obtaining a case management system while Defendant EDWARDS and Patel developed EDS 2.0. Defendant EDWARDS and Patel informed Witness One that he would just need to provide specifications to ensure that the laptop would be compatible with USDA-OIG's systems. Patel indicated that she would send the specifications to Witness One. At no point did Patel or EDWARDS disclose that EDS 2.0 had been built based on

9

**A0052**

the original EDS software that they had stolen from DHS-OIG and USPS-OIG.

        k.      On or about May 27, 2016, Patel copied DHS-OIG's EDS source code and database from the DHS-OIG computer network onto optical disks in order to provide them to Defendant EDWARDS to aid in his development of EDS 2.0. On or about May 27, 2016, Patel also sent, from her DHS-OIG government email account to her personal Yahoo! email account, a government document containing detailed instructions for rebuilding DHS-OIG's EDS web applications from backup files onto another server. Also on or about May 27, 2016, Patel forwarded that document from her personal Yahoo! email account to Defendant EDWARDS's personal Verizon email account.

        l.      On or about May 28, 2016, Defendant VENKATA and Patel exchanged text messages about meeting with Defendant EDWARDS at Patel's home on May 30, 2016 (Memorial Day).

        m.      On or about May 30, 2016, Patel and Defendants EDWARDS and VENKATA met at Patel's residence in Sterling, Virginia. During the meeting, Patel and Defendant VENKATA showed Defendant EDWARDS improvements that had been made to DHS-OIG's EDS system since Edwards's departure from DHS-OIG, including the addition of the eSubpoena module. Patel and Defendants EDWARDS and VENKATA discussed technology for EDS 2.0 based on USPS-OIG's case management system and DHS-OIG's EDS.

        n.      On or about May 31, 2016, Patel sent an email, from her DHS-OIG government email account, to Witness One providing the software specifications required for the laptop to ensure that Witness One would be able to access the original version of EDS.

        o.      In and around June 2016, Defendant EDWARDS hired a software development company in India to assist in the development of EDS 2.0. Defendant EDWARDS

10

**A0053**

told these programmers that he would provide them with the eSubpoena requirements, a complete working version of the system, and the code, with the assistance of Patel.

        p.      On or about June 27, 2016, Defendant VENKATA sent, from his DHS-OIG government email account to Patel's DHS-OIG government email account, technical instructions relating to DHS-OIG's EDS system. Patel first sent these instructions from her DHS-OIG government email account to her personal Yahoo! email account and then forwarded those instructions from her Yahoo! email account to Defendant EDWARDS's personal Verizon email account.

        q.      On or about June 30, 2016, Patel and Defendant EDWARDS participated in an online meeting with the Indian software development company. Defendant EDWARDS provided the software developers with remote access over the Internet to the EDS source code and DHS-OIG database files that Patel had provided to Defendant EDWARDS and that Defendant EDWARDS had saved on a non-government server in his residence.

        r.      On or about July 8, 2016, Defendant EDWARDS sent a text message to Witness One informing him that EDS 2.0 would be ready in mid- to late-September.

        s.      On or about July 8, 2016, Defendant VENKATA sent, from his DHS-OIG government email account to Patel's DHS-OIG government email account, a government document containing the functional requirements for the eSubpoena module. Also on or about July 8, 2016, and then again on or about July 20, 2016, Patel sent that document from her DHS-OIG government email account to her personal Yahoo! email account. On or about July 8, 2016, Patel forwarded that email and document from her personal Yahoo! email account to Defendant EDWARDS's personal Verizon email account.

        t.      On or about July 9, 2016, Defendant EDWARDS and Company A signed

11

**A0054**

an agreement for Company A to assist Defendant EDWARDS and DBS in the development of an Investigations Management System for Offices of Inspectors General.

u.      On or about July 13, 2016, Defendant VENKATA and Patel exchanged text messages about copying files and source code for Defendant EDWARDS onto a laptop provided by Defendant EDWARDS.

v.      On or about July 13, 2016, Defendant EDWARDS delivered a laptop to Patel at DHS-OIG Headquarters and Patel delivered it to Defendant VENKATA.  Patel requested that Defendant VENKATA check the laptop computer to determine whether fresh downloads of DHS-OIG's EDS source code and database files were needed, or whether the laptop computer just needed to be configured.

w.      On or about July 13, 2016, Defendant EDWARDS sent an email to Witness One informing him that the "next gen" version of DHS-OIG's EDS would be ready around the middle of September.

x.      On or about July 15, 2016, Defendant VENKATA returned the reconfigured laptop computer to Defendant EDWARDS by delivering it to him at a jewelry store in Tysons Corner, Virginia.

y.      On or about July 20, 2016, Defendant EDWARDS provided Defendant VENKATA with access to the server in Defendant EDWARDS's residence for Defendant VENKATA to perform work on configuring and developing the case management system.

z.      On or about August 1, 2016, Defendant EDWARDS wired $204.00 to Company A for "Payment for Services."

aa.      On or about August 3, 2016, Defendant EDWARDS wired $10,955.00 to Company A.

12

**A0055**

bb. On or about August 6, 2016, Defendant EDWARDS traveled from Washington Dulles International Airport to Bangalore, India, to meet with software developers for the purpose of developing EDS 2.0. Because Defendant EDWARDS was having trouble getting the system to work on his home server, he asked for Patel to provide him with a copy of DHS-OIG's EDS source code and data. Patel met Defendant EDWARDS on the side of a road in Virginia as Defendant EDWARDS was on his way to Washington Dulles International Airport and provided to Defendant EDWARDS two DVDs containing DHS-OIG's EDS source code and data. Defendant EDWARDS also brought the reconfigured laptop computer, which Defendant VENKATA had delivered to him at a jewelry store on or about July 15, 2016, with him to India.

cc. On or about October 12, 2016, Defendant EDWARDS provided an update to Witness One indicating that his team had built the full version of the EDS system, which would be ready by mid-December, that he had addressed all of the concerns Witness One had raised in their meeting, and that the system had eSubpoena "just like DHS has." Defendant EDWARDS offered to meet Witness One to show him the "demo version" on a laptop or could allow Witness One to log into the live version, which was hosted on Defendant EDWARDS's server. Witness One requested a cost proposal from Defendant EDWARDS.

dd. On or about October 13, 2016, Defendant EDWARDS sent an email to Witness One with potential dates and times for the EDS 2.0 product demonstration.

ee. On or about October 23, 2016, Defendant EDWARDS sent several WhatsApp messages to the developers in India informing them that his "prospective contract" wanted to see the system under development in December but that he wanted to meet in November to discuss the system.

ff. On or about November 2, 2016, Patel sent, from her personal Yahoo! email

13

**A0056**

account to Defendant EDWARDS's Verizon email account, U.S. General Services Administration public information on pricing case management systems for Patel and Defendant EDWARDS to use as a basis for pricing EDS 2.0 for Witness One.

gg.    On or about November 2, 2016, Defendant EDWARDS met with Witness One at USDA Headquarters in the District of Columbia. During the meeting, Defendant EDWARDS stated that EDS 2.0 contained an eSubpoena module, which he described as the same as the DHS-OIG version but faster and with a better flow. Defendant EDWARDS further informed Witness One that his team "went through and broke it apart, and each template we built back the way it was supposed to load."

hh.    On or about November 8, 2016, Defendant EDWARDS participated in calls and online meetings with the developers in India.

ii.    On or about December 21, 2016, Defendant EDWARDS wired $5,000.00 to Company A for "Full Payment for Delta Business Website Development and Deployment."

jj.    On or about January 3, 2017, Defendant EDWARDS left a voicemail for Witness One on his USDA-OIG office phone in the District of Columbia. In the voicemail, Defendant EDWARDS stated that Patel was working with him to develop EDS 2.0, and that he would have the system ready for Witness One in January to test.

kk.    In and around March 2017, Defendants EDWARDS and VENKATA continued to work together on the system hosted on Defendant EDWARDS's server. Defendant VENKATA restored DHS-OIG's EDS databases on, and fixed the configuration within, the system. Defendant VENKATA also assisted Defendant EDWARDS install and configure PARIS, with data imported from STARS, on another server in his residence to assist the developers in India in seeing how the system under development should work.

14

**A0057**

ll.      On or about March 15, 2017, Defendant EDWARDS provided Defendant VENKATA with remote login information for PARIS, which was hosted on Defendant EDWARDS's server.

mm.      On or about March 21, 2017, Patel once again copied the USPS-OIG database, source code, scripts, and file server contents (which Patel had previously uploaded to DHS-OIG's server in and around 2009 at Defendant EDWARDS's instruction), from the DHS-OIG server onto two DVDs.  Patel provided the two DVDs to Defendant VENKATA for delivery to Defendant EDWARDS.  Defendant VENKATA met Defendant EDWARDS outside of DHS-OIG Headquarters in the District of Columbia, and delivered the DVDs to Defendant EDWARDS.

nn.      On or about March 30, 2017, Defendant EDWARDS again traveled to India to meet with the Indian developers.  While Defendant Edwards was in India, Defendant EDWARDS called Patel for her assistance in explaining the database to the developers.

**(Conspiracy Commit Theft of Government Property and to Defraud the United States, in violation of Title 18, United States Code, Section 371)**

## COUNT TWO
### (Theft of Government Property)

17.      The allegations set forth in paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference.

18.      From in and around October 2014 through in and around April 2017, within the District of Columbia and elsewhere, Defendants EDWARDS and VENKATA, did willfully and knowingly steal, purloin, and convert copies of DHS-OIG's EDS system, copies of DHS-OIG's EDS source code and database files, copies of USPS-OIG's case management system, copies of USPS-OIG's STARS database and PARIS system, the PII of approximately 246,167 DHS employees and approximately 6,723 USPS employees, and Multiple Activation Keys and a Key

15

**A0058**

Management Services Code associated with various Microsoft software products, of a value exceeding $1,000, of goods and property of the United States.

**(Theft of Government Property
and Aiding and Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 641 and 2)**

### COUNTS THREE THROUGH ELEVEN
**(Wire Fraud)**

19.     The allegations set forth in paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference.

20.     From in and around October 2014 through in and around April 2017, within the District of Columbia and elsewhere, Defendants EDWARDS and VENKATA, knowingly devised a scheme to defraud USDA-OIG, and to obtain property of USDA-OIG by means of materially false and fraudulent pretenses, representations, and promises, and by concealing material facts.

21.     On or about the dates set forth below, in the District of Columbia and elsewhere, Defendant EDWARDS, for the purpose of executing the aforementioned scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, and sounds:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| Three | May 25, 2016 | Email from Patel's DHS-OIG government email account in the District of Columbia to Witness One's USDA-OIG government email account outside the District of Columbia confirming the Thursday, May 26, 2016, 12:30 p.m. lunch meeting between Defendant EDWARDS, Patel, and Witness One at a restaurant in the District of Columbia. |
| Four | May 27, 2016 | Email from Patel's DHS-OIG government email account in the District of Columbia to her personal Yahoo! email account outside the District of Columbia attaching a government document containing detailed instructions for rebuilding the EDS web applications from backup files onto another server. Patel then forwarded that document from her personal Yahoo! email account to Defendant EDWARDS's personal Verizon email account. |

16

**A0059**

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| Five | May 31, 2016 | Email from Patel's DHS-OIG government email account in the District of Columbia to Witness One's USDA-OIG government email account outside the District of Columbia containing software specification requirements for laptop containing EDS development and code, as discussed during the Thursday, May 26, 2016, 12:30 p.m. lunch meeting between Defendant EDWARDS, Patel, and Witness One at a restaurant in the District of Columbia. |
| Six | June 27, 2016 | Email from Patel's DHS-OIG government email account in the District of Columbia to her personal Yahoo! email account outside the District of Columbia forwarding technical instructions relating to the EDS system. Also on June 27, 2016, Patel forwarded those instructions from her Yahoo! email account to Defendant EDWARDS's Verizon email account. |
| Seven | July 8, 2016 | Email from Patel's DHS-OIG government email account in the District of Columbia to her personal Yahoo! email account outside the District of Columbia attaching a government document containing the detailed functional requirements developed by DHS-OIG to design the eSubpoena module for EDS. Patel forwarded that document from her personal Yahoo! email account outside the District of Columbia to Defendant EDWARDS's personal Verizon email account. |
| Eight | November 2, 2016 | Telephone call from Defendant EDWARDS's cell phone to Witness One's USDA-OIG office phone in the District of Columbia. |
| Nine | January 3, 2017 | Telephone call from Defendant EDWARDS's cell phone to Witness One's USDA-OIG office phone in the District of Columbia leaving voicemail discussing EDS 2.0. |
| Ten | March 21, 2017 | WhatsApp message from Defendant EDWARDS to Patel in which Defendant EDWARDS requested Patel to copy DVDs containing government software and information. |

22.    On or about the dates set forth below, in the District of Columbia and elsewhere,

Defendants EDWARDS and VENKATA, for the purpose of executing the aforementioned scheme

and artifice, did transmit and cause to be transmitted by means of wire communication in interstate

commerce the following writings, signs, signals, and sounds:

| Count | Date | Wire Transmission |
|-------|------|-------------------|
| Eleven | March 22, 2017 | Telephone call from Defendant EDWARDS's cell phone to Defendant VENKATA's cell phone to arrange for Defendant |

17

**A0060**

| Count | Date | Wire Transmission |
|-------|------|-------------------|
|  |  | EDWARDS to pick up DVDs containing government software and information in the District of Columbia. |

**(Wire Fraud,
in violation of Title 18, United States Code, Section 1343)**

### COUNT TWELVE
**(Aggravated Identity Theft)**

23.     The allegations set forth in paragraphs 1 through 22 of this Indictment are realleged and incorporated by reference.

24.     On or about the dates set forth above, within the District of Columbia and elsewhere, Defendants EDWARDS and VENKATA, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, K.C., during and in relation to certain felony offenses, to wit, Theft of Government Property and Wire Fraud, as alleged in Counts Two through Eleven of this Indictment as set forth above.

**(Aggravated Identity Theft and Aiding and Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1028A and 2)**

### COUNT THIRTEEN
**(Aggravated Identity Theft)**

25.     The allegations set forth in paragraphs 1 through 22 of this Indictment are realleged and incorporated by reference.

26.     On or about the dates set forth above, within the District of Columbia and elsewhere, Defendants EDWARDS and VENKATA, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, S.B., during and in relation to certain felony offenses, to wit, Theft of Government Property and Wire Fraud, as alleged in Counts Two through Eleven of this Indictment as set forth above.

**(Aggravated Identity Theft and Aiding and Abetting and Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 1028A and 2)**

18

## COUNT FOURTEEN
### (Aggravated Identity Theft)

27.    The allegations set forth in paragraphs 1 through 22 of this Indictment are realleged and incorporated by reference.

28.    On or about the dates set forth above, within the District of Columbia and elsewhere, Defendants EDWARDS and VENKATA, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, B.U., during and in relation to certain felony offenses, to wit, Theft of Government Property and Wire Fraud, as alleged in Counts Two through Eleven of this Indictment as set forth above.

**(Aggravated Identity Theft and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1028A and 2)**

## COUNT FIFTEEN
### (Aggravated Identity Theft)

29.    The allegations set forth in paragraphs 1 through 22 of this Indictment are realleged and incorporated by reference.

30.    On or about the dates set forth above, within the District of Columbia and elsewhere, Defendants EDWARDS and VENKATA, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, M.C., during and in relation to certain felony offenses, to wit, Theft of Government Property and Wire Fraud, as alleged in Counts Two through Eleven of this Indictment as set forth above.

**(Aggravated Identity Theft and Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1028A and 2)**

## COUNT SIXTEEN
### (Destruction of Records)

31.    The allegations set forth in paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference.

19

**A0062**

32.     On or about April 19, 2017, DHS-OIG Special Agents executed search warrants at the residences of Defendant EDWARDS and Patel.

33.     On or about April 20, 2017, DHS-OIG Special Agents interviewed Defendant VENKATA at DHS-OIG Headquarters in the District of Columbia.  During the interview, Defendant VENKATA was questioned about his contacts and communications with Defendant EDWARDS and Patel, EDS, and whether he had ever provided copies of EDS, or other government software, code, or database data to anyone outside of government.

34.     On or about April 20, 2017, Defendant EDWARDS placed five telephone calls to Defendant VENKATA's cell phone.

35.     Between on or about April 20, 2017, and April 27, 2017, within the District of Columbia and elsewhere, Defendant VENKATA, with the intent to impede, obstruct, and influence, and in relation to and in contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, did knowingly destroy, mutilate, and conceal records and documents, to wit:  Defendant VENKATA's text and email correspondence with Defendant EDWARDS and Patel, and which destruction, mutilation, and concealment Defendant VENKATA well knew and contemplated were related to the proper administration of DHS-OIG's investigation of Defendant EDWARDS, Defendant VENKATA, and Patel, a matter that Defendant VENKATA knew and contemplated was within the jurisdiction

20

**A0063**

of DHS-OIG, a department and agency of the United States, in violation of Title 18, United States

Code, Section 1519.

**(Destruction of Records,
in violation of Title 18, United States Code, Section 1519)**

A TRUE BILL:

_____

FOREPERSON

*Timothy J. Shea/MZ*

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA

Timothy J. Shea                         Corey R. Amundson
United States Attorney                  Chief
For the District of Columbia            Public Integrity Section
U.S. Department of Justice              U.S. Department of Justice

BY: _____        BY: _____
David B. Kent                           Victor R. Salgado
Assistant United States Attorney        Trial Attorney
Fraud & Public Corruption Section       Public Integrity Section

21

**A0064**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                               Plaintiff,

v.

CHARLES KUMAR EDWARDS and
MURALI YAMAZULA VENKATA

                            Defendants.

Case No. 20-cr-00066-RDM

Honorable Randolph D. Moss

Trial: February 18, 2022

## MURALI YAMAZULA VENKATA'S NOTICE OF FILING OF PUBLIC AUTHORITY AND ENTRAPMENT DEFENSES

Pursuant to Fed. R. Crim. P. 12.3, Murali Yamazula Venkata hereby provides notice to the government of his intent to assert public-authority and entrapment defenses at trial.

The law enforcement agency involved with respect to this defense is the Office of Inspector General for the United States Department of Homeland Security ("DHS-OIG").

The DHS-OIG employee on whose behalf Mr. Venkata acted was Sonal Patel, Supervisory Information Technology Specialist. Mr. Venkata acted with public authority from the time period of on or about October of 2014 to on or about May 16, 2017.

Mr. Venkata provides further notice of his intent to assert an entrapment defense at trial based on the actions of Ms. Patel, and possibly other government agents, working on behalf of law enforcement agencies other than DHS-OIG.[1]

---

[1] Although the Federal Rules of Criminal Procedure do not require a defendant to provide notice of an entrapment defense, Mr. Venkata is providing notice of his intent to seek an entrapment defense in accordance with the Court's October 27, 2021, scheduling order. *See* ECF No. 53 ¶ 2.

Respectfully submitted,

_____ /s/ Kamil Shields _____

Kamil R. Shields (DCB No. 1674318)
Pardis Gheibi (CAB No. 331336)
Sullivan & Cromwell LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldsk@sullcrom.com
Email: gheibip@sullcrom.com

Katherine A. Savarese (NYB No. 5489182)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-3826
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 1st day of December, 2021, I caused a true and correct copy of

the foregoing to be electronically filed with the Clerk of the Court using CM/ECF.  I also certify

that the foregoing document was served this day on all counsel of record, either via transmission

of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those

counsel to receive electronically Notices of Electronic Filing.

*/s/ Kamil Sheilds*
Kamil R. Shields

3

A0067

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 20-cr-00066-RDM |
| | ) | |
| MURALI YAMAZULA VENKATA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## UNITED STATES' MOTIONS *IN LIMINE* NOS. 1 AND 2 TO PRECLUDE UNAVAILABLE AFFIRMATIVE DEFENSES

Venkata has noticed his intent to assert the affirmative defenses of public authority and entrapment. *See* ECF No. 57. Venkata's assertion of those defenses lacks any basis in law or fact. Allowing him to present such defenses at trial would only confuse the jury and distract from the real issues in the case. The United States respectfully moves the Court for a pretrial order precluding Venkata from presenting the affirmative defenses of public authority or entrapment at trial.

## I. The Court Should Resolve the Legal Sufficiency of Venkata's Affirmative Defenses Before Trial.

A district court may properly require a defendant who seeks to assert an affirmative defense to make a pretrial offer of proof to demonstrate that the evidence in support of his defense is sufficient as a matter of law to satisfy its essential elements. *See United States v. Bailey*, 444 U.S. 394, 416 (1980). "The requirement of a threshold showing on the part of those who assert an affirmative defense to a crime is by no means a derogation of the importance of the jury as a judge of credibility." *Id.* Rather, it reflects the need to "husband the resources necessary for that process" so that "the trial court and jury [are not] burdened with testimony" relating to a defense that cannot

1

be established as a matter of law. *Id.* When a court rules on the availability of a defense in a motion *in limine*, it must "accept as true the evidence proffered by the defendants." *United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002). Nonetheless, "where the evidence proffered in response to the motion *in limine* is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate." *Id.* Thus, in response to this Motion, Venkata should be required to proffer evidence that is sufficient to satisfy each element of his asserted defenses. If he is unable to do so, then the Court should preclude him from presenting those defenses at trial.

The sufficiency of Venkata's affirmative defenses will have important implications for the conduct of the trial. First, if Venkata's affirmative defenses fail as a matter of law, then to permit him to argue them to the jury in his opening statement or to elicit testimony related to them during trial would be confusing and distracting to the jury. Second, the availability of Venkata's affirmative defenses may affect the admissibility of evidence. For example, he may argue that evidence of prior good acts is admissible under Rules 404(b) or 405(b) to prove the second prong of an entrapment defense, lack of predisposition to commit crimes. *See United States v. Thomas*, 134 F.3d 975, 979–80 (9th Cir. 1998). Third, Venkata has requested that the Court give the jury a preliminary instruction on the apparent public authority defense, which will mislead the jury as to the applicable law. Finally, the viability of Venkata's affirmative defenses will undoubtedly affect both sides' trial strategy. *See United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980) ("A pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations."). Because of the centrality of these issues to the conduct of the trial, the Court can and should resolve the legal sufficiency of Venkata's asserted

2

affirmative defenses before trial.

II.     **Motion *in Limine* No. 1:  To Preclude Venkata from Asserting a Public Authority or Entrapment-By-Estoppel Defense.**

Defendant Murali Venkata has noticed his intent to assert a public authority defense at trial. *See* ECF No. 57.  Venkata identifies Sonal Patel as the public official on whose behalf he acted, the Department of Homeland Security – Office of Inspector General ("DHS-OIG") as the relevant law enforcement agency, and the time period during which he acted with public authority as in or about October 2014 to on or about May 16, 2017.  *Id.*  Because, as a matter of law, Venkata cannot establish a public authority defense—or the closely related defense of entrapment by estoppel— he should be precluded from asserting such defenses at trial.

A.      **Applicable Law**

The affirmative defense of "public authority" originated from the common law rule that "illegal actions committed by a public official or an officer of the law in the course of his duties were not crimes."  *United States v. Pitt*, 193 F.3d 751, 756 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017).  The modern public authority defense takes two forms.  First, under the actual public authority defense, "the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in a covert activity."  *United States v. Baptista-Rodriguez*, 12 F.3d 1354, 1368 n.18 (11th Cir. 1994).  This defense applies only if "the government agent in fact had the authority to empower the defendant to perform the acts in question."  *Id.*

Second, defendants sometimes assert a defense of apparent public authority, which is the claim that they believed, reasonably but erroneously, that the government official had authority to authorize the otherwise unlawful conduct.  *Id.*; *see also* Fed. R. Crim. P. 12.3 (requiring a

3

defendant to give notice of his intent to assert "a defense of actual or believed exercise of public authority").   Despite Rule 12.3's reference to the defense of "believed exercise of public authority," every Circuit—six in total—that has decided this issue has held that apparent public authority is not a defense.  Those Circuits hold that only reliance on actual public authority will excuse conduct that is otherwise unlawful.[1]  Four other Circuits have strongly suggested that they would agree, [2] and the Ninth Circuit has issued contradictory opinions.[3]

---

[1]    *See United States v. Sariles*, 645 F.3d 315, 319 (5th Cir. 2011) ("[W]e hold that the public authority defense requires the defendant reasonably to rely on the actual, not apparent, authority of the government official or law enforcement officer to engage the defendant in covert activity."); *United States v. Fulcher*, 250 F.3d 244, 254 (4th Cir. 2001) ("[W]e adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official to engage him in a covert activity."); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999) (limiting "the use of the defense of public authority to those situations where the government agent in fact had the authority to empower the defendant to perform the acts in question"), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994) ("[R]eliance on the *apparent* authority of a government official is not a defense in this circuit."); *United States v. Holmquist*, 36 F.3d 154, 161 n.6 (1st Cir. 1994) ("The 'defense' of apparent public authority is a defense based on a mistaken but good-faith belief that one's conduct is authorized by the government.  Appellant's repeated references to this defense constitute little more than a school of red herrings.  The defense is not a defense at all."); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) ("We decline to adopt Judge Wilkey's view that a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real."), *superseded by statute on other grounds as recognized by United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010).

[2]    *See United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011) (stating in *dicta* that "[t]he validity of this defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question" (quoting *Baptista-Rodriguez*, 17 F.3d at 1368 n.18)); *see also United States v. Xiong*, 914 F.3d 1154, 1160 & n.4 (8th Cir. 2019) (noting that "[o]ur sister circuits to consider the issue unanimously require actual authority" but declining to decide the issue); *United States v. Granados*, 501 F. App'x 820, 823 (10th Cir. 2012) (same); *United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011) (same).

[3]    *Compare United States v. Blair*, 210 F.3d 385 (9th Cir. 2000) (unpublished) ("The public

4

In the D.C. Circuit, "the precise parameters, and indeed the very validity, of the public authority defense are unclear." *United States v. Lam Kwong-Wah*, 924 F.2d 298, 310 n.9 (D.C. Cir. 1991). The confusion dates back to *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976). The defendants in *Barker* were prosecuted for their role in the 1971 burglary of the office of Dr. Lewis J. Fielding, psychiatrist to Daniel Ellsberg, the source of the Pentagon Papers leak. *Id.* at 943 (opinion of Wilkey, J.). The defendants acted at the direction of E. Howard Hunt, a member of the so-called "Room 16" unit established within the Nixon White House to investigate leaks of classified information. *Id.* They argued that their good faith, reasonable reliance on Hunt's apparent authority was a complete defense to the charges. *Id.* at 946.

The D.C. Circuit reversed the defendants' convictions and remanded for a new trial. *Id.* at 943 (per curiam). The Court issued three separate opinions. Judge Wilkey recognized a defense based on reliance on apparent authority, requiring a showing of "both (1) facts justifying [the defendants'] reasonable reliance on Hunt's apparent authority and (2) a legal theory on which to base a reasonable belief that Hunt possessed such authority." *Id.* at 949 (opinion of Wilkey, J.). Judge Merhige rejected that broad defense, but recognized a narrower defense based on Section 2.04(3)(b) of the Model Penal Code. *See id.* at 955 (opinion of Merhige, J.). In Judge Merhige's view, the "defense is available if, and only if, an individual (1) reasonably, on the basis of an

---

authority defense is available when a defendant has committed an otherwise illegal act in reasonable and sincere reliance upon a statement or act of a government agent with actual legal authority to empower the commission of the illegal act in question." (citing *United States v. Matta-Ballesteros*, 71 F.3d 754, 770 n.12 (9th Cir. 1995), *as amended*, 98 F.3d 1100 (9th Cir. 1996), and *United States v. Burrows*, 36 F.3d 875, 881–82 (9th Cir. 1994))), *with United States v. Bear*, 439 F.3d 565 (9th Cir. 2006) ("The public authority defense is properly used when the defendant reasonably believed that a government agent authorized her to engage in illegal acts.").

5

objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field." *Id.*  Judge Leventhal dissented.  *Id.* at 957–73 (Leventhal, J., dissenting).

Subsequent defendants argued that *Barker* establishes an apparent public authority defense. *See, e.g.*, *United States v. Kelly*, 556 F.2d 257, 265 (5th Cir. 1977).  The D.C. Circuit has squarely rejected that reading.  In *United States v. North*, 910 F.2d 843 (D.C. Cir.) (per curiam), *opinion withdrawn and superseded in part on other grounds*, 920 F.2d 940 (D.C. Cir. 1990), it held that Oliver North was not entitled to a jury instruction on the apparent authority defense purportedly recognized in *Barker*. *Id*. at 852.  The Court explained that "we have read *Barker*, and reread it, and simply cannot find a rule of law to apply." *Id*. at 879.  It concluded that, "[i]n the absence of clear and comprehensible Circuit authority that we must do so, we refuse to hold that following orders, without more, can transform an illegal act into a legal one." *Id.* at 881; *see also United States v. Duggan*, 743 F.2d 59, 83–84 (2d Cir. 1984) (noting that the apparent public authority defense espoused by Judge Wilkey in *Barker* "received but one vote and cannot be viewed as the rationale of the court."), *superseded by statute on other grounds as recognized by United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010); *United States v. Sariles*, 645 F.3d 315, 318 (5th Cir. 2011) (same).  However, the Court left open the possibility that defendants could "avail themselves of the defense of reliance on an official misstatement of the law as that defense is described in Judge Merhige's opinion." *North*, 901 F.2d at 881 n.10.  That defense, it emphasized, "is far more circumscribed than the one sought by North here." *Id.*  A subsequent panel of the D.C. Circuit recognized reliance on an official misstatement of the law as a valid defense. *See United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994).

The defense of official misstatement of the law described in Judge Merhige's opinion closely resembles the defense known as entrapment by estoppel. That defense is "rarely available." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994). It "applies when a government official tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime in reasonable reliance on the official's representation." *Baptista-Rodriguez*, 12 F.3d at 1368 n.18; *see also United States v. Smith*, 940 F.2d 710, 714 (1st Cir. 1991) (same). The distinction between a public authority defense and an entrapment-by-estoppel defense is that, under the former, "the defendant engages in conduct that the defendant knows to be otherwise illegal but that has been authorized by the government," whereas under the latter, "the defendant, relying on the government's statements, believes that his conduct is not prohibited." *United States v. Stallworth*, 656 F.3d 721, 727–28 (7th Cir. 2011).

A recent and exhaustive opinion by Chief Judge Howell set forth the parameters of the entrapment-by-estoppel defense in this District. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 29–33 (D.D.C. 2021). Chief Judge Howell noted that "entrapment by estoppel is a narrowly tailored defense, available in very limited circumstances." *Id.* at 30. She concluded that "[t]o win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Id.* at 31 (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).

7

A0074

## B.   Venkata Cannot Establish a Public Authority or Entrapment-by-Estoppel Defense as a Matter of Law.

As a matter of law, Venkata cannot establish any form of public authority defense.  First, Venkata cannot establish a defense of actual public authority because Patel possessed no such authority.  Patel was an IT professional, not a law enforcement officer.  She had no power to authorize Venkata to steal government property, and she has pleaded guilty to her own role in the offense.  *See United States v. Patel*, No. 19-cr-81, ECF No. 4 (D.D.C. Apr. 4, 2019).

Second, the Court should not allow Venkata to assert a defense of apparent public authority.  The Court should hold, consistent with *North*, 910 F.2d at 881, and the overwhelming weight of authority from other Circuits, *see supra*, notes 1 & 2, that there is no such defense.  The Circuits that have rejected the apparent public authority defense have done so because it constitutes a mistake of law, which, based on longstanding common-law principles, is not a defense.  *See Duggan*, 743 F.2d at 83 ("It is well settled that ignorance of the law or mistake as to the law's requirements is not a defense to criminal conduct.").  As noted above, the common-law public authority defense held that "the illegal actions of a public official or law enforcement officer acting within the scope of his duties were not crimes."  *Sariles*, 645 F.3d 315.  A defendant claiming to act on behalf of that officer could escape liability "only because that officer had the ability to permit the conduct."  *Id.*  When a defendant claims that he made a good-faith mistake about the scope of the officer's authority, he makes a mistake of law, which does not excuse otherwise criminal conduct.  *Id.*; *see also United States v. Fulcher*, 250 F.3d 244, 253 (4th Cir. 2001) ("[R]eliance on the apparent authority of a government official is nothing more than a mistake about 'the legal prerogatives attached' to such status and thus constitutes a mistake of law."); *Baptista-Rodriguez*, 12 F.3d at 1368 n.18 (same); *Duggan*, 743 F.2d at 83 (same).  The reasoning

8

**A0075**

of these decisions is unassailable, and the Court should adopt it.

Even if reliance on apparent public authority were a defense, Venkata could not establish it as a matter of law. The D.C. Circuit has noted that, if that defense exists, "a defendant must show at least that he 'honestly and reasonably' believed that his actions were being committed pursuant to lawful authority, and the belief must be 'objectively reasonable.'" *Lam Kwong-Wah*, 924 F.2d at 310 n.9 (quoting *Barker*, 546 F.2d at 947–49). Even Judge Wilkey in *Barker* would have required the defendant to show "both (1) facts justifying [his] reasonable reliance on [the official's] apparent authority and (2) a legal theory on which to base a reasonable belief that [the official] possessed such authority." 546 F.2d at 949 (opinion of Wilkey, J.).

Here, there can be no facts or plausible legal theory that would lead Venkata to reasonably believe that Patel had authority to sanction violations of the United States Code. Patel's job was to manage DHS-OIG's information technology systems, not to interpret, administer, or enforce the law. The only fact to which Venkata could point in support of Patel's apparent authority is that she was a government employee. But that, standing alone, cannot possibly be enough. Otherwise, every supervisory federal worker could effectively immunize criminal conduct by their subordinates simply by issuing orders. *Cf. North*, 910 F.2d at 881 ("[W]e refuse to hold that following orders, without more, can transform an illegal act into a legal one."). Such a rule would have particularly absurd consequences in a jurisdiction such as this one, where federal workers proliferate. Accordingly, if the Court determines that there is an apparent public authority defense, it should find that any reliance by Venkata on Patel's apparent authority was objectively unreasonable as a matter of law.

Third, and relatedly, Venkata cannot establish a defense of entrapment by estoppel or

9

A0076

official misstatement of the law.  Chief Judge Howell explained in *Chrestman* that an element of the entrapment-by-estoppel defense is that "the government agent was responsible for interpreting, administering, or enforcing the law defining the offense."  525 F. Supp. 3d at 31.  Similarly, Judge Merhige stated in *Barker* that the defense of official misstatement of the law required that the misstatement be "issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field."  546 F.2d at 955 (opinion of Merhige, J.).  Because Patel had no such responsibility, Venkata cannot establish that element.

Based on the foregoing, the United States respectfully moves the Court for a pretrial ruling precluding Venkata from presenting the defenses of public authority or entrapment by estoppel.

## III.   Motion *in Limine* No. 2:  To Preclude Venkata from Asserting an Entrapment Defense.

Mr. Venkata also noticed his intent to assert an entrapment defense at trial "based on the actions of Ms. Patel, and possibly other government agents, working on behalf of law enforcement agencies other than DHS-OIG."  ECF No. 57.  Because Venkata cannot meet his burden to show entrapment as a matter of law, he should be precluded from making any argument or introducing any testimony or evidence relating to entrapment at trial.

### A.   Applicable Law

"[E]ntrapment is a relatively limited defense" that is rooted "in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of the proscribed offense, but was induced to commit them by the Government."  *United States v. Russell*, 411 U.S. 423, 435 (1973).  "Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer."  *Sorrells v. United States*, 237 U.S. 435, 454

10

(1932).  Because the government has the authority to engage in a variety of law enforcement practices, including setting "trap[s] for the unwary criminal," neither the fact that the government "afford[ed] opportunities or facilities for the commission of the offense" nor "the mere fact of deceit" will "defeat a prosecution."  *Russell*, 411 U.S. at 429, 435–36 (internal quotation marks and citations omitted).  Rather, "it is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play."  *Id.* at 436.

A valid entrapment defense has two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."  *Mathews v. United States*, 485 U.S. 58, 63 (1988).  In the D.C. Circuit, "the defendant bears the initial burden of showing government inducement; if he is successful, the burden then shifts to the government to prove the defendant was predisposed to commit the crime."  *United States v. Glover*, 153 F.3d 749, 754 (D.C. Cir. 1998) (citations omitted).  Inducement requires a showing that "the government's behavior was such that a law-abiding citizen's will to obey the law could have been overborne."  *United States v. Kelly*, 748 F.2d 691, 698 (D.C. Cir. 1984).  Inducement may take a variety of forms, such as "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship."  *United States v. Burkley*, 591 F.2d 903, 913 (D.C. Cir. 1978) (quoting Bar Ass'n of D.C., Criminal Jury Instructions No. 5.505 (3d Ed. 1978)).  However, "*mere* solicitation by the Government, to which the defendant acquiesced with reasonable readiness, does not evince inducement."  *United States v. McKinley*, 70 F.3d 1307, 1312 (D.C. Cir. 1995) (internal quotation marks omitted).

Importantly, the inducement must come from the government.  It is well settled that

11

A0078

"[p]ersuasion, seduction, or cajoling by a private party does not qualify as entrapment." *United*

*Burkley*, 591 F.2d at 911 n.15. The Courts of Appeals are divided, however, as to whether the

entrapment defense is available in cases of "derivative entrapment," meaning where "the

government acts through an *unwitting* agent." *United States v. Washington*, 106 F.3d 983, 993

(D.C. Cir. 1997); *see also United States v. Martinez*, 979 F.2d 1424, 1432 (10th Cir. 1992) (noting

split and collecting cases). The D.C. Circuit recognizes a defense of derivative entrapment only

in the rare cases in which "unwitting intermediaries—at the government's direction—deliver the

government's inducement to a specified third party." *Washington*, 106 F.3d at 993. In other

words, the "derivative entrapment defense may only be raised if the alleged inducement

communicated by the unwitting intermediary is the same inducement, directed at the same target,

as the inducement that the government agent directs the intermediary to communicate." 

*Washington*, 106 F.3d at 995. It does not apply if, "in response to pressure put on him by the

government, the unknowing intermediary *on his own* induces the defendant to engage in criminal

activity." *United States v. Layeni*, 90 F.3d 514, 520 (D.C. Cir. 1996).

### B. Venkata Cannot Establish an Entrapment Defense as a Matter of Law.

As a matter of law, Venkata cannot meet his burden to show inducement. Venkata was not

one, but two steps removed from any law enforcement official. The investigation was conducted

by agents from DHS-OIG and USPS-OIG. Those agents worked with a civilian informant, Peter

Paradis. At their direction, Paradis engaged in meetings and conversations with Sonal Patel. Patel,

in turn, recruited Venkata into the conspiracy. Venkata had no direct contact with Paradis, much

less with the law enforcement agents running the investigation.

There can be no genuine dispute that Patel was not operating as a witting government agent.

Far from being in on the law enforcement operation, Patel was its target. She believed that Paradis

was genuinely interested in acquiring Next Gen EDS for USDA-OIG and she proceeded to commit crimes accordingly.  *See* Statement of Offense, *United States v. Patel*, No. 19-cr-81, ECF No. 5 (RMC) (Apr. 4, 2019).

The fact that Patel happened to be a federal employee does not mean that she was a government agent in the relevant sense.  Again, Patel was not a law enforcement official.  *See Lopez v. United States*, 373 U.S. 427, 434 (1963) ("The conduct with which the defense of entrapment is concerned is the manufacturing of crime by law enforcement officials and their agents."); *Sherman v. United States*, 356 U.S. 369, 373 (1958) ("Entrapment occurs only when the criminal conduct was the product of the creative activity of law-enforcement officials." (internal quotation marks omitted)).  For purposes of the entrapment defense, she is a "private party" whose "[p]ersuasion, seduction, or cajoling . . . does not qualify as entrapment even if the defendant was not predisposed to commit the crime prior to such pressure."  *Burkley*, 591 F.2d at 911 n.15; *Layeni*, 90 F.3d at 517 ("[T]here is no defense of private entrapment.").  If the bare fact that Patel was a federal employee were enough to transform her into a government agent for the purposes of the entrapment defense, then anyone who was recruited by a diplomat, a VA doctor, or a zookeeper at the National Zoo to commit a crime would have a potential entrapment defense.  That cannot be right.

At most, Patel was an unwitting agent of law enforcement, and any entrapment defense Venkata may have is one of derivative entrapment.  To establish that defense, Venkata would have to show that Patel "carr[ied] out the government's explicit instructions to persuade a particular individual to commit a particular crime using a particular type of inducement."  *Washington*, 106 F.3d at 994.  There is not a shred of evidence that any of that occurred.  There is no evidence that

Paradis communicated any inducement to Patel beyond "mere solicitation." *McKinley*, 70 F.3d at 1312. Nor is there any evidence that Patel communicated any such inducement to Venkata. But even if there were, Venkata would still have to show that Paradis specifically instructed Patel to persuade him—Murali Venkata—to commit the specific crimes alleged in the indictment using a specific type of inducement. Venkata cannot make that showing because it did not happen. *See Washington*, 106 F.3d at 995; *United States v. Spring*, 102 F.3d 1245, 1261 (D.C. Cir. 1996) (holding that defendant failed to establish entrapment where alleged inducement "was not specifically contemplated by the Government, which had not targeted any particular salesperson"). Accordingly, Venkata is not entitled to assert an entrapment defense as a matter of law. The United States respectfully moves the Court for a pretrial ruling precluding him from doing so.

## IV.   CONCLUSION

Venkata's asserted affirmative defenses fail as a matter of law. To streamline the issues for trial and avoid exposing the jury to improper argument and inadmissible evidence, the United States respectfully requests that the Court issue a pretrial ruling precluding Venkata from presenting the affirmative defenses of public authority or entrapment.

14

Respectfully submitted,

MATTHEW M. GRAVES                    COREY R. AMUNDSON
UNITED STATES ATTORNEY               CHIEF
For the District of Columbia         Public Integrity Section

By: */s/ Christine M. Macey*         By:   */s/ Victor R. Salgado*
CHRISTINE M. MACEY                         VICTOR R. SALGADO
D.C. Bar No. 1010730                       D.C. Bar No. 975013
Assistant United States Attorney           Senior Litigation Counsel
Fraud, Public Corruption, and Civil Rights Section   Public Integrity Section
555 4th Street, NW                         Criminal Division
Washington, D.C. 20530                     1301 New York Avenue, NW
(202) 252-7058                             Washington, D.C. 20530
christine.macey@usdoj.gov                  (202) 353-4580
                                           victor.salgado@usdoj.gov

                                     By:   */s/ Celia R. Choy*
                                           CELIA R. CHOY
                                           D.C. Bar No. 1017211
                                           Trial Attorney
                                           Public Integrity Section
                                           Criminal Division
                                           1301 New York Avenue, NW
                                           Washington, D.C. 20530
                                           (202) 875-1557
                                           celia.choy@usdoj.gov

15

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cr-00066-RDM** |
| | ) | |
| **MURALI YAMAZULA VENKATA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### UNITED STATES' TRIAL BRIEF

The United States' evidence at trial will demonstrate that the defendant, Murali Yamazula Venkata, engaged in an unlawful scheme to convert government property for private gain. Venkata and his co-conspirators stole valuable software, code, and databases belonging to the government. Their plan was to repurpose and repackage the stolen property as a commercial software product, which they intended to sell back to the government at a profit. They hired a software development company in India to build the purported commercial product. To facilitate the Indian developers' work, they gave the developers access to vast amounts of sensitive information contained within the stolen databases, including the Personally Identifying Information ("PII") of hundreds of thousands of government employees. Upon learning that he was under investigation, Venkata deleted incriminating text messages and emails in an effort to obstruct the investigation.

This Trial Brief describes how the theft and fraud scheme worked, how the government will prove it, and certain legal and factual issues that may arise during trial.

## I.   RELEVANT BACKGROUND

### A.   Procedural History

On March 5, 2020, a grand jury returned an Indictment charging defendants Venkata and

1

Charles Kumar Edwards with conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, theft of government property in violation of 18 U.S.C. §§ 641 & 2, wire fraud in violation of 18 U.S.C. §§ 1343 & 2, and aggravated identity theft in violation of 18 U.S.C. §§ 1028A & 2.  The Indictment also charged Venkata with destruction of records in violation of 18 U.S.C. § 1519.

On April 4, 2019, Venkata's and Edwards's co-conspirator, Sonal Patel, pleaded guilty to a separate Information charging her with one count of conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371.  On January 14, 2022, Edwards pleaded guilty to Counts One and Two of the Indictment, charging him with conspiracy and theft of government property, respectively.  Edwards and Patel are currently awaiting sentencing.  Trial of Venkata is scheduled to begin on March 28, 2022.

Currently pending before the Court are Venkata's Motions to Dismiss the Indictment (ECF Nos. 59–63), Venkata's Motions *in Limine* (ECF Nos. 67, 69), and the United States' Motions *in Limine* Nos. 1 and 2 to Preclude Unavailable Affirmative Defenses (ECF No. 98).

**B.     Facts**

**1.      The Conspirators**

From 2008 to 2013, Charles Kumar Edwards worked at the Department of Homeland Security - Office of Inspector General ("DHS-OIG"), where he rose to the post of Acting Inspector General.   During Edwards's tenure at DHS-OIG, the agency acquired an electronic case management system known as the Enforcement Database System ("EDS") at a cost of approximately $3.16 million.  EDS is DHS-OIG's platform for creating, managing, and storing investigative records.  As such, it contains large amounts of sensitive information relating to investigations and audits of DHS programs, as well as PII of DHS employees—such as name,

2

social security number, and home address.

Beginning in June 2010, Venkata was employed as an Information Technology ("IT") Specialist at DHS-OIG.  Venkata's responsibilities included maintaining and developing DHS-OIG's IT systems and serving as a team lead for the IT Division's support group.  Venkata was well aware of his duty to protect government computer systems and information: when he joined DHS-OIG, he signed a Computer Access Agreement, in which he agreed that he would "not remove DHS computer systems or software from Government work spaces without expressed written permission" and that he would "use only DHS IT equipment to access DHS & OIG systems and information."

Venkata reported to Sonal Patel, the Enterprise Applications Branch Chief in the IT Division at DHS-OIG Headquarters.  Patel's responsibilities at DHS-OIG included developing and enhancing EDS to better serve the office's investigatory needs.  One of the enhancements she supervised was the creation of a new application known as eSubpoena, which automatically generated subpoenas based on input from the user.  Venkata was eSubpoena's lead developer.  Venkata acknowledged in statements to DHS-OIG investigators that EDS, including the eSubpoena application that he had developed, was the property of the United States government.

Before joining DHS-OIG, Edwards, Patel, and Venkata had all previously worked at the United States Postal Service – Office of Inspector General ("USPS-OIG").  While at USPS-OIG, Patel helped to develop USPS-OIG's case management systems.  Those systems included the STARS database, which housed investigation and audit data, as well as human resources data, including PII of USPS employees, and the Performance and Results Information System ("PARIS"), an interface that allowed users to access information stored in the STARS database.

3

### 2.    The Conspiracy

In September 2015, after Edwards left DHS-OIG, he founded a company called Delta Business Solutions.  His plan was to develop a privately owned, commercial competitor to EDS, which he hoped to sell to Inspector General offices across the federal government.  Rather than create his product from scratch, which would have consumed considerably more time and resources, Edwards decided to build on the government-owned software systems that he had helped to develop during his time at USPS-OIG and DHS-OIG.  But Edwards could not do it alone. He enlisted Patel and Venkata, who were still government employees, to steal the source code and databases that he needed to develop his commercial product and to provide vital technical assistance.

#### i.    Edwards and Patel Pitch Next Gen EDS to Peter Paradis.

In late 2015, Peter Paradis, a senior official and veteran investigator at USDA-OIG, had been tasked with acquiring a case management system for USDA-OIG.  Having previously worked at DHS-OIG, Paradis was familiar with EDS and wanted to explore whether USDA-OIG could acquire EDS free of charge from its sister Inspector General's office.  Paradis reached out to his former colleagues at DHS-OIG, including Patel.  On December 1, 2015, Paradis scheduled a telephone call with Patel, expecting to discuss the systems that would be required to implement EDS at USDA-OIG.  To his surprise, Patel quickly pivoted to pitching a commercial product that, she said, Edwards was developing with assistance from herself and Venkata.  Patel told Paradis that she and Edwards would like to meet with him to discuss their alternative to EDS.  On May 6, 2016, Patel and Paradis again spoke by telephone.  Patel told Paradis that the system Edwards was developing had similar functionality to EDS but had a more flexible, modular design to facilitate

4

maintenance and improvements.

On May 26, 2016, Edwards and Patel met Paradis over lunch at Matchbox Pizza in Chinatown.  During that meeting, Edwards and Patel pitched Paradis on their commercial product, which they termed "Next Gen EDS" or "22nd century EDS."  Edwards and Patel described the benefits of Edwards's product, including the "newly created" eSubpoena module.  Patel told Paradis that "Murali" could "give [him] the concept" of their eSubpoena application.  Edwards agreed to put together a cost estimate for Next Gen EDS, with input from Patel.

Over the remainder of 2016 and into early 2017, Edwards continued to liaise with Paradis. During two telephone calls in October 2016 and an in-person meeting at USDA-OIG headquarters in November 2016, Edwards made various representations about the system he was building, including that "it's not like DHS because DHS code is so, you know, cobbled together," that his program was "going to do the e-subpoena, just like DHS IG has," that he "completely re-wrote investigations, hotline, admin, and subpoena," and that his team "went through and broke it apart, and each template we built back the way it's supposed to load."  Meanwhile, Edwards and Patel researched pricing for Next Gen EDS.  In January 2017, Edwards left Paradis a voicemail telling him the system would be ready for him to test that month.

> ii.   *The Conspirators Steal Government-Owned Software, Databases, and Source Code.*

What the conspirators did not tell Paradis was that the system they were building was based on code and databases they had stolen from DHS-OIG and USPS-OIG.  In fact, Patel and Edwards had been stealing code and other materials from the government for quite some time.  In October 2014, Patel copied the EDS source code, including the eSubpoena module, and database files from the DHS-OIG computer network onto an optical disk, which she provided to Edwards.  Not long

thereafter, she asked Judy Kuo, a subordinate at DHS-OIG, to send her a government document containing instructions on how to rebuild the EDS system on an alternate server.

On May 27, 2016, just one day after the Matchbox Pizza lunch at which they pitched Next Gen EDS to Paradis, Patel again copied the EDS source code and databases from the DHS-OIG computer network onto two optical disks to provide to Edwards.  The same day, Patel emailed a government document containing detailed, step-by-step instructions for building EDS on an alternate server from her government email to her personal email account, and then forwarded the document from her personal email to Edwards.

In March 2017, Edwards could not find his copy of the CD containing the USPS-OIG STARS database, scripts, source code, and file server contents.  On March 21, 2017, Edwards reached out to Patel, who copied the folder containing that information from the DHS-OIG server onto two DVDs.  Patel put the DVDs in an envelope and gave them to Venkata to deliver to Edwards.  The following day, Venkata met Edwards outside DHS-OIG headquarters and gave him the envelope.

The computer forensic evidence demonstrates the extraordinary extent of the theft.  On April 19, 2017, pursuant to a search warrant, DHS-OIG investigators seized numerous computing devices, including server towers, a laptop, and various optical disks and other storage media from Edwards's home.  The forensic examination of the seized devices revealed that they contained extensive property belonging to DHS-OIG and USPS-OIG, including multiple versions of the source code for EDS and PARIS, coding software used for EDS development with an access key registered to DHS, and various non-public technical documents relating to the systems.  The investigators also found numerous copies of DHS-OIG- and USPS-OIG-owned database files

6

A0088

containing sensitive investigatory information and the PII of hundreds of thousands of employees of the respective agencies, including names, dates of birth, social security numbers, and home addresses.

On April 20, 2017, during an interview with DHS-OIG investigators, Venkata gave his consent to the seizure and forensic examination of three of his personal computing devices, consisting of two hard drives and a USB drive. Investigators discovered that Venkata, too, had extensive content belonging to DHS-OIG and USPS-OIG on his personal devices. That content included portions of the source code for EDS and PARIS, complaint documents belonging to USPS-OIG containing employee PII, and a product key for coding software registered to DHS-OIG.

  iii. *The Conspirators Disclose Sensitive Investigatory Information and PII to Software Developers in India.*

In June 2016, Edwards entered discussions with a software development company in Bangalore, India about developing Next Gen EDS. Edwards finalized his contract with the company on July 9, 2016. He told the Indian software developers that he would provide them with the requirements document for eSubpoena. He also promised that when he visited India for in-person meetings about the project in August, he would "take a laptop with a complete working version aling [*sic*] with code and leave it with the team." As witnesses will confirm, Edwards did in fact provide the developers with a laptop containing the stolen code. After he arrived in Bangalore on August 8, 2016, he told his contact at the company that he would "have the use case and well as [*sic*] screen shots and laptop" to deliver at their meeting. Edwards also provided the Indian software developers login credentials so that they could remotely access the versions of EDS and PARIS that he had installed on his home servers, complete with the stolen databases

7

containing sensitive law enforcement information and PII of federal employees.  Documentary evidence confirms that the developers did, in fact, log into Edwards's home servers.

In the fall of 2016, Edwards reached out to Russell Barbee, a retired investigator from DHS-OIG.  Edwards asked Barbee, with his extensive investigatory background, to serve as a consultant regarding the user requirements for Next Gen EDS.  He did not tell Barbee that he was building the system using stolen source code and databases.  The two agreed that, if Edwards was able to sell Next Gen EDS, he would reimburse Barbee for his time.  Barbee reviewed the demo version of Next Gen EDS and provided feedback to the Indian developers.  In March and April 2017, Edwards and Barbee traveled to India together to meet with the developers and provide in-person feedback regarding revisions to the system.

Text message evidence confirms that Venkata was well aware of the involvement of the Indian developers, as well as the fact that Edwards had given them access to government property and PII.  In March 2017, Edwards requested Venkata's assistance in setting up PARIS on a new server at his home.  Edwards explained that he wanted "to show the programmers how the Audit module should work," noting that he "Imported all the data from stars"—referring to USPS-OIG's STARS database that houses USPS employees' PII.  Venkata's response: "Ok."  Later that month, Venkata was having trouble logging into Edwards's home server.  Edwards sent Venkata a series of usernames and passwords to try.  "If none is working," he said, "then there is a problem at ur end. Coz the folks from India are logged in."  Venkata expressed no surprise that "folks from India" were, at that very moment, accessing the government-owned systems and sensitive databases installed on Edwards's home server.

8

A0090

*iv.    Venkata Provides Technical Assistance and Support for the Scheme.*

Venkata played an integral role in the scheme beginning in at least May 2016.  On Monday, May 30, 2016, which was Memorial Day, Edwards, Patel, and Venkata met at Patel's home.  At the meeting, the three discussed Edwards's plan to develop a commercial competitor to EDS.  Patel and Venkata showed Edwards the latest version of EDS, including eSubpoena, which Patel pulled up on a government-issued laptop at her home.  Venkata explained some of the technologies used in the current version of EDS and suggested alternatives that Edwards could incorporate into Next Gen EDS.

Venkata then assisted Edwards in installing the stolen software on his home servers.  On June 27, 2016, Venkata sent an email from his government email account to Patel's government email account containing instructions, together with screenshots, on how to resolve a problem that Edwards had encountered in setting up EDS on his home servers.  Patel forwarded Venkata's instructions first to her personal email account and then to Edwards's email account.

Edwards also enlisted Venkata's help in providing the resources he had promised to the Indian developers, namely the eSubpoena requirements document and the laptop containing a working copy of EDS.  On July 8, 2016, Venkata sent an email from his government account to Patel's attaching a DHS document titled "Functional Requirements Document eSubpoena."  Patel again forwarded the document from her government email to her personal email, and then to Edwards.  On July 13, 2016, Edwards delivered a laptop to Patel at DHS-OIG headquarters, who in turn gave it to Venkata.  Patel and Venkata exchanged text messages about whether they would need to copy source code and database files so that EDS could be deployed on the laptop.  Venkata then took the laptop home to configure it and test the EDS program installed on it.  After he had

9

finished, Venkata delivered the laptop to Edwards at a jewelry store in Tyson's Corner, Virginia.

Venkata continued to provide technical support to Edwards.  On July 20, 2016, Edwards sent Venkata instructions on how to log in remotely to Edwards's home servers.  Over the following weeks, Venkata provided programming and troubleshooting assistance.  He updated Edwards via text messages as he worked on "adding attorney as user," "fbi notification," "subpoena templates," "investigations," "ad hoc reporting," and other issues.  Venkata also texted Patel the login credentials that he had received from Edwards to login to Edwards's home server. Consistent with the text messages, the forensic examination of Edwards's laptop and home servers found that they were installed with software to allow for remote access.

In March 2017, Edwards again turned to Venkata for assistance.  On March 4, 2017, Edwards and Venkata corresponded via text message about Venkata's efforts to log in and restore an EDS database on Edwards's home server.  As noted above, that same month, Venkata helped Edwards install PARIS on a new server so that Edwards could "show the programmers how the Audit module should work."   On March 15, 2017, Edwards emailed Venkata remote login credentials and administration information for his PARIS server.  Venkata responded to Edwards's email two days later by providing a user manual for PARIS audit projects with a note, "Charles, I am working on it.  I found user manual, may be useful to you.  attached audit file."  From March 15 through 29, 2017, Venkata and Edwards exchanged numerous text messages about work that Venkata was performing on the stolen programs and databases installed on Edwards's home server.

### C.    Venkata's False Statements and Destruction of Evidence

Venkata participated in three interviews with investigators from DHS-OIG, in which he

made a series of false statements and repeatedly changed his story.  In his first interview, on April 20, 2017, Venkata acknowledged that EDS, and eSubpoena specifically, were owned by the U.S. government.  But he denied providing a copy of the EDS source code to anyone or being asked to do so by anyone.  Venkata further stated that he had never heard of Delta Business Solutions and denied having a second job in which he worked for Edwards.

In his second interview, on May 16, 2017, Venkata stated that all software development work related to his official duties would occur on a government laptop or server.  He admitted that he was not authorized to take copies of the development work or code, and that it would be wrong to take database data.  Venkata falsely stated that he was unaware if Edwards had an outside company and denied that Edwards had ever asked him to work on personal servers or to review software that Edwards was developing.  Later in the interview, Venkata admitted that Edwards had requested assistance with a PARIS server and provided Venkata with login information, but falsely claimed that he never attempted to log in.  During the interview, Venkata consented to a review of his call records, text messages, and personal email records on his phone.  The agent who reviewed his phone observed that the phone contained neither emails nor phone log records with Edwards.

Venkata's third interview took place on May 31, 2017.  During that interview, Venkata admitted for the first time that he knew that Edwards was interested in developing a case management system when he left DHS-OIG and that Patel and Edwards had contemplated building a system based on PARIS.  But Venkata continued to falsely claim that neither Patel nor Edwards had ever asked him to assist with the development of an investigative case management system and disclaimed any knowledge of Patel and Edwards's development of such a system.  When

11

questioned about the absence of call logs and emails with Edwards on his personal phone, Venkata admitted that he had intentionally deleted his communications with Edwards and Patel in an effort to distance himself from them.  Venkata further admitted that he did so within a week of being notified that he needed to report any communications with Edwards or Patel to DHS-OIG.

## II.      THE UNITED STATES' EVIDENTIARY PRESENTATION

### A.      Witness Testimony

At trial, the witnesses that the United States intends to call include (1) Venkata's co-conspirators, Edwards and Patel, who pleaded guilty to their participation in the conspiracy to commit theft of government property; (2) Peter Paradis, the USDA-OIG official whom Edwards and Patel attempted to induce to purchase Next Gen EDS; (3) Russell Barbee, the former DHS-OIG investigator whom Edwards hired to consult on the software development; (4) one or more of Venkata's former colleagues from the IT Division of DHS-OIG; (5) Special Agents from DHS-OIG and USPS-OIG who will present documentary evidence relating to the charged offenses, testimony regarding the forensic examination of Venkata's and Edwards's computing devices, and testimony regarding statements made by Venkata during voluntary interviews conducted as part of their investigation; and (6) the four victims of the aggravated identity theft, who will testify that Venkata's use, possession, and transfer of their PII was unauthorized.

### B.      Text Messages and Emails

The United States will introduce text messages and emails among the conspirators demonstrating that Venkata was a knowing and active participant in the scheme from its early days.  These communications will corroborate witness testimony that Venkata participated in the Memorial Day 2016 planning meeting at Patel's home, that he repeatedly logged into Edwards's

12

home server to provide troubleshooting and development assistance, that he provided sensitive technical documents relating to government-owned software systems to Edwards, and that he delivered stolen government property to Edwards on a laptop in July 2016 and again on DVDs in March 2017. They also demonstrate Venkata's awareness of the extent of the scheme, including the presence of PII in the stolen databases and the involvement of the Indian software developers.

The admissibility of documentary evidence involves three questions: first, whether the document contains relevant evidence; second, whether the document is authentic; and third, whether the statements contained within the document are non-hearsay or excepted from hearsay, and therefore admissible. The relevance of the text messages and emails is explained above.

To authenticate a document, its proponent need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *United States v. Safavian*, 435 F. Supp. 2d 36, 39 (D.D.C. 2006) ("[T]he Court need not find that the emails are necessarily what the proponent claims, only that there is evidence sufficient for the jury to make such a finding." (citation omitted)). Authenticity can be established through the testimony of a witness with knowledge that "an item is what it claimed to be," Fed. R. Evid. 901(b)(1), or through the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item," Fed. R. Evid. 902(b)(4). The United States will authenticate the text message and email communications through the testimony of one of the parties to the communications. *See Klayman v. Judicial Watch, Inc*., 297 F. Supp. 3d 80, 85–87 (D.D.C. 2018) (holding that email records were adequately authenticated by testimony of party to email chains).

The statements contained within the text messages and emails among the conspirators are non-hearsay. Venkata's own statements are admissible as statements of a party opponent. Fed. R.

(Page 98 of Total)

Evid. 801(d)(2)(A).  Statements by Patel and Edwards are admissible as co-conspirator statements made "during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E); *United States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (noting that court "must find by a preponderance of the evidence that the person making the statement was a co-conspirator and that the statement was made during and in furtherance of the conspiracy").  If necessary, the Court may admit such statements provisionally, subject to the government's subsequent introduction of sufficient evidence to demonstrate that the requirements of Rule 801(d)(2)(E) are met.  *See United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011).

The United States may also introduce text messages and emails between members of the conspiracy and non-members, such as the developers in India and Russell Barbee.  These communications will also be authenticated by a party to the communication.  Statements by Edwards or Patel are admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E).  Statements by non-members of the conspiracy will either be non-hearsay because they do not contain an "assertion" or will be offered for a non-hearsay purpose.  Fed. R. Evid. 801(a) (defining hearsay as a "[s]tatement" that constitutes an "assertion"); Fed. R. Evid. 801(c)(2) (defining hearsay as a statement offered "to prove the truth of the matter asserted").

### C.    Venkata's Statements to Investigators

The United States will introduce statements made by Venkata during his interviews with DHS-OIG investigators, including false statements denying his involvement in the scheme, admissions that he knew EDS was government property and that he was not authorized to remove source code and databases, and his admission that he deleted text messages and emails with Edwards and Patel in an effort to distance himself from them.  When offered by the United States,

14

Venkata's statements are admissible as statements of party opponent.  *See* Fed. R. Evid. 801(d)(2)(A); *Safavian*, 435 F. Supp. at 43 (holding that "statements attributed directly to [the defendant] come in as admissions by a party opponent under Rule 801(d)(2)(A)").

### D.      Audio Recordings and Transcripts

At trial, the United States will offer into evidence audio recordings of telephone calls, meetings, and voice messages between Peter Paradis, Edwards, and Patel, which were consensually monitored and recorded by law enforcement.  The recordings will be on CDs that will be marked and offered as exhibits.  With the CDs, transcripts will be offered as an aid to be used while the recorded conversations are being played for the jury.  The transcripts will also be offered into evidence for submission to the jury with the CDs to aid the jury in its deliberations.

To be admissible, an audio recording must be (1) "authentic, accurate, and trustworthy"; and (2) "audible and comprehensible enough for the jury to consider the contents."  *United States v. Slade*, 627 F.2d 293, 301 (D.C. Cir. 1980).  The United States will authenticate the recordings via "testimony from parties to the conversation" affirming that the recording "contained an accurate record of what was said."  *United States v. Strothers*, 77 F.3d 1389, 1392 (D.C. Cir. 1996).  As to audibility, recordings are admissible unless "the unintelligible portions are so substantial as to render the recording as a whole untrustworthy."  *Slade*, 627 F.2d at 301 (internal quotation marks omitted).  Indistinct portions may be clarified by playing the recordings for the jury more than once or, as discussed below, by reference to transcripts to "guide [the jury] past the background noise and irrelevant conversation."  *Id.* at 302.  Although the recordings at issue have some indistinct portions, they are for the most part readily comprehensible.

The Court has discretion to permit the jury to refer to transcripts during trial and to admit

15

**A0097**

such transcripts into evidence to aid the jury in its deliberations. *See United States v. Holton*, 116 F.3d 1536, 1543 (D.C. Cir. 1997). It is appropriate to do so here because the recordings in some instances have background noise and indistinct portions. Permitting the jury to refer to transcripts will "help prevent jury confusion and wasted time as a tape is being played." *Id.* at 1542. The transcripts are merely guides to the evidence and "it is important that the judge instruct the jurors that their personal understanding of the tape supersedes the text in a transcript." *Slade*, 627 F.2d at 302. The United States has proposed giving the standard Red Book instruction to that effect. *See* 1 Criminal Jury Instructions for the District of Columbia 2.310 (2021); ECF No. 97. The government provided the defense with draft transcripts on February 28, 2022. If the parties are unable to agree on stipulated transcripts, then the Court may admit two versions of the transcripts and instruct the jury that it is up to them to decide which version, if any, to accept. *See Holton*, 116 F.3d at 1343.

### E.    Computer Forensic Evidence

At trial, the United States will also introduce the results of searches performed on computing devices and storage media belonging to or used by Edwards and Venkata. The devices and media belonging to Edwards were seized at his home pursuant to a search warrant on April 19, 2017, and consist of computer servers, a laptop computer, and various optical disks and hard drives. The devices and media associated with Venkata consist of two hard drives and a USB drive seized at Venkata's home with his consent on April 20, 2017, and a government-issued USB drive recovered from Venkata's office. After seizing the devices and media, agents from DHS-OIG and USPS-OIG created a forensic image, meaning an exact copy, of each item. They then ran forensic software, such as Blacklight or EnCase, on the forensic images to extract and analyze

their contents.  Finally, they wrote Computer Forensic Reports summarizing the results of their analysis.  Images of the extracted contents of the devices and media are included as attachments to the corresponding Computer Forensic Reports.

The United States will introduce the testimony of the DHS-OIG and USPS-OIG agents who performed the forensic analysis and offer into evidence the relevant portions of the attachments to the Computer Forensic Reports.  The agents will describe the forensic examination process and testify as to what they found.  *See, e.g.*, *United States v. Soto*, 720 F.3d 51, 59–60 (1st Cir. 2013) (holding that the government may introduce the testimony of an agent who "conducts and independent examination" of computer evidence "and testifies to his own results").  Through the agents' testimony, the United States will offer excerpts from the attachments to the Computer Forensic Reports containing the underlying data.  For example, the United States will offer images of source code, folder structures, and PII discovered on Edwards's and Venkata's devices.  The United States will authenticate the attachment excerpts through agent testimony regarding the extraction process.  The material contained in the excerpts either is not hearsay because it is not an "assertion" within the meaning of Rule 801(a) or is not made by a "declarant" within the meaning of Rule 801(b), or will be offered for a non-hearsay purpose, *see* Fed. R. Evid. 801(c)(2).

The agents' testimony is admissible as lay testimony.  *See* Fed. R. Evid. 701.  Like a police officer who searches a car and discovers contraband, the agents will testify as to their personal knowledge of the search and the material that they recovered.  In conducting the searches, the agents employed familiar processes such as copying files, searching data, and reviewing the results.  *See United States v. McLeod*, 755 F. App'x 670, 673 (9th Cir. 2019).  And although the search process in this case involved "particularized knowledge" that the agents have gained

17

**A0099**

through experience, courts have long held that such testimony is admissible as lay testimony. *See United States v. Montijo-Maysonet*, 974 F.3d 34, 48 (1st Cir. 2020), *cert. denied*, 142 S. Ct. 145 (2021). Nonetheless, in an abundance of caution, the United States noticed the agents pursuant to Rule 16(1)(a)(G), *see*, ECF Nos. 44, 64, and is prepared to qualify them as experts should the Court determine that it is necessary to do so. *See United States v. Ganier*, 468 F.3d 920, 926–27 (6th Cir. 2006).

## III.    ANTICIPATED DEFENSES AND LEGAL ISSUES

### A.    Criminal Intent

The United States anticipates that Venkata will argue that he is not guilty of the charged offenses because he was acting on the instructions of his supervisor, Patel. For the reasons set forth in the United States' Motions *in Limine* Nos. 1 and 2 to Preclude Unavailable Affirmative Defenses, ECF No. 98, that line of argument is not a valid affirmative defense. Venkata may argue instead that his reliance on Patel's instructions negates the *mens rea* element of the charged offenses. But Venkata's criminal intent is evident from his concealment and deception.

When Venkata was approached by agents from DHS-OIG, he falsely denied his involvement in the scheme and destroyed evidence in an effort to obstruct the investigation. Venkata initially denied any knowledge of Edwards's plans to build a commercial case management system. He stated that all software development work related to his official duties would occur on a government laptop or server, and that Edwards had never asked him to work on personal servers or to review software that Edwards was developing. Venkata later admitted that Edwards had requested his assistance with a PARIS server and provided him with login information, but falsely stated that he never actually attempted to login to the server. When

18

investigators questioned him about the absence of call records and emails with his co-conspirators on his personal phone, Venkata admitted that he intentionally deleted those records within a week of receiving notification that he needed to report any communications with Edwards or Patel to DHS-OIG.  In a moment of candor, Venkata stated that he deleted the messages in an attempt to distance himself from Edwards and Patel.

Venkata's conduct during the scheme confirms that he knew his activities were not authorized.  He used his personal phone to communicate with his co-conspirators and met with them away from DHS-OIG premises to avoid detection.  For instance, the conspirators met at Patel's home on Memorial Day 2016 to discuss their plans to develop Next Gen EDS.  When Venkata delivered the laptop containing EDS to Edwards in July 2016, he met him after work hours at a jewelry store in Tyson's Corner.  And when Venkata delivered the envelope with CDs containing USPS-OIG data to Edwards in March 2017, he met Edwards outside the building for the handoff.

Further, Venkata did not reveal his involvement with Edwards's project to DHS-OIG, even when it would have been natural to do so.  In November 2016, in a routine meeting with an agent from DHS-OIG's Office of Investigations, Venkata provided an overview of the development of the eSubpoena module and stated that he was not aware of any other case management software that includes eSubpoena functionality.  Venkata explained that all coding for the system was stored on DHS-OIG's server.  He told the agent that EDS source code had to be checked out individually to work on it, then checked back in for testing and migration to production.  But Venkata made no mention of the fact that he, Edwards, and Patel were at that time developing a commercial version of EDS using DHS-OIG-owned source code stored on Edwards's private servers, as would have

19

A0101

been expected if Venkata believed it was an officially sanctioned DHS-OIG project.

In short, Venkata willingly participated in the scheme and provided extensive assistance to Edwards and Patel to accomplish its objectives.  Venkata's concealment, lies, and obstruction demonstrate that he was well aware that DHS-OIG had not authorized the removal and private use of its property and belie any argument that he lacked criminal intent.

### B.    Arguments Regarding Covert Law Enforcement Techniques

In his Motions to Dismiss the Indictment and reply brief in support thereof, Venkata indicated that he intends to argue that the covert techniques employed by law enforcement in the investigation of this matter somehow amounted to foul play.  *See, e.g.*, ECF No. 71, at 7 n.1 (arguing that the sale of Next Gen EDS "was never going to happen, because Witness One's feigned interest in purchasing a new case management system from Mr. Edwards was a law enforcement sting operation from the very beginning"); ECF No. 60, at 5 n.4 (arguing that "Witness One aggressively pursued Ms. Patel and Mr. Edwards about creating a new case management system for USDA-OIG, including to ensure that it shared many of the same features as DHS-OIG's existing case management system, EDS").  Such arguments are irrelevant to Venkata's guilt or innocence and can only be understood as encouragement of jury nullification. Therefore, the Court should not permit Venkata to argue to the jury that the covert law enforcement techniques employed in this case were improper or to use the terms "sting," "set up," "lure," "trick," "ruse," or similarly pejorative terms to describe those techniques.

The government may lawfully use a wide variety of techniques to root out crime.  *See Sorrells v. United States*, 287 U.S. 435, 441 (1932) ("Artifice and stratagem may be employed to catch those engaged in criminal enterprises.").  Law enforcement agents do nothing wrong when

**A0102**

they use undercover agents, work with confidential informants, or obtain consensual recordings of their investigatory targets. *See United States v. Quinn*, 543 F.2d 640, 648 (8th Cir. 1976). While in exceedingly rare cases, the government's conduct may be deemed so outrageous as to violate due process, the techniques employed in this case did not remotely approach that standard, nor has Venkata contended that they did. *See United States v. Combs*, 827 F.3d 790, 795 (8th Cir. 2016) (noting that court was aware of "only two reported court of appeals decisions—both from the 1970s—that have deemed the government's conduct so outrageous as to violate due process"). And even when a defendant has a credible claim of government misconduct—which Venkata does not—that is an issue for the court, not the jury, and must be raised by pretrial motion if at all. *See United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987); *United States v. Nunez-Rios*, 622 F.2d 1093, 1098 (2d Cir. 1980).

To insinuate, therefore, that the government engaged in misconduct by using covert law enforcement techniques to investigate this case would be both irrelevant and improper. The government's use of such techniques has no bearing on the defendant's guilt or innocence. *See* Fed. R. Evid. 401 (defining relevant facts as those that are "of consequence in determining the action"). Nonetheless, some jurors may be uncomfortable with the use of law enforcement techniques that involve deception. Accordingly, the only possible purpose for commenting on the government's use of such techniques is to inflame the jury's emotions and encourage nullification. But the law is clear that arguments in favor of jury nullification are improper. *See United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) ("Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power."). Venkata should not be permitted to make them.

### C.      Evidence of Prior Good Acts

Venkata has indicated his intention to introduce evidence of prior good acts.  Specifically,
his exhibit list includes his past performance evaluations at DHS-OIG and an email chain dating
from the time of his first interview with DHS-OIG agents in which Venkata notified those agents
that Edwards had called him.  Evidence of specific instances of prior good conduct is inadmissible
character evidence and should be excluded.  *See* Fed. R. Evid. 401(a)(1).

Rule 404(a)(2) permits a criminal defendant to offer evidence of his pertinent character
trait.  However, such evidence is subject to the stringent requirements of Rule 405.  Generally,
character evidence may be presented only by testimony about the defendant's reputation or in the
form of an opinion.  *See* Fed. R. Evid. 405(a).  A narrow exception exists, however, when "a
person's character or character trait is an essential element of a charge, claim, or defense."  Fed.
R. Evid. 405(b).  Where that exception applies, the party may introduce "relevant specific instances
of the person's conduct."  *Id.*; *see also United States v. Brown*, 503 F. Supp. 2d 239, 241 (D.D.C.
2007).  Prior good acts evidence may also be admissible under Rule 404(b), provided it meets
other requirements for admissibility and is offered for a purpose other than "to show that on a
particular occasion the person acted in accordance with the character."

Venkata may offer his prior good acts evidence under Rules 404(b) or 405(b) on the theory
that it is relevant to the lack-of-predisposition prong of his entrapment defense.  *See United States
v. Thomas*, 134 F.3d 975, 979–80 (9th Cir. 1998) (holding that prior good acts evidence is
admissible under Rules 404(b) and 405(b) when defendant asserts a valid entrapment defense).
However, for the reasons explained in the United States' Motion *in Limine* No. 2, *see* ECF No. 98,
Venkata does not have a valid an entrapment defense.  His prior good acts evidence is therefore

22

not admissible under Rules 404(b) or 405(b).   Nor is evidence of specific prior good acts admissible to prove character for truthfulness under Rule 608.   Accordingly, Venkata's prior good acts evidence should not be admitted.

## IV.   CONCLUSION

Venkata engaged in an unlawful scheme to profit from government property and misuse the PII of hundreds of thousands of government employees.   When he realized he had been caught, he lied to investigators and attempted to obstruct the investigation.   Edwards and Patel have pleaded guilty to their roles in the scheme.   On March 28, Venkata will stand trial for his crimes. The government's evidence will prove his guilt beyond a reasonable doubt.

23

A0105

Respectfully submitted,

MATTHEW M. GRAVES                             COREY R. AMUNDSON
UNITED STATES ATTORNEY                        CHIEF
For the District of Columbia                  Public Integrity Section

By: */s/ Christine M. Macey*                  By:   */s/ Victor R. Salgado*
    CHRISTINE M. MACEY                               VICTOR R. SALGADO
    D.C. Bar No. 1010730                             D.C. Bar No. 975013
    Assistant United States Attorney                 Senior Litigation Counsel
    Fraud, Public Corruption, and Civil Rights Section   Public Integrity Section
    555 4th Street, NW                                Criminal Division
    Washington, D.C. 20530                            1301 New York Avenue, NW
    (202) 252-7058                                    Washington, D.C. 20530
    christine.macey@usdoj.gov                         (202) 353-4580
                                                      victor.salgado@usdoj.gov

                                              By:   */s/ Celia R. Choy*
                                                    CELIA R. CHOY
                                                    D.C. Bar No. 1017211
                                                    Trial Attorney
                                                    Public Integrity Section
                                                    Criminal Division
                                                    1301 New York Avenue, NW
                                                    Washington, D.C. 20530
                                                    (202) 875-1557
                                                    celia.choy@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 20-cr-00066-2 |
| v. | Honorable Randolph D. Moss |
| MURALI YAMAZULA VENKATA, | Trial: March 28, 2022 |
| Defendant. | **HEARING REQUESTED PURSUANT TO LCRR 47(F)** |

## OPPOSITION TO UNITED STATES' MOTIONS IN LIMINE NOS. 1 AND 2 TO PRECLUDE UNAVAILABLE AFFIRMATIVE DEFENSES

### INTRODUCTION

Murali Yamazula Venkata, through undersigned counsel, hereby provides the following opposition to the United States' combined Motions in Limine (ECF 98, or "Motion"), filed in March 7, 2022.  For the reasons that follow, Mr. Venkata continues to assert his right to assert certain affirmative public authority[1] and entrapment defenses in the above-referenced trial.  The Motion by the United States fails to provide a compelling reason that those defenses may not be asserted, including by relying on out-of-Circuit caselaw.  To the contrary, the proposed affirmative defenses are firmly grounded within established D.C. Circuit precedent and borne out by the factual predicate.  Given that it would be manifestly unjust to deny Mr. Venkata the right to argue these defenses, which go to the heart of his trial presentation, Mr. Venkata respectfully requests that the Court deny the Motion.

---

[1] The government argues that Mr. Venkata should be precluded from raising both a public authority and the separate, although associated, entrapment-by-estoppel defense.  Mr. Venkata's opposition, and his notice to the government, are predicated on his contention that he is entitled to assert an affirmative defense that he reasonably believed that Ms. Patel had the apparent authority to sanction the alleged conspiratorial conduct.

## BACKGROUND

Federal Rule of Criminal Procedure 12.3(a)(1) states that, "[i]f a defendant intends to assert a defense of actual or *believed* exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk within the time provided for filing a pretrial motion, or at any later time the court sets." (emphasis added).  On December 1, 2021, Mr. Venkata provided notice that he intends to assert the affirmative defenses of reliance on public authority and entrapment.  ECF 57.  That notice stated that Mr. Venkata acted on behalf of Sonal Patel, Supervisory Information Technology Specialist for the Office of the Inspector General for the U.S. Department of Homeland Security ("DHS-OIG").

The Indictment in the above-referenced matter establishes that Mr. Venkata acted at Ms. Patel's behest and engaged in the alleged conspiratorial acts with her full support and encouragement:

- "Sonal Patel worked as an Enterprise Applications Branch Chief in the IT Division of DHS-OIG Headquarters.  Patel oversaw the development and maintenance of DHS-OIG's Enforcement Database System ('EDS')."  Indictment ¶ 4.

- "At DHS-OIG, Patel supervised Defendant VENKATA."  *Id.* ¶ 5.

- "EDS was the case management system used by the DHS-OIG Office of Investigations.  In and around 2008, DHS obtained ownership rights to the EDS source code.  Since in and around 2008, DHS-OIG has substantially modified and enhanced the EDS system. . . . One substantial modification to EDS was the creation of an 'eSubpoena' module.  The functional specifications for the module were finalized on or about September 29, 2014.  Patel oversaw the development and implementation of this module by government employees and government contractors working under her."  *Id.* ¶ 8.

- "Defendant EDWARDS and Patel concealed their theft of EDS-related software, source code, databases, documents, information, and PII from USDA-OIG through false and fraudulent pretenses, representations, and promises to Witness

2

One to encourage and induce USDA-OIG into purchasing EDS 2.0 for the benefit, enrichment, and profit of Defendant EDWARDS and his business DBS." *Id.* ¶ 15(g).

- "On or about November 4, 2014, Patel instructed a subordinate DHS-OIG employee to send Patel instructions on how to install the EDS system. Patel concealed the purpose for which she was requesting the instructions. Patel caused the DHS-OIG employee to provide Patel with instructions on how to rebuild the EDS system on an alternate server." *Id.* ¶ 16(b).

- "On or about May 12, 2016, Defendant VENKATA and Patel exchanged text messages to coordinate a meeting with Defendant EDWARDS to discuss EDS 2.0." *Id.* ¶ 16(g).

- "On or about June 27, 2016, Defendant VENKATA sent, from his DHS-OIG government email account to Patel's DHS-OIG government email account, technical instructions relating to DHS-OIG's EDS system.  Patel first sent these instructions from her DHS-OIG government email account to her personal Yahoo! email account and then forwarded those instructions from her Yahoo! email account to Defendant EDWARDS's personal Verizon email account." *Id.* ¶ 16(p).

- "On or about July 8, 2016, Defendant VENKATA sent, from his DHS-OIG government email account to Patel's DHS-OIG government email account, a government document containing the functional requirements for the eSubpoena module.  Also on or about July 8, 2016, and then again on or about July 20, 2016, Patel sent that document from her DHS-OIG government email account to her personal Yahoo! email account.  On or about July 8, 2016, Patel forwarded that email and document from her personal Yahoo! email account to Defendant EDWARDS's personal Verizon email account." *Id.* ¶ 16(s).

- "On or about July 13, 2016, Defendant EDWARDS delivered a laptop to Patel at DHS-OIG Headquarters and Patel delivered it to Defendant VENKATA.  Patel requested that Defendant VENKATA check the laptop computer to determine whether fresh downloads of DHS-OIG's EDS source code and database files were needed, or whether the laptop computer just needed to be configured." *Id.* ¶ 16(v).

- "On or about March 21, 2017, Patel once again copied the USPS-OIG database, source code, scripts, and file server contents (which Patel had previously uploaded to DHS-OIG's server in and around 2009 at Defendant EDWARDS's instruction), from the DHS-OIG server onto two DVDs.  Patel provided the two DVDs to Defendant VENKATA for delivery to Defendant EDWARDS. Defendant VENKATA met Defendant EDWARDS outside of DHS-OIG Headquarters in the District of Columbia, and delivered the DVDs to Defendant EDWARDS." *Id.* ¶ 16(mm).

3

## ARGUMENT

**A.  Mr. Venkata Is Entitled to an Apparent Public Authority Defense.**

A defendant is entitled to a jury instruction on an affirmative defense provided that he can lay a supporting legal foundation.  *See United States* v. *Gray-Burriss*, 251 F. Supp. 3d 13, 20 (D.D.C. 2017).  A "defendant may present a public authority defense to the jury . . . upon a showing of a *prima facie* case of reasonable reliance on public authority.  Specifically, the defendant must show some foundation in proof that the otherwise illegal conduct was carried out on the actual or apparent authority of a government official."  *United States* v. *Thomas*, 214 F. Supp. 3d 187, 192 (E.D.N.Y. 2016) (internal citations and quotation marks omitted).  "To justify a Public Authority Defense, a defendant must establish: (1) facts that support a reasonable reliance on purported authority, and (2) a legal theory upon which to base a reasonable belief that the defendant possessed authority."  *United States* v. *Sanchez*, 1993 U.S. Dist. LEXIS 15746, at *1–2 (N.D. Ill. Nov. 5, 1993).

### a.  D.C. Circuit Precedent Supports the Availability of this Defense.

In seeking to deny Mr. Venkata the right to assert the public authority defense based on Ms. Patel's apparent authority to sanction the covert activity at issue in this case, the government—tellingly—relies upon non-binding caselaw from outside of the D.C. Circuit and a tortured reading of applicable guidance.[2]  It is well-established in this Circuit that the public authority defense includes "the defense of good faith, reasonable reliance on *apparent* authority."  *United States* v. *Barker*, 546 F.2d 940, 946 (D.C. Cir. 1976) (emphasis added).  Indeed, this

---

[2] Much of the government's opposition to Mr. Venkata's assertion of the public authority defense appears to be drawn from the Department of Justice's Criminal Resource Manual.  *See* U.S. DEP'T OF JUST., *Public Authority Defense* 2050 (2020), available at https://www.justice.gov/archives/jm/criminal-resource-manual-2055-public-authority-defense.  As in the Criminal Resource Manual, the government is unable to cite a single D.C. Circuit case in its Motion that expressly rejects the "apparent authority" defense.

holding is in line with the clear language of Rule 12.3(a)(1), which provides that a defendant must give notice of a defense based on a "believed exercise of public authority."  Fᴇᴅ. R. Cʀɪᴍ. P. 12.3(1)(1).

The seminal case regarding the "public authority" defense in the D.C. Circuit is *United States* v. *Barker*.  In a per curiam decision, the D.C. Circuit reversed the judgment of convictions of two so-called "'footsoldiers' of the Watergate affair, Bernard Baker and Eugenio Martinez," and remanded for a new trial.  *Barker*, 546 F.2d at 943.  On appeal, the defendants claimed that they had not been permitted to present evidence related to their reasonable reliance on the authority of E. Howard Hunt, then-White House official, to sanction the break-in.  *Id.* at 944.  The two concurring judges, Judges Wilkey and Merhige, each filed separate opinions agreeing that the defendants' mistake-of-law argument could form the basis for their affirmative defense.

As articulated by Judge Wilkey, defendants were entitled to instructions on apparent authority if they could show (1) "facts justifying their reasonable reliance on [the official's] apparent authority and (2) *a legal theory* on which to base a reasonable belief that [the official] possessed such authority."  *Id.* at 949.  Ultimately, Judge Wilkey reasoned that "it is plain that a citizen should have a legal defense to a criminal charge arising out of an unlawful arrest or search  which he has aided in the reasonable belief that the individual who solicited his assistance was a duly authorized officer of the law."  *Id.*  at 954.  Agreeing that the "jury should have been instructed on a limited mistake of law defense," *id.* at 957, Judge Merhige questioned the breadth of Judge Wilkey's holding.  Judge Merhige stated that "[a]pplying the defense to the facts of this case, the record discloses sufficient evidence of reliance on an official interpretation of the law for the matter to have been submitted to the jury . . . . A jury may well find that John Ehrlichman, then Assistant to the President for Domestic Affairs, expressed or implied that the

5

**A0111**

break-in of Dr. Fielding's office was legal under a national security rationale, and that Hunt, as an executive official in a go-between capacity, passed the position on to the defendants, which they, *acting as reasonable men*, relied upon in performing the break-in." *Id.* (emphasis added).

The *Barker* holding regarding apparent authority has been considered by numerous courts and has never been outright rejected. *See, e.g.*, *United States* v. *Lam Kwong-Wah*, 924 F.2d 298, 310 n.9 (D.C. Cir. 1991) ("Although the precise parameters, and indeed the very validity, of the public authority defense are unclear in this circuit . . . it seems clear that to have any hope of success a defendant must show that he 'honestly and reasonably' believed that his actions were being committed pursuant to lawful authority . . . and the belief must be 'objectively reasonable.'" (citations omitted)). The government cannot point to any D.C. Circuit precedent suggesting that the public authority defense is limited to those situations in which the official sanctioning the illegal conduct possesses actual rather than apparent authority to do so. The D.C. Circuit's holding in *United States* v. *North,* 910 F.2d 843 (D.C. Cir. 1990), does not say otherwise; rather, it makes clear that a defendant is not entitled to an instruction that "reasonable reliance on the apparent authority of one's superiors is an absolute defense." *Id.* at 878. In short, without more, a defendant may not cite an authorization or instruction from his superior as a means to defeat liability. *Id.* at 884 (rejecting a formulation that allows a defendant to "escape the criminal consequences of his otherwise unlawful acts merely by asserting that his reason for committing the acts was that he was 'following orders'"). Mr. Venkata does not seek such an instruction.

Instead, Mr. Venkata seeks to present evidence, and argue, that his reasonable reliance on Ms. Patel's apparent authority is relevant to his *mens rea*—a defense permitted by the *North* Court: "[I]t was error to preclude the jury from considering whatever evidence of authorization

6

exists in the record as it bears on the jury's determination of whether North had subjective knowledge of unlawfulness . . . [A]uthorization from one's superiors cannot convert illegal activity into legal, yet it surely can affect a defendant's *belief* that his conduct was lawful." *Id.* at 885.

These decisions and the progeny permit a mistake-of-law defense predicated on a defendant's belief that the government official on whom he relied had an "apparent authority" to empower him to commit the charged acts. *See, e.g.*, *United States* v. *Rhone*, 864 F.2d 832, 835 (D.C. Cir. 1989) (identifying *Barker* as an example of a case "where ignorance of the law is a valid defense"); *McCord* v. *Bailey*, 636 F.2d 606, 611 (D.C. Cir. 1980) (noting that *Barker* recognized that "a limited defense to a criminal charge exists for reasonable, good faith reliance on the apparent authority of a government official to authorize otherwise unlawful activity"). Other circuits have likewise acknowledged that the D.C. Circuit permits the apparent public authority defense. *See, e.g., United States* v. *Pitt*, 193 F.3d 751, 756 (3d Cir. 1999), *as amended* (Oct. 15, 1999), *and abrogated by Honeycutt* v. *United States*, 137 S. Ct. 1626 (2017) (describing the *Barker* doctrine as establishing an "apparent public authority" defense, where "the defendant is not required to establish that the government official had the authority to sanction the illegal activity" but can instead "assert[] the belief that his action was condoned by the agency which he believed had authorized him to engage in the criminal conduct"). For these reasons, the legal grounds for Mr. Venkata's public authority defense remain good law in the D.C. Circuit.

### b. Mr. Venkata Reasonably Relied on Ms. Patel's Apparent Authority.

Turning from the government's mistaken understanding of the state of the "apparent authority" defense in the D.C. Circuit, the government also suggests that Ms. Patel had no

"apparent authority" to sanction Mr. Venkata's alleged conduct because she was an "IT professional." Motion at 8. This is nonsensical. Through facts presented at trial, Mr. Venkata will establish that he reasonably believed that Ms. Patel could have authorized his alleged possession and transfer of the relevant government intellectual property. In her position as the head of the IT Division, and as the government itself alleges in the Indictment, Ms. Patel oversaw the development and implementation of, among other things, DHS-OIG's EDS system by government employees, such as Mr. Venkata, and government contractors working under her. Moreover, Ms. Patel's authority in directing, overseeing, and evaluating the work of the Division and its employees was expansive. Finally, the evidence will show that, through Ms. Patel's assistance and under her supervision, the EDS system and other programs were updated, developed, and shared outside of DHS-OIG. It is objectively reasonable for Mr. Venkata to have believed that Ms. Patel had authorized him to engage in the alleged criminal acts.

The government quibbles that Ms. Patel cannot have the requisite authority because her job "was to manage DHS-OIG's information technology systems[.]" Motion at 9. As the D.C. Circuit has held, and as Rule 12.3 makes clear, there is no requirement that a defendant show that the "agency member" at issue have arrest authority to assert the defense. Indeed, the relevant "government official" for purposes of the authorization defense is context-specific. *See Barker*, 546 F.2d at 943 (holding that the relevant government officials were White House officials, E. Howard Hunt and John Ehrlichman); *see also Raley* v. *State of Ohio*, 360 U.S. 423, 437 (1959) (reasoning that the Chairman of the Commission was "an agent of the State" as he was in "a position to give [the defendants] assurances" that they could refuse to answer certain questions before the Commission). Here, that official was Ms. Patel, who directly oversaw the

**A0114**

maintenance and development of the intellectual property at the heart of the government's Indictment.

In support of Mr. Venkata's reasonable belief, the evidence will show, and the Indictment alleges, that senior officials at DHS-OIG and at other agencies (including USDA-OIG) regularly relayed requests to Ms. Patel regarding the development and deployment of government intellectual property. *See, e.g.*, Indictment ¶ 16(d) ("On or about December 1, 2015, Patel called an employee at USDA-OIG . . . to discourage USDA-OIG from acquiring EDS from DHS-OIG free of charge based on a Memorandum of Understanding between the agencies. Patel told Witness One that she thought USDA-OIG would be better served by EDS 2.0, a commercial product being developed by Defendant EDWARDS, with Patel's and Defendant Venkata's assistance. Patel further stated that she and Defendant EDWARDS would like to meet with Witness One to discuss EDS 2.0."). Given Ms. Patel's role and responsibilities, it was inherently reasonable for Mr. Venkata to assume that Ms. Patel had either the apparent authority herself—or at least as a "go-between" for more senior government officials—to direct the charged conduct. *See Barker*, 546 F.2d at 957 ("A jury may well find that . . . Hunt, as an executive official in a go-between capacity, passed the position [that the break-in was legal] on to the defendants, which they, acting as reasonable men, relied upon in performing the break-in.").

**B. Mr. Venkata Is Entitled to Present an Entrapment Defense.**

This Court should also permit Mr. Venkata to assert an entrapment defense. "The entrapment defense has two elements: government inducement to commit a crime and lack of predisposition on the part of the defendant to commit the crime." *United States* v. *Layeni*, 90 F.3d 514, 516 (D.C. Cir. 1996). Importantly, a defendant meets his burden of "requiring the prosecution to prove predisposition beyond a reasonable doubt" as long as he can "convinc[e] the

9

A0115

jury that there is *Some Evidence* of government 'inducement.'"  *United States* v. *Burkley*, 591

F.2d 903, 914 (D.C. Cir. 1978) (emphasis added).

### a.   The D.C. Circuit Permits a "Derivative Entrapment" Defense.

The D.C. Circuit recognizes "derivative entrapment" as a viable defense when "unwitting

intermediaries—at the government's direction—deliver the government's inducement to a

specified third party."  *United States* v. *Washington*, 106 F.3d 983, 993 (D.C. Cir. 1997).  A

court may be "obligated to give an instruction on derivative entrapment, even if the intermediary

involved did not know that he was acting as a de facto government agent."  *Id.* at 994.  The

evidence can show that Mr. Venkata was induced by Peter Paradis into committing the charged

conspiracy through Ms. Patel, who served as an intermediary.  The government again contests

the applicability of D.C. Circuit precedent, claiming that the Court of Appeals are "divided" as to

availability of derivative entrapment.  Motion at 12.  But regardless, it is clear that the defense of

derivative entrapment—which the trial evidence would show—is available here.  *See Layeni*, 90

F.3d at 520 ("[T]he entrapment defense can be raised by a defendant who was induced by an

unknowing intermediary at the instruction or direction of a government official or third party

acting on behalf of the government (*e.g.*, an informant).").

### b.   Mr. Paradis Induced the Co-Conspirators to Commit the Charged Acts.

The evidence would establish that Mr. Paradis induced Mr. Venkata and his alleged co-

conspirators to commit the alleged misconduct.[3]  While the government characterizes

Mr. Paradis as a "civilian informant," Motion at 12, Mr. Paradis was the Deputy Assistant

Inspector General for the Office of Investigations at the Office of the Inspector General for the

---

[3] While the Motion is premature, particularly with respect to the entrapment affirmative defense, the Indictment alone demonstrates that Mr. Paradis induced Mr. Edwards and Ms. Patel, and by extension Mr. Venkata, to commit the alleged conspiracy.

U.S. Department of Agriculture ("USDA-OIG") at the time of the alleged conspiracy.  And, as alleged in the Indictment, Mr. Paradis was integral in the development of "EDS 2.0": "Defendant EDWARDS and Patel also discussed providing the original version of EDS to Witness One on a laptop for Witness One to show his supervisors in the short term that he was not 'dragging [his] feet' on obtaining case management system while Defendant EDWARDS and Patel developed EDS 2.0."  Indictment ¶ 16(j); *see also id.* ¶ 16(cc) ("On or about October 12, 2016, Defendant EDWARDS provided an update to Witness One indicating that his team had built the full version of the EDS system, which would be ready by mid-December, that he had addressed all of the concerns Witness One had raised in their meeting, and that the system had eSubpoena 'just like DHS has.'  Defendant EDWARDS offered to meet Witness One to show him the 'demo version' on a laptop or could allow Witness One to log into the live version, which was hosted on Defendant EDWARDS's server.  Witness One requested a cost proposal from Defendant EDWARDS.").

Although not specifically alleged in the Indictment, the evidence will show that Mr. Paradis was more than merely a "civilian informant."  Mr. Paradis directly engaged with Ms. Patel regarding DHS-OIG's EDS program, and—through discussions with DHS-OIG and USDA-OIG officials—worked to organize an EDS demo, specifically facilitated by Ms. Patel.  Mr. Paradis induced Mr. Edwards and Ms. Patel into allegedly converting the DHS-OIG EDS program and selling it to USDA-OIG through repeated meetings and phone calls to discuss the procurement of the new program.  Indeed, Mr. Paradis specifically requested that the program be modeled after the DHS-OIG EDS system, including by requesting that the new system include DHS-OIG's eSubpoena EDS module.  *See Burkley*, 591 F.2d at 915 (holding that the agent's "repeated requests constituted sufficient evidence of inducement").

The government's argument that Mr. Venkata will not be able to show that he was the target of Mr. Paradis' inducement also fails.  Mr. Venkata need not show that he was the *only* target of Mr. Paradis' inducement; he need only show that Mr. Paradis' inducement *also* targeted Mr. Venkata.  According to Mr. Paradis' own complaint, during his initial conversations with Ms. Patel around December 2015, Ms. Patel allegedly told him that she was working with Mr. Edwards *and Mr. Venkata* on a new case management system.  Thus, when Mr. Paradis pursued the new case management system, he did so with the belief that Mr. Venkata was involved in the creation and sale of the program—particularly because Mr. Paradis requested that the case management system include the eSubpoena module, which was originally created by Mr. Venkata.  A reasonable jury could conclude that the mere fact that Mr. Paradis did not come into contact with Mr. Venkata or make any of his requests directly to Mr. Venkata did not render Mr. Venkata outside the scope of Mr. Paradis' inducement.  *See Washington*, 106 F.3d at 994 (rejecting the "blanket rule against a derivative entrapment instruction in cases where the defendants were induced to commit the crimes by their co-conspirators" (internal quotation marks omitted)).

Finally, "with respect to the evidentiary threshold in obtaining an entrapment instruction," the "burden of coming forward with evidence of predisposition" falls on the government.  *Burkley*, 591 F.2d at 914.  In its Motion, the government fails to adduce evidence of Mr. Venkata's predisposition to commit the alleged conduct—nor could it.  According to Mr. Paradis' own report, during one of his initial phone calls with Ms. Patel, Ms. Patel conveyed that the new case management program *was not yet in production*.  The jury could reasonably conclude that Mr. Venkata lacked any predisposition to commit the alleged conversion and fraud prior to Mr. Paradis' repeated and specific requests for a new case management system.

**CONCLUSION**

For the aforementioned reasons, the Court should deny the United States' motions *in limine*.  Mr. Venkata is also prepared, through undersigned counsel, to argue his opposition to the motions during the Court's pre-trial conference.

March 14, 2022.

Respectfully submitted,


*/s/ Kamil R. Shields*

Kamil R. Shields
Pardis Gheibi (*pro hac vice*)
Tara N. Ohrtman (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C. 20006-5215
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldska@sullcrom.com
Email: gheibip@sullcrom.com
Email: ohrtmant@sullcrom.com

Katherine M. Savarese (*pro hac vice*)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com

Michelle Peterson
Chief Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
Telephone: (202) 208-7500
Email: Shelli_Peterson@fd.org

13

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 20-cr-00066-RDM |
| | ) | |
| MURALI YAMAZULA VENKATA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## REPLY IN SUPPORT OF UNITED STATES' MOTIONS *IN LIMINE* NOS. 1 AND 2 TO PRECLUDE UNAVAILABLE AFFIRMATIVE DEFENSES

The affirmative defenses of public authority and entrapment are narrowly tailored defenses aimed at curbing abusive law enforcement practices. These affirmative defenses do not negate *mens rea*. Instead, they excuse the defendant's conduct even if all the elements of the charged offenses are proven. Venkata may argue that he lacked the *mens rea* to commit the charged offenses because of the influence of his supervisor. But he may not assert the affirmative defenses of public authority or entrapment simply because he conspired with, or followed direction from, a superior who happened to be a government employee. Because Venkata's asserted affirmative defenses fail as a matter of law, he should be precluded from presenting them at trial.

## I.      Venkata Should Be Precluded from Asserting an Apparent Public Authority Defense.

Venkata concedes that Patel lacked actual authority to authorize his conduct. Instead, he seeks to assert a defense based on his reliance on Patel's apparent authority to do so. *See* ECF No. 101, at 4. But reliance on apparent authority is not a valid defense. And even if it were, Venkata could not establish it as a matter of law.

In his Opposition, Venkata fails to grasp the distinction between a defense that negates an element of an offense and an affirmative defense. He cites *United States v. North*, 910 F.2d 843,

1

**A0120**

885 (D.C. Cir. 1990), for the proposition that he is entitled to argue that Patel's conduct was relevant to his *mens rea*. *See* ECF No. 101, at 6–7. The government agrees. A defendant is entitled to argue that the government has failed to meet its burden of proof with respect to an essential element of the offense. *See United States v. Jumah*, 493 F.3d 868, 873–74 (7th Cir. 2007), *as corrected* (July 20, 2007) ("A failure of proof 'defense' does not excuse conduct, but puts the prosecution to its burden of proving each element of an offense beyond a reasonable doubt."). For example, with respect to the charge of theft of government property, Venkata may argue that he lacked the intent to deprive the property's owner of its use or benefit. *See* ECF No. 97, at 7–8. Or he may argue, with respect to the wire fraud charge, that he lacked specific intent to defraud. *Id.* at 12–13. For the reasons stated in the United States' Trial Brief, those arguments will fail as a matter of fact. *See* ECF No. 99, at 18–20.

An affirmative defense is different. An affirmative defense says that even if the government proves every element of the charged offense beyond a reasonable doubt, the jury must still acquit. *See Jumah*, 493 F.3d at 874. In this case, that would mean that Venkata should be acquitted of, for example, theft of government property, even if he stole property belonging to the United States, knowing it was not his, with intent to deprive the property's owner of its use or benefit. *See* ECF No. 97, at 7–8. Or that he should be acquitted of wire fraud even if he knowingly devised a scheme to defraud based on materially false representations, pretenses, or promises, used the interstate wires in furtherance of that scheme, and acted with specific intent to defraud. *See* ECF No 97, at 12–13. The basis for excusing this otherwise criminal conduct, according to Venkata, is that he believed that Sonal Patel—an IT manager at a federal agency—had authority to empower him to violate federal criminal laws. Those arguments fail as a matter of law.

2

Venkata relies on Judge Wilkey's opinion in *United States v. Barker*, 546 F.2d 940, 946 (D.C. Cir. 1976), for the proposition that the apparent public authority defense is "well-established in this Circuit." ECF No. 101, at 4. But Judge Wilkey's view garnered only one vote, so does not establish Circuit precedent. *Cf. King v. Palmer*, 950 F.2d 771, 782–85 (D.C. Cir. 1991) (en banc) (finding no controlling legal holding where "one opinion supporting the judgment does not fit entirely within a broader circle drawn by others"). That is precisely what the D.C. Circuit said in *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990). After reviewing both Judge Wilkey's and Judge Merhige's opinions in detail, it concluded that "[w]e do not think that any coherent principle can be gleaned from the *Barker* case." *Id.* at 881. It therefore rejected North's proposed authorization defense. *Id.* Rather, the Court noted that defendants could avail themselves of the "far more circumscribed" defense of "reliance on an official misstatement of law as that defense is described in Judge Merhige's opinion." *Id.* at 881 n.10; *see also United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994) (noting that *North* "expressed doubt as to the precedential value of [*Barker*]" but recognized the narrower defense "as formulated by Judge Merhige"); *cf. Marks v. United States*, 430 U.S. 188, 193 (1977) (stating that when "no single rationale explaining the result enjoys the assent" of a majority of the Court, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds" (internal quotation marks omitted)). There is no evidence of an official misstatement of law in this case.

Perhaps recognizing that *North* is fatal to his argument, Venkata contends that he does not seek the instruction that the Court rejected in that case. *See* ECF No. 101, at 6. But in fact, he seeks a near-identical instruction. In *North*, the defendant sought the following instruction:

> If you find that LtCol North acted in good faith on a superior's apparent
> authorization of his action, and that his reliance was reasonable based on the facts
> as he perceived them, that is a complete defense to [Counts Six and Nine].

910 F.3d at 879.  Venkata asks this Court to give the jury the following preliminary instruction:

> To prove an affirmative defense of public authority, the defendant must prove by a
> preponderance of the evidence that: (1) he believed he was acting as an authorized
> government agent at the time of the offense charged in the indictment; and (2) the
> defendant's belief was reasonable.

ECF No. 95, at 9.  The distinction between "act[ing] in good faith on a superior's apparent

authorization" and acting on the reasonable belief that one is "acting as an authorized government

agent" is elusive.  Both boil down to the proposition that "following orders . . . can transform an

illegal act into a legal one."  *North*, 910 F.3d at 881.  The D.C. Circuit rejected that proposition in

*North*.  *Id.*

The cases that Venkata cites do not hold otherwise.  *See* ECF No. 101, at 6–7.  In *United*

*States v. Lam Kwong-Wah*, 924 F.2d 298 (D.C. Cir. 1991), the Court noted that "the very validity"

of the public authority defense was "unclear in this circuit," but held that even assuming such a

defense existed, the defendants had not established it in that case.  *Id.* at 310 n.9.  In *United States*

*v. Rhone*, 864 F.2d 832 (D.C. Cir. 1989), the Court noted that the government cited *Barker* as an

example of "cases where ignorance of the law is a valid defense," but rejected the government's

argument.  *Id.* at 835.  And in *McCord v. Bailey*, 636 F.2d 606 (D.C. Cir. 1980), the Court described

the tests set forth in Judge Wilkey's and Judge Merhige's respective opinions in *Barker* and held

that the defendant could not "make a colorable argument under either Judge Wilkey's or Judge

4

A0123

Merhige's formulation." *Id.* at 612.[1]

Venkata also contends that the language of Federal Rule of Criminal Procedure 12.3(a)(1), which requires a defendant to notify the government of his intent to "assert a defense of actual or believed exercise of public authority," implies that reliance on apparent authority is a valid defense. *See* ECF No. 101, at 4–5.  But Rule 12.3 is merely a notice provision designed to avoid unfair surprise to the government.  Every Circuit to address this issue has held that Rule 12.3 neither defines the public authority defense nor alters the substantive law.  *See United States v. Fulcher*, 250 F.3d 244, 254 n.5 (4th Cir. 2001) ("Rule 12.3 is merely a notice provision and does not in any way alter the substantive legal standards with regard to the public authority defense."); *accord United States v. Sariles*, 645 F.3d 315, 318 (5th Cir. 2011), *as revised* (July 15, 2011); *United States v. Pitt*, 193 F.3d 751, 757 (3d Cir. 1999), *as amended* (Oct. 15, 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626, 198 L. Ed. 2d 73 (2017); *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994).

In sum, the D.C. Circuit has not recognized the apparent public authority defense.  To the contrary, it has rejected a nearly identical defense of authorization.  *See North*, 910 F.3d at 881.  This Court should follow *North* and the weight of authority from other Circuits, *see* ECF No. 98, at 4 nn.1 & 2, to hold that reliance on apparent public authority is not a defense.

Even if reliance on apparent public authority were a valid defense, Venkata could not

---

[1] Venkata cites *United States v. Pitt*, 193 F.3d 751 (3d Cir. 1999), for the proposition that "[o]ther circuits have . . . acknowledged that the D.C. Circuit permits the apparent public authority defense."  ECF No. 101, at 7.  In *Pitt*, the Third Circuit mistakenly believed that Judge Wilkey was "writing for the majority."  *Id.* at 756.  That is incorrect.  Judge Wilkey wrote only for himself.  *See Barker*, 546 F.2d at 943–54 (opinion of Wilkey, J.).

5

A0124

establish it as a matter of law.  To support his claim of reasonable reliance on Patel's apparent authority, Venkata points to facts relating to Patel's job responsibilities, such as her authority to oversee DHS-OIG's IT Division and manage the development of EDS.  *See* ECF No. 101, at 8. But the affirmative defense of public authority is concerned with an official's authority to empower a citizen to break the law, generally as part of a law enforcement operation.  *See United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011) (stating that the public authority defense applies when "the defendant engages in conduct that the defendant knows to be otherwise illegal but that has been authorized by the government").  It applies, for example, where a confidential informant conducts a controlled drug purchase at the direction of a law enforcement officer who has authority to conduct such covert operations.  *See* Construction and Application of "Public Authority" Defense to Criminal Prosecution of Private Citizen, 24 A.L.R.6th 455 (2007).  There are simply no facts to suggest that, when Venkata stole government property, he believed that he was involved in a law enforcement operation.  And none of the facts to which Venkata points could support a reasonable belief that Patel had authority to permit him to engage in conduct that he knew to be "otherwise illegal."  *Stallworth*, 656 F.3d at 727.  The Court should hold that, even assuming that reliance on apparent authority is a defense, any reliance on Patel's apparent authority to sanction otherwise criminal conduct is objectively unreasonable as a matter of law.

Venkata also suggests that Patel may have been a go-between for authority possessed by "more senior government officials," possibly at other agencies such as USDA-OIG.  *See* ECF No. 101, at 9.  The evidence is similarly lacking that any government official, at any level, gave any indication that Venkata's conduct was sanctioned as part of a law enforcement, national security, or public safety measure.  In any event, Venkata's Rule 12.3 notice identifies Patel as the

6

A0125

government official on whose behalf he claims to have acted and DHS-OIG as the relevant law enforcement agency.  *See* ECF No. 57.  To the extent he now seeks to assert a public authority defense based on other officials at other agencies, that defense should be precluded for failure to comply with Rule 12.3.

## II.     Venkata Should Be Precluded from Asserting an Entrapment Defense.

Venkata concedes that any entrapment defense he may have is one of derivative entrapment.  *See* ECF No. 101, at 10–12.  But he ignores the standard for derivative entrapment in this Circuit.  That standard is a demanding one.  "[T]he derivative entrapment defense may only be raised if the alleged inducement communicated by the unwitting intermediary is the *same* inducement, directed at the *same* target, as the inducement that the government agent directs the intermediary to communicate."  *United States v. Washington*, 106 F.3d 983, 995 (D.C. Cir. 1997).

Venkata fails to proffer facts sufficient to meet that standard.  He states that Paradis repeatedly expressed interest in acquiring Next Gen EDS from Edwards and Patel.  ECF No. 101, at 10–11.  But he does not allege that Paradis encouraged Edwards and Patel to steal government property or to commit any other crime, much less that Paradis specifically directed them to encourage Venkata to commit a crime.  All Venkata can point to is that Paradis was aware of his involvement in the project and requested that the finished product include a module that he had developed.  *Id.* at 12.  That falls far short of establishing that Patel, as an unwitting intermediary for Paradis, "carr[ied] out the government's explicit instructions to persuade a particular individual to commit a particular crime using a particular type of inducement."  *Washington*, 106 F.3d at 994. Accordingly, Venkata's asserted entrapment defense fails as a matter of law.

## III.     Conclusion

Instructing the jury on invalid affirmative defenses or allowing Venkata to present such

7

A0126

defenses at trial would confuse the jury and distract from the real issues in the case.  The United

States respectfully requests that the Court enter a pretrial order precluding Venkata from asserting

the affirmative defenses of public authority or entrapment.

Respectfully submitted,

MATTHEW M. GRAVES                    COREY R. AMUNDSON
UNITED STATES ATTORNEY               CHIEF
For the District of Columbia         Public Integrity Section

By: */s/ Christine M. Macey*         By:  */s/ Victor R. Salgado*
    CHRISTINE M. MACEY                    VICTOR R. SALGADO
    D.C. Bar No. 1010730                  D.C. Bar No. 975013
    Assistant United States Attorney      Senior Litigation Counsel
    Fraud, Public Corruption, and Civil Rights Section   Public Integrity Section
    555 4th Street, NW                     Criminal Division
    Washington, D.C. 20530                 1301 New York Avenue, NW
    (202) 252-7058                         Washington, D.C. 20530
    christine.macey@usdoj.gov              (202) 353-4580
                                           victor.salgado@usdoj.gov

                                     By:  */s/ Celia R. Choy*
                                          CELIA R. CHOY
                                          D.C. Bar No. 1017211
                                          Trial Attorney
                                          Public Integrity Section
                                          Criminal Division
                                          1301 New York Avenue, NW
                                          Washington, D.C. 20530
                                          (202) 875-1557
                                          celia.choy@usdoj.gov

8

A0127

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 20-cr-00066-2 |
| v. | Honorable Randolph D. Moss |
| MURALI YAMAZULA VENKATA, | Trial: March 28, 2022 |
| Defendant. | |

**DEFENDANT'S PROPOSED FINAL JURY INSTRUCTIONS**

Murali Yamazula Venkata, through undersigned counsel, respectfully submits his

proposed Final Jury Instructions, subject to issues that may arise during trial.

First, Defendant requests that the Court issue the following standard pattern instructions

from *Criminal Jury Instructions for the District of Columbia* ("the Red Book"):

| | |
|---|---|
| 2.100 | Furnishing the Jury with a Copy of the Instructions |
| 2.101 | Function of the Court |
| 2.102 | Function of the Jury |
| 2.103 | Jury's Recollection Controls |
| 1.105B | Notetaking by Jurors |
| 2.104 | Evidence in the Case |
| 2.105 | Statements of Counsel |
| 2.106 | Indictment Not Evidence |
| 2.107 | Burden of Proof |
| 2.108 | Reasonable Doubt |
| 2.109 | Direct and Circumstantial Evidence |
| 2.110 | Nature of Charges Not to Be Considered |
| 2.111 | Number of Witnesses |
| 2.112 | Inadmissible and Stricken Evidence |
| 2.200 | Credibility of Witnesses |
| 2.202 | Accomplice's Testimony |
| 2.203 | Witness with a Plea Agreement |
| 2.207 | Law Enforcement Officer's Testimony |
| 2.208 | Right of the Defendant Not to Testify (if applicable) |

1

| 2.209 | Defendant as Witness (if applicable) |
| 2.210 | False or Inconsistent Statement by Defendant (if applicable) |
| 2.213 | Character of Defendant (if applicable) |
| 2.215 | Specialized Opinion Testimony |
| 2.216 | Evaluation of Prior Inconsistent Statement of a Witness |
| 2.305 | Statements of the Defendant – Substantive Evidence (if applicable) |
| 2.307 | Motive |
| 2.310 | Transcripts of Tape Recordings |
| 2.402 | Multiple Counts |
| 2.405 | Unanimity – General |
| 2.407 | Verdict Form Explanation |
| 2.501 | Exhibits During Deliberations |
| 2.502 | Selection of Foreperson |
| 2.505 | Possible Punishment Not Relevant |
| 2.508 | Cautionary Instruction on Publicity, Communication, and Research |
| 2.509 | Communication Between Court and Jury During Jury's Deliberations |
| 2.510 | Attitude and Conduct of Jurors in Deliberations |
| 2.511 | Excusing Alternate Jurors |
| 3.101 | Proof of State of Mind |
| 3.105 | Proof of Value |

Second, in addition to these standard instructions from the Red Book, Defendant requests

that the Court give the instructions set forth on the following pages, including:

| 1 | Perjurer's Testimony |
| 2 | Count One: Conspiracy, 18 U.S.C. § 371 |
| 3 | Count Two: Theft of Government Property, 18 U.S.C. §§ 641, 2 |
| 4 | Aiding and Abetting, 18 U.S.C. § 2 |
| 5 | Count Eleven: Wire Fraud, 18 U.S.C. § 1343 |
| 6 | Counts Twelve through Fifteen: Aggravated Identity Theft, 18 U.S.C. §§ 1028A, 2 |
| 7 | Aiding and Abetting, 18 U.S.C. § 2, continued |
| 8 | Count Sixteen: Destruction of Records, 18 U.S.C. § 1519 |
| 9 | Murali Venkata's Theory of Case |

2

**1. Perjurer's Testimony[1]**

The testimony of someone who has admitted to lying to law enforcement in violation of the law should be considered with caution and scrutinized with care.

---

[1] From Red Book 2.206 as modified.

3

**A0130**

2. **Count One: Conspiracy, 18 U.S.C. § 371[2]**

Mr. Venkata is charged with conspiring to defraud the United States by converting government information to sell for private gain.  The charge of conspiracy to defraud the United States is a separate charge from the underlying offenses of theft of government information and fraud with which Mr. Venkata also is charged.  With respect to the conspiracy, the government is not required to prove that the objective was achieved.  However, you may not find the defendant guilty of Count One unless you find that the government has proven beyond a reasonable doubt that Mr. Venkata joined a conspiracy to defraud the United States by converting government information to sell for private gain.

The elements of conspiracy, each of which the government must prove beyond a reasonable doubt, are that:

(1) Between October 2014 and April 2017, an agreement existed between two or more people to commit the crime of defrauding the United States by converting government information to sell for private gain.  This does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details.  On the other hand, merely because people get together and talk about common interests, or do similar things does not necessarily show that an agreement exists to defraud the United States by converting government information to sell for private gain.  It is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the charged crimes.  So, the first thing that must be shown is the existence of an agreement.

---

[2] Redbook 7.102 as modified.

(2) The second element that must be proven beyond a reasonable doubt is that Mr. Venkata intentionally joined in that agreement.  It is not necessary to find he agreed to all the details of the crime, or that he knew the identity of all the other people the government has claimed were participating in the agreement.  A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy.  Even if Mr. Venkata was not part of the agreement at the very start, he can become a member of a conspiracy later if the government proves that he intentionally joined the agreement. Different people may become part of the conspiracy at different times.

But mere presence at the scene of the agreement or of the crime, or merely associating with the other participants, would not be sufficient to show that Mr. Venkata knowingly joined in the agreement.  Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy.  So the second thing that must be shown is that Mr. Venkata joined the agreement.

(3) The third element that must be proven beyond a reasonable doubt is that one or more of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy.  This something is referred to as an overt act.  The charged overt acts are that the conspirators converted government property—namely, the Enforcement Database System ("EDS") belonging to the U.S. Department of Homeland Security's Office of Inspector General ("DHS-OIG"), and the STARS database and PARIS system belonging to the U.S. Postal Service's Office of the Inspector General ("USPS-OIG").  The

5

**A0132**

government need not prove that all of these overt acts were taken, but in order to find Mr. Venkata guilty, you must all agree on at least one overt act that was done.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed.  However, the government must prove beyond a reasonable doubt that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

In summary, a conspiracy is a kind of partnership in crime.  For any defendant to be convicted of the crime of conspiracy, the government must prove three things beyond a reasonable doubt: first, that during the time period of October 2014 to April 2017, there was an agreement to defraud the government by converting government information for private gain; second, that Mr. Venkata intentionally joined in that agreement; and third, that one of the people involved in the conspiracy did one of the overt acts charged.

6

### 3. Count Two: Theft of Government Property, 18 U.S.C. §§ 641, 2[3]

Mr. Venkata is also charged with theft or conversion, or with aiding and abetting the theft or conversion, of five types of government property: (1) copies of DHS-OIG's EDS; (2) copies of DHS-OIG's EDS source code and database files; (3) copies of USPS-OIG's case management system; (4) copies of USPS-OIG's STARS database and PARIS system; and (5), the personally identifiable information ("PII") of approximately 246,267 DHS-OIG and approximately 6,723 USPS-OIG employees.

The government must prove beyond a reasonable doubt each element of this offense. Those elements are that:

(1) Mr. Venkata knowingly converted for his own use, or converted for the use of another, property of value;

(2) The property belonged to the United States at the time it was converted;

(3) At the time Mr. Venkata converted the property, he intended to deprive, without right, the United States of the use or benefit of the property; and

(4) The property converted had a value of more than $1,000.

A conversion occurs where there is an unauthorized exercise of control over property in such a manner that serious interference with ownership rights occurs.[4]

---

[3] Red Book 5.351 as modified.
[4] *See United States* v. *Collins*, 56 F.3d 1416, 1420 (D.C. Cir. 1995).

**4. Aiding and Abetting, 18 U.S.C. § 2[5]**

You may find Mr. Venkata guilty of the crime charged in the Indictment without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed. Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find beyond a reasonable doubt that:

(1) Mr. Venkata knowingly associated himself with the commission of the crime;

(2) Mr. Venkata participated in the crime as something he wished to bring about; and

(3) Mr. Venkata intended by his actions to make it succeed.

Some affirmative conduct by the defendant in planning or carrying out the crime is also necessary. Mere physical presence by Mr. Venkata at the place and time the crime is committed is not by itself sufficient to establish his guilt.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission of the crime with the intent to make it succeed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime.

---

[5] From Red Book 3.200 and Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.04 (2019 ed.) as modified; *see also United States* v. *Wilson*, 160 F.3d 732, 738–39 (D.C. Cir. 1998).

For you to find the defendant guilty of the crime of aiding and abetting, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

(1) That the offense of theft of government property was committed by some person;

(2) That the defendant associated with the criminal venture;

(3) That the defendant purposefully participated in the criminal venture; and

(4) That the defendant sought by action to make that venture successful.

"To associate with the criminal venture" means that the defendant shared the criminal intent of the principal.  This element cannot be established if the defendant had no knowledge of the principal's criminal venture.

"To participate in the criminal venture" means that the defendant engaged in some affirmative conduct designed to aid the venture or assist the principal of the crime.

9

**5.    Count Eleven: Wire Fraud, 18 U.S.C. § 1343[6]**

Count Eleven of the Indictment charges the defendant, Mr. Venkata, with Wire Fraud. Title 18, United States Code, Section 1343, makes it a crime for anyone to use interstate wire communications in carrying out a scheme to defraud.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

(1) That the defendant knowingly devised or intended to devise a scheme to defraud; that is, a scheme to defraud the U.S. Department of Agriculture's Office of the Inspector General ("USDA-OIG"), and to obtain property of USDA-OIG by means of materially false and fraudulent pretenses, representations, and promises, and by concealing material facts;

(2) That the scheme to defraud employed false material representations false material representations, pretenses, or promises;

(3) That the defendant transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing for the purpose of executing such scheme; and

(4) That the defendant acted with a specific intent to defraud.

A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property or bring about some financial gain to the person engaged in the scheme.

A "specific intent to defraud" means a conscious, knowing intent to deceive or cheat someone.

If you find that Mr. Venkata had a reasonable belief that he was acting based on the

---

[6] Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.57 (2019 ed.) as modified; *see also United States* v. *Lemire*, 720 F.2d 1327, 1338–43 (D.C. Cir. 2011); *United States* v. *Coughlin*, 610 F.3d 89, 97–98 (D.C. Cir. 2010); *United States* v. *Alston-Graves*, 435 F.3d 331, 337 (D.C. Cir. 2009); *United States* v. *Tann*, 532 F.3d 868, 872–73 (D.C. Cir. 2008); *United States* v. *Pollack*, 534 F.2d 964, 971 (D.C. Cir. 1976).

apparent authority of Sonal Patel, regardless of whether or not she had the actual authority, you may determine that he did not have the requisite intent to defraud.

A representation, pretense, or promise is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity.  A representation, pretense, or promise would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A representation, pretense, or promise is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

It is not necessary that the government prove all of the details alleged in the Indictment concerning the precise nature and purpose of the scheme.  What must be proved beyond a reasonable doubt is that the defendant knowingly devised or intended to devise a scheme to defraud by means of false or fraudulent pretenses, representations, or promises that was substantially the same as the one alleged in the Indictment.

It is also not necessary that the government prove that the material transmitted by wire communications was itself false or fraudulent, or that the use of the interstate wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud.  What must be proved beyond a reasonable doubt is that the use of the interstate wire communications facilities was closely related to the scheme because the defendant either wired something or caused it to be wired in interstate commerce in an attempt to execute or carry out the scheme.

The alleged scheme need not actually succeed in defrauding anyone.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire communications facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

11

A0138

The term "interstate commerce" includes commerce between one State, Territory,

Possession, or the District of Columbia and another State, Territory, Possession, or the District of

Columbia.[7]

---

[7] 18 U.S.C. § 10.

(Page 142 of Total)

**6.  Counts Twelve through Fifteen: Aggravated Identity Theft, 18 U.S.C. §§ 1028A, 2[8]**

Counts Twelve through Fifteen of the Indictment charge the defendant, Mr. Venkata, with Aggravated Identity Theft and Aiding and Abetting Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A.  This provision makes it a crime for anyone to knowingly transfer, possess, or use, without lawful authority, a means of identification of another person during and in relation to a felony relating to theft of government money or property.

For you to find the defendant guilty of Aggravated Identity Theft, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

(1) That the defendant knowingly transferred, possessed, or used a means of identification of another person;

(2) That the defendant did so without lawful authority;

(3) That the defendant transferred, possessed, or used the means of identification of another person during and in relation to Wire Fraud; and

(4) That the defendant knew that the means of identification in fact belonged to another real person, living or dead.

"Means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, or employer or taxpayer identification number.

---

[8] Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.48C (2019 ed.) as modified.

"Without lawful authority" means that the defendant transferred, possessed, or used another's means of identification either without that person's permission, beyond the scope of that person's legally obtained permission, or having obtained that person's permission illegally.

If you find that Mr. Venkata had a reasonable belief that he was acting based on the apparent authority of Sonal Patel, regardless of whether she had the actual authority, you may determine that he did not have the requisite intent to commit the offense of Aggravated Identity Theft.

The phrase "during and in relation to" means the means of identification was transferred, possessed, or used in furtherance of the commission of the crime of Wire Fraud.  It must have been used to some purpose or effect with respect to the commission of the crime of Wire Fraud; the presence or involvement of the means of identification in the commission of Wire Fraud cannot be the result of coincidence.  The means of identification must facilitate or have the potential to facilitate commission of Wire Fraud.[9]

---

[9] Eighth Circuit Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1028A (2017 revised ed.) as modified.

14

**7. Aiding and Abetting, 18 U.S.C. § 2, continued**

The defendant, Mr. Venkata, is charged with aiding and abetting Aggravated Identity

Theft.  You may find the defendant, Mr. Venkata, guilty of any of the crimes charged in Counts

Twelve through Fifteen either as an aider and abettor or as a principal offender if you find that

the government has proven each of the elements beyond a reasonable doubt.  I have already

instructed you on the facts you must find in order to find that Mr. Venkata aided and abetted in

committing a crime, and you are to apply those instructions here.

With respect to the charges of Aggravated Identity Theft, regardless of whether Mr.

Venkata is an aider and abettor or a principal offender, the government must prove beyond a

reasonable doubt that Mr. Venkata personally acted knowingly and with knowledge that the

means of identification in fact belonged to another real person, living or dead.

**8. Count Sixteen: Destruction of Records, 18 U.S.C. § 1519[10]**

Count Sixteen of the Indictment charges the defendant, Mr. Venkata, with Destruction of Records in violation Title 18, United States Code, Section 1519.  This provision makes it a crime for anyone to knowingly alter or destroy a record, document, or a record, document, or tangible object with the intent to impede or obstruct the investigation of a matter within the jurisdiction of any department or agency of the United States.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

(1) That the defendant knowingly altered knowingly altered or destroyed a record, document, or tangible object;

(2) That the defendant the defendant acted with the intent to impede or obstruct the investigation of a matter; and

(3) That the matter was within the jurisdiction of DHS-OIG which is an agency of the United States.

There is no requirement that the matter or investigation have been pending or imminent at the time of the obstruction, but only that the acts were taken in relation to or in contemplation of any such matter or investigation.

The government is not required to prove that the defendant specifically knew the matter or investigation was within the jurisdiction of a department or agency of the United States.  In other words, you need not find the defendant knew he was obstructing a matter that was federal in nature.

A "tangible object" is one used to record or preserve information.

---

[10] Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.65 (2019 ed.) as modified.

16

**A0143**

### 9.   Murali Venkata's Theory of Case[11]

Mr. Venkata's position is that he did not conspire to defraud the federal government or to steal or convert government property, that he did not steal or convert government property, that he did not commit wire fraud, that he did not commit aggregated identity theft, and that he did not obstruct justice by destroying records relevant to this investigation.

With respect to the allegation that Mr. Venkata conspired to defraud the federal government, Mr. Venkata submits that he did not knowingly and intentionally join a conspiracy with Mr. Edwards and Ms. Patel to convert government property for private gain.  Mr. Venkata's defense is that he was never informed that Charles Edwards and Sonal Patel intended to sell a commercial product based on stolen property to the government at a profit, nor did he expect to profit from their scheme.  Moreover, Mr. Venkata contends that he never made any representations to Peter Paradis, or to anyone else in the federal government, about the origins of the commercial software product—nor did he have any contact with anyone seeking to acquire the commercial software product.

With respect to the allegation that Mr. Venkata conspired to steal or convert government property for private gain, and that he actually stole or converted government property, Mr. Venkata submits that he never removed government proprietary information from any government database, nor did he conspire to steal or convert government property for private gain.  While his supervisor Ms. Patel may have instructed him to aid in the sorts of routine software configuration tasks that he did for his job at the U.S. Department of Homeland Security, Office of Inspector General (DHS-OIG), Mr. Venkata contends that he did not know that his

---

[11] As permitted under Red Book 9.100.

assistance was being used for illegal purposes rather than for an agency-sanctioned improvement to the DHS-OIG Enforcement Data System (EDS).

With respect to the allegation that Mr. Venkata committed wire fraud, Mr. Venkata contends that he never had a phone call, nor used the wires in any other fashion, for the purpose of furthering a crime, and that he did not share in the criminal purpose of Mr. Edwards and Ms. Patel.

With respect to the allegation that Mr. Venkata committed aggravated identity theft, Mr. Venkata contends that he did not remove federal employees' personally identifiable information (PII) from government databases.  Moreover, any inadvertent possession of PII that Mr. Venkata had was unintentional and was not in furtherance of the commission of any of the other crimes alleged.

With respect to the allegation that Mr. Venkata obstructed justice by destroying records relevant to this investigation, Mr. Venkata contends that no such obstruction ever occurred.  Mr. Venkata followed the instructions of DHS-OIG agents and alerted his Chief Information Officer when Mr. Edwards contacted him at the start of the investigation, demonstrating that he did not intend to hide his affiliations with Mr. Edwards and Ms. Patel from government investigators.

18

April 1, 2022.

Respectfully submitted,


/s/ *Kamil R. Shields*

Kamil R. Shields
Pardis Gheibi (*pro hac vice*)
Tara N. Ohrtman (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C. 20006-5215
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldska@sullcrom.com
Email: gheibip@sullcrom.com
Email: ohrtmant@sullcrom.com

Katherine M. Savarese (*pro hac vice*)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com

Michelle Peterson
Chief Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
Telephone: (202) 208-7500
Email: Shelli_Peterson@fd.org

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 20-cr-00066-RDM** |
| | **)** | |
| **MURALI YAMAZULA VENKATA,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| _____ | **)** | |

### UNITED STATES' OBJECTIONS TO DEFENDANT'S PROPOSED FINAL JURY INSTRUCTIONS

The United States hereby submits its objections to Defendant's Proposed Final Jury Instructions.

### I.    Defendant's Proposed Red Book Instructions

#### A.    Red Book 2.202 – Accomplice's Testimony

Red Book Instruction 2.202 (Accomplice's Testimony) is unnecessary and cumulative in this case.  This instruction is not necessary where the accomplice's testimony is "materially corroborated."  *United States v. Laing*, 889 F.2d 281, 287 (D.C. Cir. 1989).  Here, the testimony of Charles Edwards and Sonal Patel is materially corroborated by the text message and email evidence as well as the forensic evidence.  Furthermore, both parties have proposed that the Court give Red Book Instruction 2.203 (Witness with a Plea Agreement), which covers substantially the same ground.  Delivering both instructions would be redundant and confusing to the jury.

#### B.    Red Book 2.213 – Character of Defendant

The United States does not oppose giving this instruction if there is character evidence in the case.  However, if the Defendant intends to introduce character evidence, he should be required "to advise the trial court … before the character witness testifies, of [his] intention to call a character witness."  *Morris v. United States*, 469 A.2d 432, 436 (D.C. 1983).  The Court can

1

thereby "exercise informed discretion regarding the permitted scope of the prosecution's contemplated cross-examination or rebuttal." *Id.*; *see also United States v. Lewis*, 482 F.2d 632, 643–44 (D.C. Cir. 1973).

### C.      Red Book 3.105 – Proof of Value

The Court should give the statutory definition of "value" found in Section 641, as proposed in the United States' Proposed Instruction No. 22, rather than the general Red Book instruction on value. Where Congress has specifically defined a term, it is appropriate to instruct the jury on that definition rather than a general definition that may apply to many offenses.

## II.      Defendant's Other Proposed Instructions

### A.      Defendant's Proposed Instruction No. 1 – Perjurer's Testimony

This instruction is inappropriate. Defendant has taken Red Book Instruction 2.206, which applies to the testimony of an "admitted or convicted perjurer" and expanded it to anyone "who has admitted to lying to law enforcement in violation of the law." The original Red Book instruction is not warranted in this case, as there has been no testimony from an admitted or convicted perjurer, and defendant provides no justification for his novel proposed departure from the pattern instructions. Even in cases where there is testimony of an admitted or convicted perjurer, this instruction is not necessary where the jury is aware of the facts concerning the prior perjury and has been given a general instruction on the credibility of witnesses. *See United States v. Bowman*, 609 F.2d 12, 20 (D.C. Cir. 1979). The Court should not give Defendant's Proposed Instruction No. 1.

### B.      Defendant's Proposed Instruction No. 2 – Conspiracy

There are at least four serious errors in Defendant's Proposed Instruction No. 2. First, it fails to accurately describe the charges in the Indictment. Count One charges a dual-object

conspiracy, the objects of which are (1) to commit Theft of Government Property in violation of 18 U.S.C. § 641, and (2) to defraud the United States.  Consistent with well-established conspiracy law, the United States' Proposed Instruction No. 21 explains the two objects of the conspiracy and instructs the jury that it must unanimously agree on at least one of the two objects.  *See United States v. Treadwell*, 760 F.2d 327, 337 (D.C. Cir. 1985).  By contrast, Defendant's Proposed Instruction No. 2 instructs the jury that the object of the conspiracy is "to defraud the United States by converting government information to sell for private gain."   That instruction incorrectly collapses the two objects of the conspiracy into one and incorrectly describes the object offenses.

Second, Defendant's Proposed Instruction No. 2 fails to instruct the jury on the elements of the object offense of Theft of Government Property in violation of 18 U.S.C. § 641 or to define the term "defraud the United States."  *See* Red Book 7.102 Comment ("Where the object of the conspiracy is to commit a substantive offense, the elements of the substantive offense will also have to be defined for the jury.").  By contrast, the United States' proposed Instruction No. 21 incorporates by reference the elements of Section 641 and correctly defines "defraud the United States" as "to cheat the United States government or any of its agencies out of money or property." *See Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) ("To conspire to defraud the United States means primarily to cheat the government out of property or money.").

Third, Defendant's Proposed Instruction No. 2 states that the charged overt acts are "that the conspirators converted government property—namely, the Enforcement Database System ("EDS") belonging to the U.S. Department of Homeland Security's Office of Inspector General ("DHS-OIG'), and the STARS database and PARIS system belonging to the U.S. Postal Service's Office of the Inspector General ("USPS-OIG")."  That is an incorrect description of the Indictment. The charged overt acts are the far more extensive list of acts described in paragraph 16 of the

3

Indictment.  Furthermore, Defendant's Proposed Instruction No. 2 incorrectly suggests that the government must prove one of the overt acts that is expressly charged in the Indictment.  To satisfy the overt act element, the government need only prove that "at least one overt act was committed in furtherance of the common scheme." *Treadwell*, 760 F.2d at 333.  The Indictment alleges that the overt acts in furtherance of the conspiracy "include[], but [are] not limited to" the acts enumerated in paragraph 16.  "The government need not identify all overt acts in furtherance of a conspiracy in the indictment," and "the government can, if necessary, prove additional overt acts at trial." *United States v. Hsia*, 24 F. Supp. 2d 14, 27 (D.D.C. 1998).

Fourth, Defendant's Proposed Instruction No. 2 omits the standard Red Book instruction regarding consideration of the acts and statements of other members of the conspiracy as evidence against the defendant.  The evidence in this case included numerous acts and statements by Charles Edwards and Sonal Patel, all of which the jury may consider against Defendant.  Providing that instruction will assist the jury in understanding the evidence it may consider. *See Treadwell*, 760 F.2d at 338.

In light of the errors in Defendant's Proposed Instruction No. 2, the Court should give the United States' Proposed Instruction No. 21 instead.

### C.    Defendant's Proposed Instruction No. 3 – Theft of Government Property

Defendant's Proposed Instruction No. 3 omits two of the charged means of violating the statute – stealing and purloining.  Presumably, that is because of Defendant's pending motion to dismiss, ECF No. 63.  As explained in the Government's Omnibus Response to Defendants' Motions to Dismiss, there is no support for Defendant's contention that physical asportation is an element of "stealing" and "purloining" under Section 641. *See* ECF No. 66, at 19–22.

Defendant's argument is that "stealing" and "purloining" as used in Section 641 are both

4

identical to the common-law crime of larceny.  But if Congress had wanted to codify the common-law crime of larceny, it would have used the term larceny.  Instead, it used different terms: "[s]tealing, having no common law definition to restrict its meaning as an offense, is commonly used to denote any dishonest transaction whereby one person obtains that which rightfully belongs to another, and deprives the owner of the rights and benefits of ownership, but may or may not involve the element of stealth usually attributed to the word purloin." *Morissette v. United States*, 342 U.S. 246 n.28 (1952) (quoting *Crabb v. Zerbst*, 99 F.2d 562, 564–65 (5th Cir. 1938)); *cf. United States v. Handler*, 142 F.2d 351, 353 (2d Cir. 1944) ("In various federal statutes the word 'stolen' or 'steal' has been given a meaning broader than larceny at common law."); *United States v. Maloney*, 607 F.2d 222, 229 (9th Cir. 1979) ("[T]he words 'steal' and 'purloin' are not words of art and do not have an accepted common law meaning.").

Furthermore, the purpose of Section 641 was to "avoid gaps and loopholes between offenses."  *Morissette*, 342 U.S. at 273.  Defendant's position would open a large loophole for intangible property.  As the First Circuit has explained, "reading the statute to require asportation would perforce limit § 641 to tangible property, as intangibles cannot be carried away.  This reading of the statute is too narrow and is contradicted by the great weight of authority." *United States v. Herrera-Martinez*, 525 F.3d 60, 63–64 (1st Cir. 2008).  Consistent with that conclusion, two circuits' pattern jury instructions expressly provide that physical asportation is not required to establish a violation of Section 641, and no circuit's pattern jury instruction provides that it is.  *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.27 (2019 Ed.) ("No particular type of movement or carrying away is required to constitute a taking."); Eleventh Circuit Pattern Jury Instructions, Criminal Cases 021 (2020 ed.) (same).

In addition, Defendant's Proposed Instruction No. 3 uses the novel term "property of

value," which is not found in the statute or any pattern jury instruction.  By contrast, consistent with the language of Section 641, the United States' Proposed Instruction No. 22 uses the term "property," then defines that term as "any record, voucher, money, or thing of value."

Defendant's Proposed Instruction No. 3 also fails to define the term "convert," which may not be familiar to the jury.  The United States' Proposed Instruction No. 22 adopts the definition of "steal" or "knowingly convert" from the Fifth Circuit Pattern Jury Instructions, which is "to wrongfully take property belonging to another with intent to deprive the owner of its use or benefit either temporarily or permanently."  The United States' proposed instruction applies the same definition to the term "purloin," which is closely related to stealing but "involve[s] the element of stealth."  *Morissette v. United States*, 342 U.S. 246, 266 n.28 (1952); *see also United States v. Henry*, 447 F.2d 283, 286 (3d Cir. 1971) (in case charging 18 U.S.C. § 661, approving jury instruction that "to steal or purloin means any taking whereby a person, by some wrongful act, willfully obtains or retains possession of property belonging to another without the permission or beyond any permission given with the intent to deprive the owner of the benefit of ownership").

Defendant proposes that the Court specifically instruct the jury that conversion requires serious interference with the owner's ownership rights.  If the Court adopts the United States' proposed instruction, then it is not necessary to specifically instruct the jury regarding serious interference because the United States' proposed definition of "steal," "purloin," or "knowingly convert" includes that concept.  One cannot "take" property "with intent to deprive the owner of its use or benefit" without seriously interfering with that owner's property rights.

If the Court is inclined to specifically instruct the jury on serious interference, then that instruction should include the full definition from *United States v. Collins*, 56 F.3d 1416 (D.C. Cir. 1995), which states that "[o]ne who is authorized to make a particular use of a chattel, and uses it

6

in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby seriously violated." *Id.* at 1420 (quoting Restatement (Second) of Torts § 228). That definition is taken from the civil context but could be adapted to this case by instructing the jury that conversion is established when "[o]ne who is authorized to make a particular use of property uses it in a manner exceeding the authorization, such that the owner's right to control the use of the property is thereby seriously violated."

The Court should give the United States' Proposed Instruction No. 22.[1]

### D.    Defendant's Proposed Instruction No. 4 – Aiding and Abetting

Defendant's Proposed Instruction No. 4 is confusing because it sets forth two different sets of elements that the jury must find in order to find defendant liable on an aiding and abetting theory. This proposed instruction appears to be an amalgam of Red Book Instruction No. 3.200 and a Fifth Circuit pattern instruction. By contrast, the United States' Proposed Instruction No. 23 is the standard Red Book Instruction 3.200.

### E.    Defendant's Proposed Instruction No. 5 – Wire Fraud

Defendant's Proposed Instruction No. 5 includes a non-pattern instruction regarding the apparent authority defense. Defendant's novel proposed instruction improperly suggests that the jury should give particular weight to arguments regarding Sonal Patel's apparent authority in considering whether Defendant had the intent to defraud. The effect is to emphasize Defendant's theory of the case over the government's. *See United States v. Hensley*, 982 F.3d 1147, 1161 (8th Cir. 2020) ("[W]e discourage the use of such one-sided jury instructions."). This proposed

---

[1] The United States' Proposed Instruction No. 22 refers to the theft of "Multiple Activation Keys and a Key Management Services Code associated with various Microsoft software products." Because the government is not pressing this allegation against Mr. Venkata, this language should be deleted.

instruction is particularly inappropriate given that there is no evidence in this case that any reasonable person would believe that Sonal Patel had authority to authorize the conduct at issue, and there is a wealth of evidence to the contrary.  Instead, as the United States has proposed, the jury should be given the standard Red Book Instruction 3.101, which instructs the jury to consider all "facts and circumstances received in evidence which indicate [defendant's] intent."  The standard instruction accurately informs the jury of the facts it may consider and does not favor one side over the other.

### F.   Defendant's Proposed Instruction No. 6 – Aggravated Identity Theft

Defendant's Proposed Instruction No. 6 includes the same language as the above regarding apparent authority.  It is inappropriate for the same reasons.

Furthermore, Defendant's Proposed Instruction No. 6 fails to instruct the jury regarding which victim's means of identification is charged in each Count.  It also includes only wire fraud, and not theft of government property, as the predicate felonies in relation to which the aggravated identity theft occurred.  Both predicate felonies are charged in the Indictment.

Finally, Defendant's Proposed Instruction No. 6 primarily relies on the Fifth Circuit pattern instruction but substitutes the Eighth Circuit pattern instruction regarding the "during and in relation to" element.  The two pattern instructions cover substantially the same ground, but the Fifth Circuit's instruction is clearer and more concise.

The Court should give the United States' Proposed Instruction No. 26.

### G.   Defendant's Proposed Instruction No. 7 – Aiding and Abetting continued

Defendant's Proposed Instruction No. 7 is nearly identical to the United States' Proposed Instruction No. 27, except that it states "[Y]ou may find the defendant, Mr. Venkata, guilty of any of the crimes charged in Counts Twelve through Fifteen either as an aider and abettor or as a

principal offender if you find that the government has proven each of the elements beyond a reasonable doubt." This sentence injects confusion because it is not clear what "elements" it refers to. The United States' Proposed Instruction No. 27 simply refers back to the initial definition of aiding and abetting in United States' Proposed Instruction No. 23. The United States' Proposed Instruction is an accurate statement of the law and is less confusing than Defendant's Proposed Instruction No. 7.

### H.   Defendant's Proposed Instruction No. 8 – Destruction of Records

Defendant's Proposed Instruction No. 8 is substantially similar to the United States' Proposed Instruction No. 28, except that it has a number of typographical errors. Defendant's Proposed Instruction No. 8 also adds a definition of "tangible object," which is not necessary here because defendant is alleged to have destroyed text messages, emails, and call logs, which are records, not tangible objects.

### I.   Defendant's Proposed Instruction No. 9 – Murali Venkata's Theory of the Case

Defendant's Proposed Instruction No. 9 is obviously improper. Defendant would have the Court instruct the jury on his version of the facts, such as telling the jury that "any inadvertent possession of PII that Mr. Venkata had was unintentional and was not in furtherance of the commission of any other crimes alleged," and that "Mr. Venkata followed the instructions of DHS-OIG agents and alerted his Chief Information Officer when Mr. Edwards contacted him at the start of the investigation, demonstrating that he did not intend to hide his affiliations with Mr .Edwards and Ms. Patel from government investigators."

The function of a theory-of-defense instruction is to explain a legal defense that is supported by the evidence such that a reasonable jury could find that the predicate facts did in fact occur. *See, e.g.*, *United States v. Hurt*, 527 F.3d 1347, 1351 (D.C. Cir. 2008) (holding that district

9

court erred by refusing to instruct jury that defendant could not be convicted under Section 641 if he had a good faith but mistaken belief that the property belonged to him). It is not to have the Court recite the defense's factual contentions. *See Laughlin v. United States*, 385 F.2d 287, 294 (D.C. Cir. 1967) ("The trial court is not required to rehearse the evidence, especially where the effect would be, as it would here, to give special emphasis to the defendant's testimony."); *United States v. Mathis*, 535 F.2d 1303, 1305 (D.C. Cir. 1976) ("Since the court did not review the facts relied on by the government or otherwise lend undue weight to its theory, rehearsal of the facts relied on by the defense was not needed to redress any imbalance in charge."). Defendant's proposed instruction does not appear to describe any particular legal theory. Instead, it recites Defendant's arguments as to why the government has not met its burden of proof. Advocating for defendant's interpretation of the facts is the function of counsel, not the Court.

### III.   United States' Proposed Instruction Omitted by Defendant

#### A.   United States' Proposed Instruction No. 24 – Co-Conspirator Liability

The United States is entitled to an instruction on co-conspirator liability on Count Two. *See United States v. Washington*, 106 F.3d 983, 1012 (D.C. Cir. 1997) ("As long as a substantive offense was done in furtherance of the conspiracy, and was reasonably foreseeable as a 'necessary or natural consequence of the unlawful agreement,' then a conspirator will be held vicariously liable for the offense committed by his or her co-conspirators." (quoting *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946)). If the jury finds that defendant was a member of the conspiracy charged in Count One, then he may be held vicariously liable for forseeable violations of Section 641 committed by his co-conspirators in furtherance of that conspiracy. The United States has proposed the standard Red Book instruction on co-conspirator liability (Red Book 7.103A).

Respectfully submitted,

MATTHEW M. GRAVES                        COREY R. AMUNDSON
UNITED STATES ATTORNEY                   CHIEF
For the District of Columbia             Public Integrity Section

By: */s/ Christine M. Macey*         By:   */s/ Victor R. Salgado*
     CHRISTINE M. MACEY                    VICTOR R. SALGADO
     D.C. Bar No. 1010730                  D.C. Bar No. 975013
     Assistant United States Attorney      Senior Litigation Counsel
     Fraud, Public Corruption, and Civil Rights Section   Public Integrity Section
     555 4th Street, NW                    Criminal Division
     Washington, D.C. 20530               1301 New York Avenue, NW
     (202) 252-7058                        Washington, D.C. 20530
     christine.macey@usdoj.gov             (202) 353-4580
                                           victor.salgado@usdoj.gov

                                     By:   */s/ Celia R. Choy*
                                           CELIA R. CHOY
                                           D.C. Bar No. 1017211
                                           Trial Attorney
                                           Public Integrity Section
                                           Criminal Division
                                           1301 New York Avenue, NW
                                           Washington, D.C. 20530
                                           (202) 875-1557
                                           celia.choy@usdoj.gov

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 20-cr-00066-2 |
| v. | Honorable Randolph D. Moss |
| MURALI YAMAZULA VENKATA, | Trial: March 28, 2022 |
| Defendant. | |

**DEFENDANT'S REPLY TO UNITED STATES' OBJECTIONS TO DEFENDANT'S
PROPOSED FINAL JURY INSTRUCTIONS**

Murali Yamazula Venkata, through undersigned counsel, respectfully submits his reply to
the United States' objections to his proposed final jury instructions.

## I.   INTRODUCTION

Both the government and the defense have submitted proposed final jury instructions for
the Court's consideration.  *See* United States' Proposed Instructions to the Jury During Trial and
Final Jury Instructions (Dkt. 97) ("Government's Instructions"); Defendant's Proposed Final
Jury Instructions (Dkt. 125) ("Defendant's Instructions").  In addition to standard jury
instructions contained standard pattern instructions from Criminal Jury Instructions for the
District of Columbia ("the Red Book"), both parties proposed jury instructions modeled on the
standard instructions of the Red Book, as modified to suit the specific facts of this case.  The
parties supplemented their proposed instructions with the pattern jury instructions of other
circuits where the Red Book lacks an instruction on a substantive offense or legal issue.  The
government now objects to two of the defense's proposed standard Red Book instructions and
each of the defense's proposed instructions drafted for this particular case ("Defendant's

1

Instructions").  *See* United States' Objections to Defendant's Proposed Final Jury Instructions

(Dkt. 126) ("Government Objections").

It is entirely appropriate that the defense modify standard instructions, consistent with the

law, to assist the jury in its consideration of the specific facts of the case.  Indeed, although the

government objects to Mr. Venkata's modification of standard instructions, the government has

*also* proposed instructions modified from standard instructions contained in the Red Book and

pattern instructions from other circuits.  Further, the government's objections are without merit.

Accordingly, Mr. Venkata respectfully requests that the Court overrule the government's

objections, and use his proposed instructions to instruct the jury at the close of trial.

## II.   GOVERNMENT'S OBJECTIONS TO DEFENDANT'S PROPOSED STANDARD RED BOOK INSTRUCTIONS

The government has objected to two of the defense's proposed standard Red Book

instructions.[1]  These objections are not well-founded.

### A.   Objection to Accomplice's Testimony Instruction (Red Book 2.202)

The government objects to the defense's request for the standard instruction on

accomplice's testimony (Red Book 2.202) on the grounds that this instruction is cumulative of

Red Book Instruction 2.203 (Witness with a Plea Agreement) and unnecessary because the

testimony of two alleged accomplices, Charles Edwards and Sonal Patel, has been corroborated.

The government is wrong on both points.

As is readily apparent from their different titles, codification at different sections, and

plain language, the Red Book's instructions on accomplice's testimony and witnesses with a plea

---

[1] The government does not object to Defendant's proposed instruction on evidence of the defendant's character (Red Book 2.2130) in the event that he seeks to introduce such evidence, but asks that he advise the Court before any character witness testifies.  *See* Government Objections at 1–2.  If Mr. Venkata seeks to introduce evidence of his character, he will advise the Court before he does so.

2

**A0159**

agreement are materially different instructions. *Compare* Red Book 2.202 *with* Red Book 2.203.

Further, "[t]he district court enjoys a large measure of discretion with respect to instructing the

jury concerning the credibility of witnesses." *United States* v. *Laing*, 889 F.2d 281, 287 (D.C.

Cir. 1989).  In its discretion, the Court should instruct the jury as to the testimony of Mr.

Venkata's alleged accomplices using the Redbook's brief accomplice testimony instruction here.

The credibility of Mr. Edwards—and of Ms. Patel, should she testify—are plainly at issue in this

case.  Indeed, the object of the purported conspiracy, as reflected in Mr. Edwards's testimony, is

at the heart of Mr. Venkata's defense.

Moreover, the case on which the government relies, *United States* v. *Laing*, 889 F.2d 281

(D.C. Cir. 1989), did not hold that an instruction on accomplice's testimony is unwarranted

wherever there is evidence which the jury could find corroborative.  Rather, it applied the rule

that it is not reversible error for the district court to fail "to give a cautionary accomplice

instruction" where the "accomplice testimony is materially corroborated" to the facts of that

particular case.  *Id.* at 287 (quotations omitted).  Here, key points of Mr. Edwards's testimony

have not been materially corroborated by any evidence in this case, including the alleged

conspiratorial meeting on Memorial Day 2016 and Mr. Venkata's knowledge of the commercial

aspects of the conspiracy.

### B.  Objection to Proof-of-Value Instruction (Red Book 3.105)

The government also objects to Defendants' proposed inclusion of the standard

instruction on Proof of Value (Red Book 3.105), preferring instead to rely on the Fifth Circuit's

instruction on Theft of Government Money or Property (2.27), which incorporates the statutory

definition of value contained in the theft-of-government-property statute.  *See* 18 U.S.C. § 641

("The word 'value' means face, par, or market value, or cost price, either wholesale or retail,

whichever is greater."); Government Objections at 2; Government Instructions at 7–8 & n.4.

3

The defense is not opposed to including the statutory definition of value set forth in Section 641 within the Court's instruction on this provision.  However, the Red Book's instruction on proof of value contains additional instructions that will assist the jury in evaluating the government's proof of value.  *See* Red Book 3.105 ("Do not speculate or guess at the value of the property.  Base your determination only on the evidence.").  Nevertheless, the defense recognizes that this Red Book instruction contains a definition of value that is distinct from the statutory definition of value contained in Section 641.  Accordingly, the defense proposes that the Court include the Red Book's instruction on Proof of Value, while either omitting the Red Book's definition of value or replacing it with Section 641's definition.

## III.  GOVERNMENT'S OBJECTIONS TO DEFENDANT'S PROPOSED INSTRUCTIONS

The government has objected to each of Mr. Venkata's proposed instructions.  As set out below, these objections are without merit.

### A.  Proposed Instruction No. 1 – Perjurer's Testimony

The government objects to the inclusion of Red Book Instruction 2.206 as unnecessary because Mr. Edwards is neither an admitted nor convicted perjurer, and the defense's proposed modification as an unjustified expansion of the instruction.  *See* Government Objections at 2.  The instruction, however, is entirely appropriate in its modified form, and warranted here.  Mr. Edwards squarely testified that he lied to government agents.  In light of evidence presented in this case, instructing the jury to cautiously consider the testimony of an admitted liar will assist the jury in its role of evaluating credibility.  However, because Mr. Edwards has not been convicted of perjury and did not commit perjury by lying to DHS-OIG agents, the defense agrees that the title of the proposed instruction could be modified to better suit the facts of this case.

4

Alternatively, this specific instruction could be incorporated into the Court's standard instruction on the credibility of witnesses.  *See* Red Book 2.200.

### B. Proposed Instruction No. 2 – Conspiracy

Although both parties rely on and modify the standard Red Book instruction on conspiracy, the government asserts that there is a "serious error[]" in Defendant's proposed instruction because the instruction inaccurately characterizes the object of the conspiracy.[2] Government Objections at 3.  The government is wrong.

The defense's proposed instructions accurately characterizes the object of the conspiracy as alleged in the Indictment, presented in the government's trial brief, and expressed in its opening statement.  As the government's trial brief itself explained, Mr. Venkata and his alleged conspirators "engaged in an unlawful scheme to convert government property for private gain," by means of a "plan . . . to repurpose and repackage the stolen property as a commercial software product, which they intended to sell back to the government at a profit."  Dkt. 99 at 1.  The government's opening statement only further connected these two elements, in asserting within the first minute of its case that the conspirators had a "plan to redevelop that [stolen] software and then sell it back to other government agencies."  03/29/2022 Tr. 4.  And the Indictment itself charges the co-conspirators with scheming "to access, copy, steal, purloin, and convert" government property "so that Defendant EDWARDS and his business DBS could create and develop a private, commercially owned version of a case management system to be offered for

---

[2] The government also objects that the defense's proposed instruction fails to incorporate the elements of Theft of Government Property or define "to defraud the United States."  *See* Government Objections at 3.  The defense does not object to including the government's proposed definition of defrauding the United States, or adding—as the government's submitted instructions proposes—reference to and discussion of the elements of the predicate crime of Theft of Government Property.

sale to government agencies for the benefit, enrichment, and profit of Defendant EDWARDS and his business DBS."  Indictment ¶ 12; see also Indictment ¶¶ 13–14.

The government had ample opportunity to file a superseding indictment alleging multiple conspiracies or a single conspiracy seeking to convert the government's case management systems.  It did not do so.  Instead, the government chose to plead its case by alleging a criminal venture with an overarching purpose to defraud the United States by stealing case management systems to be sold back to the government for private gain.  The government must now prove its case.  It is entirely appropriate to instruct the jury on the object of the conspiracy the government itself has alleged and presented to the Court and jury.

The government also objects that Defendant's proposed instruction lists overt acts the government has alleged in this case, and contains an incomplete list of these overt acts. Although the Red Book suggests that the jury be instructed as to the charged overt acts, the Defense is not opposed to refraining from instructing the jury as to the overt acts listed in paragraph 16 of the Indictment.  *See* Red Book 7.102.

### C.  Proposed Instruction No. 3 – Theft of Government Property

The government opposes the defense's proposed instruction on Theft of Government Property on several grounds, including that it (1) omits "stealing" and "purloining," two of the charged means of violating 18 U.S.C. § 641; (2) fails to define the term "convert"; and (3) unnecessarily includes a definition of "conversion."  *See* Government Objections at 4–7.  These objections, too, are without merit.

Turning first to the government's challenge to Defendant's proposal to use the word "converted" rather than "steal" or "purloin," the Comment to Red Book 5.351—on which both parties' proposed instruction is based—recognizes that the instruction can be modified "[b]ased upon the facts and the indictment in a particular case."  Here, although the Indictment charges

6

stealing, purloining, and conversion, the evidence adduced at trial establishes that conversion is the appropriate theory here: the government has offered nothing to prove that government property was transported, "carried away," or rendered inaccessible to DHS-OIG employees, as would be required to prove purloining or stealing for purposes of Section 641.  *See United States* v. *Barlow*, 470 F.2d 1245, 1251 (D.C. Cir. 1972) (defining the "common law crime of larceny" as the "wrongful taking and carrying away (asportation) of personal property of another with fraudulent intent to deprive the owner of his property without his consent").  Moreover, as the Court explained during the pretrial hearing on March 21, the classic larceny-based formulations of stealing and purloining are likely not applicable here.

Turning next to the government's remaining arguments, although the defense's proposed instruction does not define "convert," as the government recognizes, it does define the term "conversion" using the definition set out in *United States* v. *Collins*, 56 F.3d 1416, 1420 (D.C. Cir. 1995) ("The cornerstone of conversion is the unauthorized exercise of control over property in such a manner that *serious interference* with ownership rights occurs.").[3]  *Collins* defined "conversion" for purposes of Section 1641, and included its definition in the instructions to assist the jury.[4]  The government suggests that the Court add a definition of conversion from Section 228 of the Restatement (Second) of Torts, which *Collins* considered as persuasive authority in explaining the concept of conversion.  *See Collins*, 56 F.3d at 1420.  Including the Restatement

---

[3] If the government is concerned with the potential of confusing the jury with defining the term "conversion" while using the term "converted" in the proposed instruction's statement of the elements, then the defense does not object to modifying the definition set forth in its proposed instructions to use the term "convert," as in, "to prove that the defendant converted property, the government must prove beyond a reasonable doubt that the defendant exercised unauthorized control over property in such a manner that serious interference with ownership rights occurred."

[4] The government suggests that the Court adopt the definition of "convert" contained within the Fifth Circuit's pattern jury instructions.  But the D.C. Circuit has already expressly defined "conversion" for purposes of Section 641, and the government offers no reason to depart from this definition here.  *See Collins*, 56 F.3d at 1420.

7

A0164

definition, however, would be duplicative and confusing to the jury, and is unnecessary in any event given that the D.C. Circuit's definition controls.

### D. Proposed Instruction No. 4 – Aiding and Abetting

The government objects to Defendant's proposed instruction on aiding and abetting on the grounds that it sets forth two different sets of elements for the extension of aiding and abetting liability under 18 U.S.C. § 2.  *See* Government Objection at 7.  Should the Court find this proposed instruction duplicative, however, then the defense is not opposed to deleting elements of the offense set out in the standard Red Book Instruction 3.200, and proceeding using the elements set out in the Fifth Circuit's Pattern Instruction 2.04.  In contrast to Red Book Instruction 3.200, which focuses on the "commission of *the crime*," the Fifth Circuit's Pattern Instruction 2.04 focuses instead on "associat[ion] with the criminal venture."  This is appropriate for the facts of this case: the government has sought not to prove a *scheme* to defraud the government.  The Fifth Circuit's "criminal venture" language is more consistent with the evidence adduced at trial, as well as with the government's theory of Mr. Venkata's criminal liability.  It thus is more helpful to the jury's consideration of the evidence.

### E. Proposed Instruction No. 5 – Wire Fraud

The government objects to one specific portion of Defendant's proposed instruction on wire fraud: that if the jury finds Mr. Venkata "had a reasonable belief that he was acting based on the apparent authority of Sonal Patel, regardless of whether or not she had the actual authority," it may find that "he did not have the requisite intent to defraud."  Defendant's Instructions at 10–11; *see also* Government Objections at 7–8.  Because the evidence will show that Mr. Venkata believed Ms. Patel had apparent authority to authorize his actions, an instruction as to the particular relevance of this evidence will assist the jury and is warranted here.  Under D.C. Circuit law, the apparent authority of an employee's superior is relevant to an

employee's *mens rea* in acting on the authorization of the employee's superior.  *See United States* v. *North*, 910 F.2d 843, 885 (D.C. Cir. 1990), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990) ("[A]uthorization from one's superiors cannot convert illegal activity into legal, yet it surely can affect a defendant's *belief* that his conduct was lawful.").  Nor, as the government argues, is the standard Red Book Instruction 3.101, "Proof of State of Mind," sufficient on the facts of this case.  This instruction does not address the issue of apparent authority, an important component of Mr. Venkata's defense.[5]

### F.  Proposed Instruction No. 6 – Aggravated Identity Theft

The government objects to Defendant's proposed instruction on Aggravated Identity Theft because it omits the government's proposed recitation of which alleged victim's means of identification is charged in Counts Twelve through Fifteen of the Indictment.  The defense omitted this component of the government's proposed instruction because, as the defense's pending motion argues, levying a separate charge of Aggravated Identity Theft for each alleged victim is multiplicitous in this case.  (Dkt. 124, 127.)  This issue remains pending before the Court and is being separately briefed.

The government also objects to Defendant's proposed instruction because it includes in the list of elements "[t]hat the defendant transferred, possessed, or used the means of identification of another person during and in relation to Wire Fraud," rather than—as the government proposes—"in relation to the offenses of Theft of Government Property or Wire Fraud."  *See* Government Objections at 8; Defendant's Instructions at 13; Government's Instructions at 14.  As a way of comparison, with respect to 18 U.S.C. § 924(c)(1), courts "have

---

[5] For the same reason, the government's objection to the inclusion of language concerning Ms. Patel's apparent authority in Defendant's proposed instruction on Aggravated Identity Theft is without merit.

required that each section 924(c)(1) charge be based on a separate predicate offense." *United States* v. *Smith*, 924 F.2d 889, 894 (9th Cir. 1991); *United States* v. *Henry*, 878 F.2d 937, 943–45 (6th Cir. 1989), *overruling on separate grounds acknowledged in United States* v. *Seymour*, 739 F.3d 923, 929–30 (6th Cir. 2014) (same).  As alleged in the Indictment, the transfer, possession, or use of means of identification occurred "during and in relation to" the alleged Wire Fraud, not the Theft of Government Property. (*See* Indictment ¶ 16(kk).)  Thus, Wire Fraud is the appropriate predicate offense.

Lastly, the government objects to the defense's inclusion of the definition "during and in relation to" contained in the Eighth Circuit's pattern jury instructions, preferring instead the definition contained in the pattern jury instructions of the Fifth Circuit.  *See* Government Objections at 8.  The government forgets that they have proposed to use the definition contained in the pattern jury instructions of the Seventh Circuit.[6]  And, contrary to the government's objection, the Seventh Circuit's definition is less clear than that of the Eighth Circuit: it broadly defines the use of a means of identification "in relation to" a crime to include where such use had a "connection to or relationship with" the offense.  Pattern Criminal Jury Instructions of the Seventh Circuit 1028A (2020 ed.).  The Eighth Circuit's definition, by contrast, clarifies that the means of identification "must facilitate or have the potential to facilitate commission" of the predicate offense.  *See* Eighth Circuit Manual of Model Criminal Jury Instructions 6.18.1028a (2017 revised ed.).  Moreover, the Eighth Circuit's definition is more faithful than that of the Seventh Circuit to the Supreme Court's construal of the use of "in relation to" in a separate statute, 18 U.S.C. § 924(c).  *See Smith* v. *United States*, 508 U.S. 223, 238 (1993) ("The phrase

---

[6] The Fifth Circuit's pattern jury instructions do not offer a definition of "during and in relation to" for purposes of aggravated identity theft.  *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.48c (2019 ed.).

'in relation to' . . . at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.").

### G. Proposed Instruction No. 7 – Aiding and Abetting Continued

The government objects to the defense's proposed instruction on aiding and abetting aggravated identity theft, on the grounds that the defense's proposal to include the clause "if you find that the government has proven each of the elements beyond a reasonable doubt" would be confusing to the jury.  The defense sought to supplement this instruction to emphasize for the jury that aiding and abetting and principal liability are more than mere labels.  Should the Court agree that the defense's proposed instruction would be confusing, then the defense requests that the Court include the following instruction instead:

> You may find the defendant, Mr. Venkata, guilty of any of the crimes charged in Counts Twelve through Fifteen, either as an aider and abettor or as a principal offender, if you find that the government has proven each of the elements of aiding and abetting Aggravated Identify Theft or Aggravated Identity Theft beyond a reasonable doubt.

### H. Proposed Instruction No. 8 – Destruction of Records

Both parties have requested that the Court instruct the jury as to the Destruction of Records count of the indictment using the Fifth Circuit Pattern Jury Instructions (Criminal Cases) 2.65.  However, the government opposes the defense's proposed destruction-of-records instruction on the grounds that it includes a definition of "tangible object."  *See* Government Objections at 9.  The defense proposed to include the definition of "tangible object" because the government's proposed instruction retained mention of "tangible object" in its articulation of the elements.  *See* Government Instructions at 17.  As the government has conceded it does not seek to prove destruction of tangible objects, the defense proposes that the Court's instruction as to the destruction of records omit any mention of tangible objects.

11

**I.   Proposed Instruction No. 9 – Murali Venkata's Theory of the Case**

The government opposes Defendant's proposed instruction on his theory of the case,

contending that Mr. Venkata improperly seeks to have the Court instruct the jury on "his version

of the facts."  Government Objections at 9–10.  There is nothing improper about a defendant's

requesting that the Court instruct the jury concerning his or her "version of the facts": a

defendant's version of the facts *is* a component of the defendant's theory of the case.[7]  Where the

evidence presented is consistent with a defendant's theory of his or her defense, the Red Book

permits the Court to instruct the jury as to the defendant's theory of the case.  *See* Red Book

9.100 ("A defendant is generally entitled to an instruction on his theory of the case.").  The

government is undoubtedly aware that courts in this jurisdiction routinely instruct juries as to the

defendant's theory of the facts.  Mr. Venkata's theory-of-the-case instruction—which accurately

reflects his overall theory of the case that the government has not met its burden of proof on any

of the charged offenses—is particularly appropriate here, in light of the complex charges and

evidence presented at trial.

**J.   Defendant's Omission of United States' Proposed Instruction No. 24 – Co-
       Conspirator Liability**

The government opposes Defendant's omission of the Red Book instruction on co-

conspirator liability.  *See* Government Objections at 10.  Defendant omitted an instruction based

on *Pinkerton* v. *United States*, 328 U.S. 640 (1946), because no reasonable jury could, looking at

the evidence presented here, find that Mr. Venkata is guilty of theft of government property on a

---

[7] The government objects to two specific sentences in Defendant's proposed instruction, including that "any inadvertent possession of PII that Mr. Venkata had was unintentional and was not in furtherance of the commission of any of the other crimes alleged" and "Mr. Venkata followed the instructions of DHS-OIG agents and alerted his Chief Information Officer when Mr. Edwards contacted him at the start of the investigation, demonstrating that he did not intend to hide his affiliations with Mr. Edwards and Ms. Patel from government investigators."  *See* Government Objections at 9.  The government fails to read each sentence in context, which reveals that each sentence follows sentences containing the words "Mr. Venkata contends."  Defendant's Instructions at 17–18.

theory of co-conspirator liability.

Count One of the Indictment charges Mr. Venkata with conspiring to commit two predicate offenses: theft of government property, in violation of 18 U.S.C. § 641, and wire fraud, in violation of 18 U.S.C. § 1343.  Count Two of the Indictment charges Mr. Venkata with theft of government property and aiding and abetting the theft of government property.  To find Mr. Venkata guilty on Count Two of the Indictment on a co-conspirator theory of liability, the jury would have to find that Mr. Venkata was a member of the conspiracy actually charged in the Indictment, and that Mr. Venkata's co-conspirators violated Section 641, but that Mr. Venkata did not aid and abet them in doing so.  No reasonable jury would look at the evidence the government has adduced of Mr. Venkata's alleged involvement in the purported conspiracy, and find that he was a member of the conspiracy, but that he took no steps himself to commit or aid and abet his alleged co-conspirators in the theft of government property.  In light of the charges presented in the Indictment and the evidence adduced here, a *Pinkerton* instruction is unwarranted.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Venkata respectfully requests that the Court instruct the jury using his proposed final jury instructions.

13

A0170

April 3, 2022.

Respectfully submitted,


_____/s/_____

Kamil R. Shields
Pardis Gheibi (*pro hac vice*)
Tara N. Ohrtman (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C. 20006-5215
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldska@sullcrom.com
Email: gheibip@sullcrom.com
Email: ohrtmant@sullcrom.com

Katherine M. Savarese (*pro hac vice*)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com

Michelle Peterson
Chief Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
Telephone: (202) 208-7500
Email: Shelli_Peterson@fd.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                                  Plaintiff,

v.

CHARLES KUMAR EDWARDS and
MURALI YAMAZULA VENKATA

                             Defendants.

Case No. 20-cr-00066-RDM

Honorable Randolph D. Moss

Trial: March 28, 2022

### MURALI YAMAZULA VENKATA'S NOTICE OF ADDITIONAL AUTHORITY

Mr. Venkata provides these additional citations in support of his oral Rule 29 Motion with respect to Theft of Government Property under 18 U.S.C. § 641:

- *United States* v. *Blaszczak*, 947 F.3d 19, 38–39 (2d Cir. 2019), *cert. granted, judgment vacated on other grounds sub nom. Olan* v. *United States*, 141 S. Ct. 1040 (2021) (distinguishing between "interference," which is satisfied when confidential government information is disclosed, and "serious interference," which requires more).

- *United States* v. *Kueneman*, 94 F.3d 653 (9th Cir. 1996) ("Not all misuse of government property is conversion [under § 641].").

- *United States* v. *May*, 625 F.2d 186, 192 (8th Cir. 1980) ("The touchstone of conversion is the exercise of such control over property that serious interference with the rights of the owner result, making it just that the actor pay the owner the full value of the object . . . . The problem with the district court's instruction is that it assumes that any misuse or unauthorized use of property is a conversion.").

- *United States* v. *Wilson*, 636 F.2d 225, 226 (8th Cir. 1980) (utilizing secretarial time for personal reasons did not amount to conversion because it did not seriously interfere with the secretary's official duties).

- *United States* v. *Aytes*, No. 18 CR 132(SJ) (RLM), 2019 WL 5579485, at *1–2 (E.D.N.Y. Oct. 29, 2019) (granting judgment of acquittal where the defendant merely took copies of Resolution Plans, which were "confidential property of the government" and she had "signed a sworn statement that she would not leave the FDIC's employ with

those plans" but there was no showing that the defendant "deprived (much less 'seriously') the government of anything other than the thumb drives on which they were stored").

Respectfully submitted,

_/s/ Kamil Shields_

Kamil R. Shields (DCB No. 1674318)
Pardis Gheibi (CAB No. 331336)
Sullivan & Cromwell LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldsk@sullcrom.com
Email: gheibip@sullcrom.com

Katherine A. Savarese (NYB No. 5489182)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-3826
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of December, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document was served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel to receive electronically Notices of Electronic Filing.

*/s/ Kamil Sheilds*
Kamil R. Shields

3

**A0174**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 20-cr-00066-2 |
| v. | Honorable Randolph D. Moss |
| MURALI YAMAZULA VENKATA, | Trial: March 28, 2022 |
| Defendant. | |

**DEFENDANT'S SUPPLEMENTAL AUTHORITY CONCERNING
A JURY INSTRUCTION ON WILLFUL BLINDNESS**

Murali Yamazula Venkata, through undersigned counsel, respectfully submits the
following objection to the government's proposal that this Court instruct the jury on willful
blindness.  As a threshold matter, it is important to note there is no "willful blindness" or
"deliberate ignorance" instruction in the *Criminal Jury Instructions for the District of Columbia*
(the "Redbook").  Because willful blindness instructions are rarely, if ever, given, and the
evidence admitted thus far at trial unquestionably fails to establish any basis for a willful
blindness instruction in this matter, the Court should reject the government's proposal.

The Supreme Court has articulated the willful blindness doctrine as follows:  "Many
criminal statutes require proof that a defendant acted knowingly or willfully, and courts applying
the doctrine of willful blindness hold that defendants cannot escape the reach of these statutes by
deliberately shielding themselves from *clear evidence of critical facts* that are *strongly suggested
by the circumstances*."  *Glob.-Tech Appliances, Inc.* v. *SEB S.A.*, 563 U.S. 754, 766 (2011)
(emphasis added).  "The traditional rationale for this doctrine is that defendants who behave in
this manner are just as culpable as those who have actual knowledge."  *Id.*

1

**A0175**

As "many courts have stated[,] . . . the willful blindness instruction is proper only in *rare* circumstances." *United States* v. *Ruhe*, 191 F.3d 376, 385 (4th Cir. 1999) (emphasis added). This case does not present those circumstances. Indeed, as the D.C. Circuit has recently observed, federal courts of appeal "admonish that caution is necessary in giving a willful blindness instruction." *United States* v. *Alston-Graves*, 435 F.3d 331, 340–41 (D.C. Cir. 2006); *see also id.* (explaining that while some appellate courts "say that such an instruction is rarely appropriate, or only proper in rare circumstances or rare cases," "[o]thers are wary of giving a willful blindness instruction, or advise that the instruction be given only sparingly"); *United States* v. *Cunningham*, 83 F.3d 218, 221 (8th Cir. 1996) ("A deliberate ignorance instruction should not be given . . . [where] there is a possibility that the jury will use a negligence standard and convict a defendant on the impermissible ground that he should have known an illegal act was taking place.").[1]

The evidence presented falls far short of satisfying the high evidentiary standard required before a willful blindness instruction is warranted. A willful blindness instruction should not be given unless there is evidence that a defendant "purposely contrived to avoid learning all the facts in order to have a defense in the event of a subsequent prosecution." *Alston-Graves*, 435 F.3d at 341. The *Alston-Graves* court cited to the holdings of other circuits that prior to providing a willful blindness instruction is given, there must be evidence "that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Id.* & n.5; *see also United States* v. *Jewell*, 532 F.2d 697, 700 n.7 (9th Cir. 1976) (holding that willful blindness "requires in effect a finding that the defendant intended to cheat the

---

[1] Unless otherwise noted, all citations, quotation marks, and brackets are omitted from quotations.

administration of justice.  Any wider definition would make the doctrine of willful blindness indistinguishable from the civil doctrine of negligence in not obtaining knowledge.").

There is no evidence suggesting that Mr. Venkata deliberately and intentionally buried his head in the sand to avoid taking steps that were undoubtedly criminal.  Indeed, Mr. Venkata's alleged co-conspirator and direct supervisor, Ms. Patel, testified during her direct examination on April 5, 2022, that although she thought her conduct was "wrong," she did not consider whether it criminal and was not thinking about potential criminal consequences.  But only consciously avoiding facts strongly suggesting criminal conduct merits a willful blindness instruction.  *See Alston-Graves*, 435 F.3d at 341; *see also United States* v. *Connolly*, 24 F.4th 821, 834 (2d Cir. 2022) (explaining that "mail fraud prosecution is not warranted by the mere fact that the defendant's conduct was improper, objectionable, or even despicable" and "[t]here are no constructive offenses," as "before one can be punished, it must be shown that his case is plainly within the statute.").  Even suggesting, as the government has repeatedly during this trial, that Mr. Venkata "should have known" is not sufficient.  *United States* v. *L.E. Myers Co*., 562 F.3d 845, 854 (7th Cir. 2009) (reasoning that "[e]vidence that a defendant reasonably should have had strong suspicions about the operative illegality is not sufficient"; rather, the evidence must show that the defendant was "*affirmatively* avoiding the knowledge." (emphasis added)).

Because the evidence does not support any reasonable inference of Mr. Venkata's willful blindness, and such instructions are only rarely appropriate, Mr. Venkata respectfully requests that the Court reject the government's proposed willful blindness instruction.

3

A0177

April 5, 2022.

Respectfully submitted,

_____/s/_____

Kamil R. Shields
Pardis Gheibi (*pro hac vice*)
Tara N. Ohrtman (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C. 20006-5215
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldska@sullcrom.com
Email: gheibip@sullcrom.com
Email: ohrtmant@sullcrom.com

Katherine M. Savarese (*pro hac vice*)
Jared H. Rosenfeld (*pro hac vice*)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com
Email: rosenfeldj@sullcrom.com

Michelle Peterson
Chief Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
Telephone: (202) 208-7500
Email: Shelli_Peterson@fd.org

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 20-cr-00066 (RDM)** |
| **CHARLES KUMAR EDWARDS and** | ) | |
| **MURALI YAMAZULA VENKATA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

**UNITED STATES' PROPOSED INSTRUCTION ON WILLFUL BLINDNESS**

The United States proposes that the following instruction be added to the Court's draft instruction on the term "Knowingly," ECF No. 136-1, at 29:

> With respect to the allegation that Mr. Venkata stole or knowingly converted government property, you may find that Mr. Venkata acted knowingly if you find beyond a reasonable doubt that he:
>
> 1. was aware of a high probability that the DVDs he delivered to Charles Edwards on March 22, 2017, contained government property, and
>
> 2. deliberately avoided learning the truth.
>
> You may not find such knowledge, however, if you find that the defendant actually believed that the package did not contain government property, or if you find that the defendant was simply negligent, careless, or foolish.

Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit 5.8 (2010 Ed., last updated 12/2020)[1]; *see also Leary v. United States*, 395 U.S. 6, 46 n.93 (1969) (citing with approval the Model Penal Code definition of "knowledge," which provides, "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is

---

[1] The D.C. Red Book does not include a willful blindness instruction.

1

established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist"); *United States v. Mellen*, 393 F.3d 175, 181 (D.C. Cir. 2004) ("[G]uilty knowledge need not be proven only by evidence of what a defendant affirmatively knew. Rather, the government may show that, when faced with reason to suspect he is dealing in stolen property, the defendant consciously avoided learning that fact.").

Willful blindness instructions are "commonly given and commonly upheld." *United States v. Alston-Graves*, 435 F.3d 331, 338 (D.C. Cir. 2006). Such an instruction is proper "when a defendant claims to lack some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance." *United States v. Quinn*, 403 F. Supp. 2d 57, 68 n.11 (D.D.C. 2005) (quoting *United States v. Reyes*, 302 F.3d 48, 55 (2d Cir. 2002)). That standard is satisfied here. Mr. Venkata appears to be laying the foundation for an argument that he did not know that the DVDs he delivered to Charles Edwards on March 22, 2017, contained government property. *See* Daily Transcript, April 5, 2022 afternoon session, at 77:25–78:4 ("Q: Do you know if you just left the CDs on his chair or were they inside of something? A (Patel): No, they were inside a yellow envelope, because his office always used to be open, so I just didn't want CDs to be lying open."). The evidence is sufficient for a jury to conclude that if Mr. Venkata lacked actual knowledge about the contents of the DVDs, he was aware of a high probability that they contained government property and deliberately avoided opening the package so as to avoid confirming that fact.

The evidence shows that, by March 2017, Mr. Venkata was well aware that Mr. Edwards was receiving stolen government property on CDs or DVDs. By that time, he had configured the laptop with EDS and had set up two servers with EDS on Mr. Edwards's home system. On several occasions, Mr. Venkata and Mr. Edwards discussed loading data from CDs or DVDs onto Mr.

2

Edwards's personal computers, demonstrating Mr. Venkata's awareness that Mr. Edwards was receiving government property in that format. *See* GEX 19, at 2 (Edwards: "I copied the 3 folders to the c drive / And there's was something in dvd and I copied that as well and called it demo extras / All the 3 databases have been exported and imported into server"); *id.* at 4 (Venkata: "Hi Charles, if get chance tomorrow can you keep SQL server CD in server drive?  Please remember same version you installed.  I want try to install and make few reports run.  Thanks, Murali."). Moreover, in that time period, Mr. Edwards's and Mr. Venkata's only interactions related to the Next Gen EDS project; they did not otherwise communicate.  *See* Daily Transcript, March 30, 2022 morning, 93:25–94:1 (Edwards: "I only reached out to him when I wanted him to do something for me.").

On March 15, 2017, Mr. Edwards texted Mr. Venkata that he was setting up a server with the PARIS system and STARS database to show the Indian developers: "I have the really old code. I want to show the programmers how the Audit module should work / Yeah I installed oracle / Imported all the data from stars / Installed cold fusion."  GEX 19, at 9.  Over the next few days, Mr. Edwards and Mr. Venkata exchanged text messages about Mr. Venkata's efforts to configure PARIS on Mr. Edwards's server.  *Id.* at 10–11.  On March 19, 2017, Mr. Edwards texted Mr. Venkata that "the server crashed" and told him not to "worry about it for now."  *Id.* at 12.  Two days later, on March 21, 2017, Ms. Patel texted Mr. Venkata that she "ha[d] left a package on your chair with two DVDs" and continued, "Charles will contact you tomorrow.  Can you please give it to him?"  GEX 17, at 9.  Mr. Edwards picked up the DVDs the next day, March 22, 2017.  Just three days later, Mr. Edwards texted Mr. Venkata, "Hi Murali / I have the server up now."  GEX 19, at 12.  Mr. Venkata did not express any surprise that Mr. Edwards had been able to get the server up and running or inquire how he managed to do so.

3

A0181

Given this context, there is sufficient evidence from which a jury could conclude that Mr. Venkata was aware of a high probability that the DVDs he delivered to Mr. Edwards on March 22, 2017, contained government property relating to the work he had been doing on the PARIS server before it crashed.  And the jury could infer that if Mr. Venkata chose not to open the envelope containing the DVDs, it was to avoid confirming that high probability.  Because there is a sufficient evidentiary predicate, the Court should give the jury the willful blindness instruction proposed above.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
For the District of Columbia

By: /s/ Christine M. Macey
CHRISTINE M. MACEY
D.C. Bar No. 1010730
Assistant United States Attorney
Fraud, Public Corruption, and Civil Rights Section
555 4th Street, NW
Washington, D.C. 20530
(202) 252-7058
christine.macey@usdoj.gov

COREY R. AMUNDSON
CHIEF
Public Integrity Section

By: /s/ Victor R. Salgado
VICTOR R. SALGADO
D.C. Bar No. 975013
Senior Litigation Counsel
Public Integrity Section
Criminal Division
1301 New York Avenue, NW
Washington, D.C. 20530
(202) 353-4580
victor.salgado@usdoj.gov

By: /s/ Celia R. Choy
CELIA R. CHOY
D.C. Bar No. 1017211
Trial Attorney
Public Integrity Section
Criminal Division
1301 New York Avenue, NW
Washington, D.C. 20530
(202) 875-1557
celia.choy@usdoj.gov

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 20-cr-00066-RDM |
| v. | Honorable Randolph D. Moss |
| MURALI YAMAZULA VENKATA | Trial: March 28, 2022 |
| Defendant. | |

### MURALI YAMAZULA VENKATA'S NOTICE OF FILING

Per the Court's request, Mr. Venkata submits the following proposed theory of the defense:

Mr. Venkata's position is that he did not conspire to defraud the federal government and to steal or convert government property, that he did not steal or convert government property, that he did not commit wire fraud, that he did not commit aggregated identity theft, and that he did not obstruct justice by destroying records relevant to this investigation.

Mr. Venkata contends that he did not have the requisite state of mind for any of the charged offenses because he did not knowingly or intentionally share the criminal purpose of Mr. Edwards and Ms. Patel to steal or convert government property for private gain.  In addition, Mr. Venkata contends that he did not possess the requisite state of mind because he engaged in the charged conduct based on his reasonable belief that he was acting pursuant to the apparent authority of Sonal Patel, regardless of whether or not she had the actual authority to sanction that conduct.  Finally, Mr. Venkata contends that any possession, use, or transfer of information containing individuals' actual personal identifying information ("PII") by him was unintentional, inadvertent, and only incidental or accidental to the commission of the scheme to defraud the federal government and steal government information undertaken by Mr. Edwards and Ms. Patel.

Respectfully submitted,

_____/s/ Kamil Shields_____

Kamil R. Shields (DCB No. 1674318)
Pardis Gheibi (CAB No. 331336)
Sullivan & Cromwell LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldsk@sullcrom.com
Email: gheibip@sullcrom.com

Katherine A. Savarese (NYB No. 5489182)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-3826
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 1st day of December, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document was served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel to receive electronically Notices of Electronic Filing.

*/s/ Kamil Sheilds*
Kamil R. Shields

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 20-cr-00066-RDM |
| v. | Honorable Randolph D. Moss |
| MURALI YAMAZULA VENKATA | Trial: March 28, 2022 |
| Defendant. | |

## MURALI YAMAZULA VENKATA'S NOTICE OF FILING

Pursuant to the Court's request to submit a further revised version of the defense's theory of the case in the above-captioned matter, Mr. Venkata submits the following proposed instruction. The Court requested that the defense share this proposal with the government in an effort to reach agreement. The government has indicated that it intends to file another objection to the defense's proposed theory.

Mr. Venkata's position is that he did not conspire to defraud the federal government and to steal or convert government property, that he did not steal or convert government property, that he did not commit wire fraud, that he did not commit aggregated identity theft, and that he did not obstruct justice by destroying records relevant to this investigation.

Mr. Venkata contends that he did not have the requisite state of mind for Counts One, Two and Eleven because he did not share the criminal purpose of Mr. Edwards and Ms. Patel to defraud the federal government by stealing government information. Mr. Venkata also contends that he did not possess the requisite state of mind because he engaged in the conduct related to Counts One, Two, Eleven and Twelve based on his reasonable belief that he was acting pursuant to the apparent authority of Sonal Patel, regardless of whether or not she had the actual authority

to sanction that conduct.  In addition, with respect to Count Twelve, Mr. Venkata contends that

any possession, use, or transfer of information containing individuals' actual personal identifying

information ("PII") by him was unintentional, inadvertent, and only incidental or accidental to

the commission of the scheme to defraud the federal government or steal government

information undertaken by Mr. Edwards and Ms. Patel.  Finally, as to Count Sixteen,

Mr. Venkata did not intend to impede or obstruct a federal investigation, given that he provided

information about his calls with Mr. Edwards to relevant federal law enforcement officials.

I have just provided you with Mr. Venkata's theory of the case.  I want to again remind

you that I will be instructing you as to the applicable legal standards and those instructions, as a

whole, should control your deliberations.

Respectfully submitted,

/s/ Kamil Shields

Kamil R. Shields (DCB No. 1674318)
Pardis Gheibi (CAB No. 331336)
Tara N. Ohrtman (CAB No. 341711)
Sullivan & Cromwell LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7040
Facsimile: (202) 956-7676
Email: shieldsk@sullcrom.com
Email: gheibip@sullcrom.com
Email: ohrtmant@sullcrom.com

Katherine A. Savarese (NYB No. 5489182)
Jared H. Rosenfeld (NYB No. 5653506)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-3826
Facsimile: (212) 558-3588
Email: savaresek@sullcrom.com
Email: rosenfeldj@sullcrom.com

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Case No. 20-cr-00066-RDM** |
| ) | |
| **MURALI YAMAZULA VENKATA,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**UNITED STATES' OBJECTIONS TO DEFENDANT MURALI VENKATA'S THIRD
PROPOSED THEORY-OF-THE-DEFENSE INSTRUCTION**

Defendant Venkata's third proposed theory-of-the-defense instruction, *see* ECF No. 141,

misstates the law and gives the erroneous impression that the Court has adopted certain factual

contentions advanced by the defense.  The proposed instruction should not be given to the jury.

**I.    United States' Objections**

Defense proposal: "Mr. Venkata contends that he did not have the requisite state of mind
for Counts One, Two and Eleven because he did not share the criminal purpose of Mr.
Edwards and Ms. Patel to defraud the federal government by stealing government
information."

This sentence erroneously suggests that the *mens rea* element of the offenses charged in

Counts One, Two, and Eleven is "shar[ing] the criminal purpose of Mr. Edwards and Ms. Patel to

defraud the federal government by stealing government information."  That is incorrect.  Each of

those offenses has a different *mens rea* element, none of which is the standard stated in this

sentence.  This sentence will therefore mislead the jury as to the applicable law.

Defense proposal: "Mr. Venkata also contends that he did not possess the requisite state of
mind because he engaged in the conduct related to Counts One, Two, Eleven and Twelve
based on his reasonable belief that he was acting pursuant to the apparent authority of Sonal
Patel, regardless of whether or not she had the actual authority to sanction that conduct."

1

This sentence is also likely to confuse the jury and mislead it as to the applicable law.  First, this sentence is vague as to what conduct Mr. Venkata believed Ms. Patel had the authority to authorize.  The relevant conduct differs for each count, and whether anyone could reasonably believe that Ms. Patel had authority to authorize the conduct may also differ for each count.  For example, the jury may find that Mr. Venkata reasonably believed that Ms. Patel had authority to authorize the removal of the code from DHS-OIG computer systems (Count Two) but that he had no reasonable belief that she had authority to authorize the use of PII to further the wire fraud scheme or theft offense (Count Twelve).[1]  This instruction erroneously suggests that any reasonable belief in Ms. Patel's apparent authority would relieve Mr. Venkata of liability for all four counts, without any individualized determination regarding the reasonableness of his belief with respect to the conduct charged in each count and the effect of such belief on the *mens rea* element specific to that count.  It therefore has the same effect as instructing the jury that apparent authority is an affirmative defense to all four counts.  The Court has already rejected that proposition.  Second, the phrase "based on his reasonable belief that he was acting pursuant to the apparent authority of Sonal Patel" suggests that the Court has made a factual finding that he did, in fact, have such a belief.  Third, the word "sanction" is confusing because it could denote either "authorize" or "penalize."

> Defense proposal: "In addition, with respect to Count Twelve, Mr. Venkata contends that any possession, use, or transfer of information containing individuals' actual personal identifying information ("PII") by him was unintentional, inadvertent, and only incidental or accidental to the commission of the scheme to defraud the federal government or steal government information undertaken by Mr. Edwards and Ms. Patel.

---

[1] The United States maintains that there is no evidence in the record that anyone could have reasonably believed that Ms. Patel had authority to authorize any of the conduct charged in the Indictment, and that there is very substantial evidence to the contrary.

2

**A0189**

This sentence is likely to confuse the jury because it uses undefined colloquial terms rather than terms that have a fixed legal meaning.  The terms "unintentional" and "inadvertent" appear to be directed at negating the element that he "knowingly" transferred, possessed, or used the means of identification, and the terms "only incidental" or "accidental" appear to be directed at negating the element that the use of the means of identification was "during and in relation to" the predicate offenses.  The term "individuals' actual personal identifying information ('PII')" has been substituted for the statutory term "means of identification."  Introducing numerous undefined terms injects unnecessary vagueness and confusion.  The jury may not be able to identify how the contentions in this sentence map on to the elements of the charged offense.

> Defense proposal: "Finally, as to Count Sixteen, Mr. Venkata did not intend to impede or obstruct a federal investigation, given that he provided information about his calls with Mr. Edwards to relevant federal law enforcement officials."

This sentence erroneously suggests to the jury that the Court has made a factual finding that Mr. Venkata "did not intend to impede or obstruct a federal investigation" and that "he provided information about his calls with Mr. Edwards to relevant federal law enforcement officials."  Giving this instruction would usurp the jury's role as finder of fact, with obvious unfair prejudice to the government.

## II.     Conclusion

Defendant's proposed jury instructions were due on March 7, 2022, but he did not file them until April 1, 2022.  Defendant has now had three opportunities to propose a theory-of-the-defense instruction but has failed to propose one that does not contain significant legal errors and improper suggestions that the Court has adopted his factual contentions.  Because this instruction will be finalized after closing arguments, it is particularly important that it fairly and accurately describe the law and not unduly favor the defense's version of the facts over the government's.  The Court's

3

draft instructions already repeatedly inform the jury of the government's burden to prove each element of the charged offenses beyond a reasonable doubt, including the *mens rea* element. Those instructions adequately encompass his contention that the government has not met its burden of proof with respect to each of the charged offenses and his apparent authority defense. Furthermore, the defense had the opportunity to argue its apparent authority defense to the jury during closing arguments but chose not to do so. The Court should decline to give Defendant's proposed instruction.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
For the District of Columbia

By: */s/ Christine M. Macey*
    CHRISTINE M. MACEY
    D.C. Bar No. 1010730
    Assistant United States Attorney
    Fraud, Public Corruption, and Civil Rights Section
    555 4th Street, NW
    Washington, D.C. 20530
    (202) 252-7058
    christine.macey@usdoj.gov

COREY R. AMUNDSON
CHIEF
Public Integrity Section

By: */s/ Victor R. Salgado*
    VICTOR R. SALGADO
    D.C. Bar No. 975013
    Senior Litigation Counsel
    Public Integrity Section
    Criminal Division
    1301 New York Avenue, NW
    Washington, D.C. 20530
    (202) 353-4580
    victor.salgado@usdoj.gov

By: */s/ Celia R. Choy*
    CELIA R. CHOY
    D.C. Bar No. 1017211
    Trial Attorney
    Public Integrity Section
    Criminal Division
    1301 New York Avenue, NW
    Washington, D.C. 20530
    (202) 875-1557
    celia.choy@usdoj.gov

4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal No. 20-66 (RDM) |
| MURALI YAMAZULA VENKATA, | |
| *Defendant.* | |

### FINAL JURY INSTRUCTIONS

LET IT BE FILED

*Randolph D. Moss*

4/7/22

1

**PRELIMINARY REMARKS**

The time has now come when all of the evidence is in and you have heard the closing arguments of the lawyers.  We're about to enter your final duty in this case, which is to decide the issues of fact and to return a verdict.  It is up to me to instruct you on the law, and I ask you to listen carefully, just as you have throughout this trial.  Before we talk about the specific charges alleged here and some of the specific issues in the case, however, I want to take a few minutes to talk about some general rules of law.  Some of this may repeat what I told you in my preliminary instructions.

2

## FURNISHING THE JURY WITH A COPY OF THE INSTRUCTIONS

To start, I will provide you with a copy of my instructions.  During your deliberations,

you may, if you want, refer to these instructions.  While you may refer to any particular portion

of the instructions, you are to consider the instructions as a whole, and you may not follow some

and ignore others.  If you have any questions about the instructions, you should feel free to send

me a note.  Please return your instructions to me when your verdict is rendered.

## FUNCTION OF THE COURT

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you.  You should consider all the instructions I provide you as a whole.  You may not ignore or refuse to follow any of them.

4

## FUNCTION OF THE JURY

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. While it was my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnicity, nationality, gender, or any such trait. You must decide the case solely from a fair consideration of the evidence.

You shall not take anything that I may have said or done during trial as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility.

5

**A0196**

## JURY'S RECOLLECTION CONTROLS

If any reference by me or by the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations.

## NOTETAKING BY JURORS

During the trial, I have permitted all jurors who wanted to do so to take notes.  You may take your notebooks with you to the jury room and use them during your deliberations if you wish.  As I told you at the beginning of the trial, your notes are only to be an aid to your memory.  They are not evidence in the case, and they should not replace your own memory of the evidence.  Those jurors who have not taken notes should rely on their own memory of the evidence.  The notes are intended to be for the notetaker's own personal use.

7

## EVIDENCE IN THE CASE

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, and the facts stipulated to by the parties.

During the trial, you were told that the parties had stipulated—that is, agreed—to certain facts. You should consider any stipulation of fact to be undisputed evidence.

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in light of your experience. You should give any evidence such weight as in your judgment it is fairly entitled to receive.

8

## STATEMENTS OF COUNSEL

The statements and arguments of the lawyers are not evidence.  They are only intended to assist you in understanding the evidence.  Similarly, the questions of the lawyers are not evidence.

9

**A0200**

**INDICTMENT NOT EVIDENCE**

The indictment is merely the formal way of accusing a person of a crime.  You must not

consider the indictment as evidence of any kind—you may not consider it as any evidence of Mr.

Venkata's guilt or draw any inference of guilt from it.

10

**A0201**

## BURDEN OF PROOF—PRESUMPTION OF INNOCENCE

Every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven that he is guilty beyond a reasonable doubt.  This burden never shifts throughout the trial. The law does not require Mr. Venkata to prove his innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of an offense with which Mr. Venkata is charged, it is your duty to find him guilty of that offense.  On the other hand, if you find the government has failed to prove any element of an offense beyond a reasonable doubt, you must find Mr. Venkata not guilty of that offense.

11

A0202

## REASONABLE DOUBT

The government has the burden of proving Mr. Venkata guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

12

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which you may determine what the facts are in this case: direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

## NATURE OF CHARGE NOT TO BE CONSIDERED

One of the questions that you were asked when we were selecting this jury was whether the nature of the charges would affect your ability to reach a fair and impartial verdict.  We asked you that question because you must not allow the nature of a charge to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

14

## NUMBER OF WITNESSES

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

15

A0206

## INADMISSIBLE AND STRICKEN EVIDENCE

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper.  You must not hold such objections against the lawyer who made them or against the party she or he represents.  It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer, and they should play no part in your deliberations. Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

## CREDIBILITY OF WITNESSES

In determining whether the government has proved the charges against the Defendant beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified.

You are the sole judges of the credibility of the witnesses. You alone determine whether to believe any witness and the extent to which a witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory; whether the witness has any reason for not telling the truth; whether the witness had a meaningful opportunity to observe the matters about which he or she has testified; or whether the witness has any interest in the outcome of this case, stands to gain anything by testifying, or has friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and

17

accurate. You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, or motivated by self-interest, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

18

**A0209**

## ACCOMPLICE TESTIMONY

You have heard testimony from Charles Edwards.  The government is permitted to use a witness who testifies that he participated in the offenses charged against the Defendant, although the testimony of such a witness should be considered with caution.  You should give his testimony as much weight as in your judgment it deserves.

19

**A0210**

**COOPERATING WITNESSES**

You have heard evidence that Charles Edwards and Sonal Patel entered into plea agreements with the government pursuant to which they each agreed to testify truthfully in this case and the government agreed either to dismiss charges against him (in the case of Mr. Edwards), to decline prosecution of further charges against her (in the case of Ms. Patel), and to bring each of their cooperation to the attention of the judge at the time of sentencing.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such witnesses and convict the Defendant on the basis of this testimony alone, if it convinces you of the Defendant's guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness; the plea agreement does not protect him or her against a prosecution for perjury or false statement, should he or she lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from other types of witnesses. You may consider whether the plea agreement a witness entered into with the government has motivated him or her to testify falsely against the Defendant. The testimony of a witness who has entered into a plea agreement should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

20

## LAW ENFORCEMENT OFFICER'S TESTIMONY

Testimony from a law enforcement officer should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because she or he is or was a law enforcement officer.

21

## RIGHT OF DEFENDANT NOT TO TESTIFY

Every defendant in a criminal case has an absolute right not to testify.  Mr. Venkata has chosen to exercise this right.  You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision.  You must not assume the Defendant is guilty because he chose not to testify.

22

**A0213**

### CHARACTER OF DEFENDANT

Mr. Venkata has introduced testimony that, in the witness's opinion, Mr. Venkata is an honest person.  Such evidence may indicate to you that it is unlikely that an honest person would commit the crime charged or it may not.  You may consider this evidence along with other evidence in the case and give it as much weight as you think it deserves.

Notwithstanding the evidence of character, if, after weighing all the evidence, you are convinced beyond a reasonable doubt that Mr. Venkata is guilty of the crime charged, it is your duty to find him guilty.  On the other hand, evidence of good character alone may create a reasonable doubt as to a defendant's guilt, although without it the other evidence would be convincing.

## SPECIALIZED OPINION TESTIMONY

In this case, you heard the testimony of Chad Steel, Fred Reynolds, and Chris Lowder, who each expressed opinions concerning computer forensic examination.  If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness who possesses knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters.  You are not bound to accept these witnesses' opinions.  If you find that an opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion.  You should consider this evidence with all the other evidence in the case and give it as much weight as you think it fairly deserves.

24

**PRIOR INCONSISTENT STATEMENTS OF A WITNESS**

You have heard evidence that Charles Edwards made a statement (or statements) on an earlier occasion and that this statement (or statements) may be inconsistent with his testimony here at trial.  It is for you to decide whether the witness made such a statement (or statements) and whether in fact it was inconsistent with the witness's testimony here.  If you find such an inconsistency, you may consider the earlier statement(s) in judging the credibility of the witness, but you may not consider it as evidence that what was said in the earlier statement was true.

**MOTIVE**

Motive is not an element of the offenses charged, and the government is not required to prove motive in this case.  You may, however, consider evidence of motive or lack of evidence of motive in deciding whether or not the government has proved the charges beyond a reasonable doubt.

26

### RECORDING & TRANSCRIPT

Recordings of conversations identified by witnesses have been received in evidence.

Transcripts of these recorded conversations were displayed for your convenience and guidance

as you listened to the recordings.   Your personal understanding of the audio recordings, however,

must supersede the text in the transcripts.   That is, if you noticed any difference between a

transcript and a recording, you must rely only on the recording and not the transcript.   In

addition, if you cannot determine from a recording that particular words were spoken, you must

disregard the transcript as far as those words are concerned.

27

**MULTIPLE COUNTS — ONE DEFENDANT**

Each count of the indictment charges a separate offense.  You should consider each offense, and the evidence which applies to it, separately, and you should return separate verdicts as to each count.  The fact that you may find the Defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment.

At any time during your deliberations you may return your verdict of guilty or not guilty with respect to any count.

**KNOWINGLY**

The word "knowingly," as that term is used from time to time in these instructions,

means that the act was done voluntarily and intentionally and not because of ignorance, mistake,

or accident.

29

**A0220**

## PROOF OF STATE OF MIND

Someone's intent ordinarily cannot be proved directly because there is no way of knowing what a person is actually thinking, but you may infer someone's intent from the surrounding circumstances. You may consider any statement made or acts done by the Defendant and all other facts and circumstances received in evidence which indicate his intent.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the Defendant acted with the necessary state of mind.

30

**ALLEGED OFFENSES**

The indictment charges Mr. Venkata with violations of federal law.  Specifically, the indictment charges Mr. Venkata with Conspiracy, in violation of 18 U.S.C. § 371; Theft of Government Property, in violation of 18 U.S.C. § 641; Wire Fraud, in violation of 18 U.S.C. § 1343; Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and Destruction of Records, in violation of 18 U.S.C. § 1519.

You may have heard reference at the beginning of this trial to the fact that Mr. Venkata was charged with four counts of aggravated identity theft.  You may notice that I have only submitted one count of aggravated identity theft to you.  The number of counts is a matter for the Court, and you should not draw any conclusions from it, for or against either party.

31

## ELEMENTS OF EACH OFFENSE: OVERVIEW

I am about to instruct you on the elements of each of the offenses with which Mr.

Venkata is charged.

## COUNT ONE
## CONSPIRACY — ELEMENTS

Mr. Venkata is charged with conspiring (1) to commit an offense against the United States—that is, Theft of Government Property, in violation of 18 U.S.C. § 641—and (2) to defraud the United States. These are called the "objects" of the conspiracy. It is against the law to agree with someone to commit Theft of Government Property or to defraud the United States.

The charge of Conspiracy to commit Theft of Government Property is a separate charge from Theft of Government Property itself, with which Mr. Venkata is also charged.

I will address the elements of the crime of Theft of Government Property in a moment, and you should apply those instructions in determining whether Mr. Venkata conspired with someone to commit that crime.

To "defraud the United States" means to cheat the United States government or any of its agencies out of money or property. You should use this instruction in determining whether Mr. Venkata conspired with someone to defraud the United States.

The government is not required to prove that either or both of those objectives was achieved.

The elements of conspiracy, each of which the government must prove beyond a reasonable doubt, are that:

1. Between October 2014 and April 2017, an agreement existed between two or more people to commit at least one of the following "objects" of the conspiracy:

    (a)   to steal or knowingly convert property belonging to the United States with an aggregate value exceeding $1,000—to wit, copies of the Department of Homeland Security–Office of Inspector General's ("DHS-OIG") Enforcement Database System ("EDS") system, copies of DHS-OIG's EDS source code and database files, copies of the U.S. Postal Service–Office of Inspector General's ("USPS-OIG")

33

**A0224**

case management system, copies of the USPS-OIG's STARS
database and PARIS code, or the PII of approximately 246,167 DHS
employees and approximately 6,723 USPS employees, in violation
of 18 U.S.C. § 641; or

(b) to defraud the United States by devising or intending to devise a
scheme to defraud or for obtaining money or property from the U.S.
Department of Agriculture–Office of Inspector General ("USDA-
OIG") by means of materially false or fraudulent pretenses,
representations, or promises, or by concealing material facts.

This does not have to be a formal agreement or plan, in which everyone involved sat

down together and worked out the details. On the other hand, merely because people

get together and talk about common interests, or do similar things, does not

necessarily show that an agreement exists to commit Theft of Government Property

or to defraud the United States. You must unanimously agree which object of the

conspiracy the members agreed to commit. If you are unable unanimously to agree

on at least one object of the conspiracy, you cannot find the Defendant guilty of

conspiracy. So, the first thing that must be shown is the existence of an agreement to

commit at least one of the objects of the conspiracy.

2. Mr. Venkata intentionally joined in that agreement. It is not necessary to find that he

agreed to all of the details of the crime, or that he knew the identity of all of the other

people that the government has claimed were participating in the agreement. A

person may become a member of a conspiracy even if that person agrees to play only

a minor part, as long as that person understands the unlawful nature of the plan and

voluntarily and intentionally joins in it with the intent to advance or further the

unlawful object of the conspiracy. Even if Mr. Venkata was not part of the agreement

at the very start, he can become a member of the conspiracy later if the government

proves that he intentionally joined the agreement. Different people may become part

of the conspiracy at different times.

But, mere presence at the scene of the agreement or crime, or merely being with the

other participants does not show that Mr. Venkata knowingly joined in the agreement.

Also, unknowingly acting in a way that helps the participants, or merely knowing

about the agreement itself, without more, does not make the Defendant part of the

conspiracy. So, the second thing that must be shown is that Mr. Venkata was part of

the conspiracy.

3.   One of the people involved in the conspiracy did something for the purpose of

carrying out the conspiracy. This something is referred to as an "overt act." So, the

third thing that must be shown is that a member of the conspiracy committed at least

one overt act, and you must all agree on at least one overt act that was done.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a

conclusion that a conspiracy existed. The government must prove that such facts and

circumstances existed and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between two or more people existed and whether

Mr. Venkata was one of its members, you may consider the acts and the statements of any other

member of the conspiracy as evidence against Mr. Venkata whether done in or out of his

presence while the conspiracy existed. When persons enter into an agreement to commit a

crime, they become agents for each other so that everything which is said or done by one of them

in furtherance of that purpose is deemed to be the statement of all who have joined in that

conspiracy and is evidence against all of the conspirators. However, statements of any

conspirator which are made before its existence or after its termination may be considered as

35

evidence only against the person making such statements.

In summary, a conspiracy is a kind of partnership in crime.  For the Defendant to be convicted of the crime of conspiracy, the government must prove three things beyond a reasonable doubt: first that from in or around October 2014 through in or around April 2017, there was an agreement (1) to commit Theft of Government Property or (2) to defraud the United States; second, that Mr. Venkata intentionally joined in that agreement; and, third, that one of the people involved in the conspiracy did at least one "overt act" for the purpose of carrying out the conspiracy.

36

## COUNT TWO
## THEFT OF GOVERNMENT PROPERTY — ELEMENTS

Mr. Venkata is also charged with Theft of Government Property, in violation of 18 U.S.C. § 641. Specifically, the indictment alleges that Mr. Venkata stole or knowingly converted (1) copies of DHS-OIG's EDS system; (2) copies of DHS-OIG's EDS code and database files; (3) copies of USPS-OIG's case management system; (4) copies of USPS-OIG's STARS database and PARIS code; and (5) the Personal Identifiable Information (or "PII") of approximately 246,167 DHS employees and approximately 6,723 USPS employees.

The elements of the offense of Theft of Government Property, each of which the government must prove beyond a reasonable doubt, are that:

1. Mr. Venkata stole or knowingly converted property for his use or for the use of another;

2. The property belonged to the United States at the time it was stolen or converted;

3. When Mr. Venkata stole or converted the property, he intended to deprive, without right, the owner of the use or benefit of the property; and

4. The property stolen or converted had, in the aggregate, a value of more than $1,000.

To "steal" means to take away from one in lawful possession without right with the intention to keep wrongfully.

"Conversion" may include misuse or abuse of property. It may reach use in an unauthorized manner or to an unauthorized extent of property placed in one's custody for limited use. But "conversion" requires the unauthorized exercise of control over property in such a manner that serious interference with ownership rights occurs.

37

**A0228**

In considering the seriousness of any interference with the government's property right, you may consider the following factors, among any other factors you consider relevant: (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right in fact inconsistent with the government's right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the government's right of control; (e) the harm done to the property interest; and (f) the strength of the government's interest in maintaining confidentiality and the expense caused to the government.  No one factor is necessarily predominant in determining the seriousness of the interference.

The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater, of all property stolen or converted in the aggregate.  Do not speculate or guess at the value of the property.  Base your determination only on the evidence.

In order to find Mr. Venkata guilty of Theft of Government Property, you must unanimously agree on what property was stolen or knowingly converted.

You must also unanimously agree that the crime was completed on or after March 5, 2015.

## AIDING AND ABETTING, 18 U.S.C. § 2

You may find Mr. Venkata guilty of Theft of Government Property without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed. Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

To find that the Defendant aided and abetted in committing a crime, you must find that the Defendant knowingly associated himself with the commission of the crime; that he participated in the crime as something he wished to bring about; and that he intended by his actions to make it succeed.

Some affirmative conduct by the Defendant in planning or carrying out the crime is necessary. Mere physical presence by Mr. Venkata at the place and time the crime is committed is not by itself sufficient to establish his guilt. It is not necessary that you find that Mr. Venkata was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor need the government prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other.

I have already instructed you on the elements of Theft of Government Property. With respect to that charge, regardless of whether Mr. Venkata is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that Mr. Venkata personally

39

acted knowingly and with the intent to deprive the owner of the use or benefit of the property.

In order to find Mr. Venkata guilty of Theft of Government Property on this theory, you must unanimously agree on what property was stolen or knowingly converted.

You must also unanimously agree that the crime was completed on or after March 5, 2015.

40

**A0231**

## CO-CONSPIRATOR LIABILITY

If you do not find that Mr. Venkata personally committed the offense of Theft of Government Property, you must consider whether he is guilty of Theft of Government Property based on the acts of his alleged co-conspirators.

A conspiracy is a kind of partnership in crime and its members may be responsible for each others' actions. A defendant is responsible for an offense committed by another member of the conspiracy if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a natural consequence of, the conspiracy.

In order to find Mr. Venkata guilty of Theft of Government Property under this theory, you must find beyond a reasonable doubt that:

1. The conspiracy charged in Count One existed;

2. The offense of Theft of Government Property was committed by a co-conspirator of Mr. Venkata;

3. Mr. Venkata was a member of the conspiracy charged in Count One at the time the offense of Theft of Government Property was committed;

4. The offense of Theft of Government Property was committed during the existence of the conspiracy;

5. The offense of Theft of Government Property was committed in furtherance of the conspiracy; and

6. The offense of Theft of Government Property was a reasonably foreseeable consequence of the conspiracy. It is not necessary to find that the crime was intended

**A0232**

as part of the original plan, only that it was a foreseeable consequence of the original

plan.

In order to find Mr. Venkata guilty of Theft of Government Property on this theory, you

must unanimously agree on what property was stolen or knowingly converted.

You must also unanimously agree that the crime was completed on or after March 5,

2015.

42

**A0233**

## COUNT ELEVEN
## WIRE FRAUD — ELEMENTS

Mr. Venkata is also charged with Wire Fraud, in violation of 18 U.S.C. § 1343.  In order to find Mr. Venkata guilty of Wire Fraud, you must find beyond a reasonable doubt that:

1.  Mr. Venkata knowingly devised or intended to devise a scheme to defraud; that is, a scheme to defraud the USDA-OIG or to obtain property of the USDA-OIG by means of materially false or fraudulent pretenses, representations, or promises, or by concealing material facts;

2.  The scheme to defraud employed false material representations, pretenses, or promises;

3.  Mr. Venkata transmitted or caused to be transmitted by way of wire communications, in interstate commerce, any writing, sign, signal, picture, or sound for the purpose of executing such scheme; and

4.  Mr. Venkata acted with a specific intent to defraud.

A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property or bring about some financial gain to the person engaged in the scheme.

A "specific intent to defraud" means a conscious, knowing intent to deceive or cheat someone.

A representation, pretense, or promise is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity.  A representation, pretense, or promise would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A representation, pretense, or promise is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme. What must be proved beyond a reasonable doubt is that the Defendant knowingly devised or intended to devise a scheme to defraud by means of false or fraudulent pretenses, representations, or promises that was substantially the same as the one alleged in the indictment.

It is also not necessary that the government prove that the material transmitted by wire communications was itself false or fraudulent, or that the use of the interstate wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud. What must be proved beyond a reasonable doubt is that the use of the interstate wire communications facilities was closely related to the scheme because the Defendant either wired something or caused it to be wired in interstate commerce in an attempt to execute or carry out the scheme.

To "cause" interstate wire communications to be used is to do an act with knowledge that the use of the wire communications facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

The alleged scheme need not actually succeed in defrauding anyone.

## AIDING AND ABETTING, 18 U.S.C. § 2

You may find Mr. Venkata guilty of Wire Fraud either as an aider and abettor or as a principal offender.  I have already instructed you on what you must find in order to find that Mr. Venkata aided and abetted in committing Theft of Government Property, and you are to apply those same instructions here.

With respect to the charge of Wire Fraud, regardless of whether Mr. Venkata is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that Mr. Venkata personally acted knowingly and with a specific intent to defraud.

**COUNT THIRTEEN**
**AGGRAVATED IDENTITY THEFT — ELEMENTS**

Mr. Venkata is also charged with Aggravated Identity Theft, in violation of 18 U.S.C.

§ 1028A.  Specifically, Mr. Venkata is charged with committing Aggravated Identity Theft with

respect to a means of identification of Scott Balfour.  In order to find Mr. Venkata guilty of

Aggravated Identity Theft, you must find beyond a reasonable doubt that:

1.  Mr. Venkata knowingly transferred, possessed, or used a means of identification of
    another person;

2.  Mr. Venkata did so without lawful authority;

3.  Mr. Venkata transferred, possessed, or used the means of identification of another
    person during and in relation to the offenses of Theft of Government Property or Wire
    Fraud (referred to below as the "predicate felonies"); and

4.  Mr. Venkata knew that the means of identification in fact belonged to another real
    person, living or dead.

The term "means of identification" means any name or number that may be used, alone

or in conjunction with any other information, to identify a specific individual, including any

name, social security number, date of birth, official State or government issued driver's license

or identification number, alien registration number, government passport number, or employer or

taxpayer identification number.

"Without lawful authority" means that the Defendant transferred, possessed, or used

another's means of identification either without that person's permission, beyond the scope of

that person's legally obtained permission, or having obtained that person's permission illegally.

A person transfers, possesses, or uses a means of identification "in relation to" a predicate felony if it had some purpose or effect with respect to the offense; its presence or involvement cannot be the result of accident or coincidence. The means of identification must facilitate or have the potential to facilitate commission of the offense.

Your verdict must be unanimous as to the relevant predicate felony.

47

### AIDING AND ABETTING, 18 U.S.C. § 2

You may find Mr. Venkata guilty of Aggravated Identity Theft either as an aider and abettor or as a principal offender.  I have already instructed you on what you must find in order to find that Mr. Venkata aided and abetted in committing Theft of Government Property, and you are to apply those same instructions here.

With respect to the charge of Aggravated Identity Theft, regardless of whether Mr. Venkata is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that Mr. Venkata personally acted knowingly and with knowledge that the means of identification in fact belonged to another real person, living or dead.

In order to find Mr. Venkata guilty of Aggravated Identity Theft on this theory, your verdict must be unanimous as to the relevant predicate felony.

48

**A0239**

## COUNT SIXTEEN
## DESTRUCTION OF RECORDS — ELEMENTS

Finally, Mr. Venkata is charged with Destruction of Records, in violation of 18 U.S.C.

§ 1519.  In order to find Mr. Venkata guilty of Destruction of Records, you must find beyond a

reasonable doubt that:

1. Mr. Venkata knowingly altered or destroyed a record, document, or tangible object;

2. Mr. Venkata acted with the intent to impede or obstruct the investigation of a matter;
   and

3. The matter was within the jurisdiction of the Department of Homeland Security–
   Office of Inspector General, also known as "DHS-OIG," which is an agency of the
   United States.

There is no requirement that the matter or investigation have been pending or imminent

at the time of the obstruction, but only that the acts were taken in relation to or in contemplation

of any such matter or investigation.

The government is not required to prove that the Defendant specifically knew the matter

or investigation was within the jurisdiction of a department or agency of the United States.  In

other words, you need not find the Defendant knew he was obstructing a matter that was federal

in nature.

## DEFENDANT'S THEORY OF CASE

Mr. Venkata's position is that he did not conspire to defraud the federal government or to steal or knowingly convert government property; that he did not steal or knowingly convert government property; that he did not commit wire fraud; that he did not commit aggravated identity theft; and that he did not obstruct justice by destroying records relevant to a federal investigation.

Mr. Venkata contends the he did not have the required state of mind for Counts One, Two, and Eleven.

With respect to Count Thirteen, Mr. Venkata contends that he did not knowingly possess, use, or transfer information containing individuals' personal identifying information and that any such possession, use, or transfer was not "in relation to" the offenses of Theft of Government Property or Wire Fraud.

Finally, with respect to Count Sixteen, Mr. Venkata contends that he did not intend to impede or obstruct a federal investigation.

I have just provided you with Mr. Venkata's theory of the case. In considering Mr. Venkata's arguments, I remind you that you should follow my detailed instructions regarding the applicable legal standards, which should control your deliberations.

**A0241**

**UNANIMITY**

A verdict must represent the considered judgment of each juror, and in order to return a

verdict, each juror must agree on the verdict.  In other words, your verdicts must be unanimous.

51

**A0242**

## VERDICT FORM EXPLANATION

You will be provided with a Verdict Form for use when you have concluded your deliberations.  The Form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be.  Nothing in the Form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The Form is meant only to assist you in recording your verdict.

52

**A0243**

## EXHIBITS DURING DELIBERATIONS

During the course of this trial, a number of exhibits were admitted in evidence. I will be sending those exhibits into the jury room with you. You may examine any or all of them as you consider your verdicts. Sometimes only those parts of an exhibit that are relevant to your deliberations were admitted. Where this has occurred, I have required the irrelevant parts of the statement to be blacked out or deleted. Thus, as you examine the exhibits, and you see or hear a statement where there appear to be omissions, you should consider only the portions that were admitted. You should not guess as to what has been taken out or redacted.

Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

If you wish to listen to the audio recording that I have admitted into evidence, you will have access to a computer that can play the recording.

## SELECTION OF FOREPERSON

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court.  There are no specific rules regarding how you should select a foreperson.  That is up to you.  However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence.  Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

54

**POSSIBLE PUNISHMENT NOT RELEVANT**

The question of possible punishment of the Defendant in the event of a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing a sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

## PUBLICITY, COMMUNICATION, AND RESEARCH

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning the case. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else. Just let me or the Deputy Clerk know as soon after it happens as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also need to remind you of an instruction I gave you at the beginning of and during the trial. During deliberations, you may not communicate with anyone not on the jury about this case. This includes any electronic communication such as email or text or any blogging about the case. In addition, you may not conduct any independent investigation of any kind during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

**COMMUNICATIONS BETWEEN COURT AND JURY DURING DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with me, you may send a note by the Deputy Clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person—not the Deputy Clerk, the marshal, or me—how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1, or in any other fashion—whether the vote is for conviction or acquittal or on any other issue in the case.

**A0248**

**ATTITUDE AND CONDUCT OF JURORS IN DELIBERATIONS**

The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance.  It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case.  Furthermore, many juries find it useful to avoid an initial vote upon retiring to the jury room.  Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed.  Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

58

## EXCUSING ALTERNATE JURORS

The last thing I must do before you begin your deliberations is to excuse the alternate jurors. As I told you before, the selection of alternates was an entirely random process; it's nothing personal. We selected two seats to be the alternate seats before any of you entered the courtroom. Since the rest of you have remained healthy and attentive, I can now excuse those jurors in seats **eleven** and **thirteen**.

As you two leave, I am going to ask you to hand your notebooks and badges to the Deputy Clerk. I must also note that it is possible, though unlikely, that we will need to summon you back to rejoin the jury in case something happens to a regular juror. Since that possibility exists, I am also going to instruct you not to discuss the case with anyone until we call you. My earlier instruction on use of the Internet still applies; do not research this case or communicate about it on the Internet. In all likelihood, we will be calling you to tell you there has been a verdict and you are now free to discuss the case; there is, however, the small chance that we will need to bring you back on to the jury. Thank you very much for your service.

59

**A0250**

**CLOSING REMARKS**

I'm now going to excuse you to meet briefly with the Deputy Clerk, and then to begin your deliberations.  You may take your notebooks with you if you wish.  You will receive the instructions I have given you, the verdict form, and all the exhibits.  Thank you again for your attention and service.  As soon as you receive your copy of the instructions from the Deputy Clerk, you may begin deliberating.

60