**ORAL ARGUMENT NOT YET SCHEDULED**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 24-3021**

---

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**MURALI YAMUZALA VENKATA,**
*Defendant-Appellant.*

---

**APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**REPLY BRIEF FOR APPELLANT**

---

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

MATTHEW L. FARLEY
Asst. Federal Public Defender
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208-7500
Matthew_Farley@fd.org

District Court
Cr. No. 1:20-CR-00066-RDM-2

## TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................ii

TABLE OF AUTHORITIES.......................................................................iv

INTRODUCTION.......................................................................................1

ARGUMENT ..............................................................................................2

I.  MR. VENKATA WAS ENTITLED TO HIS THEORY-OF-
    DEFENSE INSTRUCTION........................................................2

    A.  The Bar to Receive a Jury Instruction is Low........................2

    B.  General Mental State Instructions Did Not Convey
        Mr. Venkata's Theory-of-Defense ...........................................4

    C.  The Government Must Prove Harmlessness..........................8

II. THE DISTRICT COURT DID NOT INSTRUCT ON
    ALL THE ELEMENTS OF AIDING AND ABETTING..............11

    A.  Plain Error Review Does Not Apply ....................................12

    B.  The Instruction was Plainly Erroneous...............................14

        1.  The district court erred by omitting an element. .........14

        2.  The error was obvious ..................................................18

        3.  The district court's error affected Mr. Venkata's
            substantial rights .........................................................21

III. THE CUMULATIVE ERRORS REQUIRE REVERSAL
     OF ALL COUNTS......................................................................24

IV. THE GOVERNMENT DID NOT PROVE WIRE FRAUD .........26

    A.  Mr. Venkata's Sufficiency Arguments Are Reviewed
        *De Novo*................................................................................26

    B.  The Interstate Wire Had No Connection to the Scheme......27

C. Everything Edwards Told Paradis Was True ........................ 30

D. The Omission Was Not Material ........................................... 33

CONCLUSION ................................................................................... 36

CERTIFICATE OF COMPLIANCE .......................................................... 37

# TABLE OF AUTHORITIES

**CASES**

*Belton v. U.S.*,
  382 F.2d 150 (D.C. Cir. 1967) .......................................................... 2, 4

*In re Grand Jury Investigation*,
  315 F. Supp. 3d 602 (D.D.C. 2018) ...................................................... 18

*Gray v. U.S.*,
  260 F.2d 483 (D.C. Cir. 1958) ............................................................ 18

*Kotteakos v. U.S.*,
  328 U.S. 750 (1946) ...................................................................... 8

*Kousisis v. U.S.*,
  605 U.S. 114 (2025) ..................................................................... 33

*Laughlin v. U.S.*,
  474 F.2d 444 (D.C. Cir. 1972) ............................................................. 7

*Laughlin v. U.S.*,
  385 F.2d 287 (D.C. Cir. 1967) ............................................................. 7

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024) ..................................................................... 31

*Meredith v. U.S.*,
  238 F.2d 535 (4th Cir. 1956) ............................................................ 18

*Molina-Martinez v. U.S.*,
  578 U.S. 189 (2016) ..................................................................... 14

*Neder v. U.S.*,
  527 U.S. 1 (1999) ....................................................................... 13

*In re Nofziger*,
  956 F.2d 287 (D.C. Cir. 1992) ........................................................... 19

*Schmuck v. U.S.*,
  489 U.S. 705 (1989)........................................................................28

*In re Sealed Case*,
  573 F.3d 844 (D.C. Cir. 2009) ..................................................... 18, 20

*U.S. v. Alston*,
  609 F.2d 531 (D.C. Cir. 1979) .......................................................28

*U.S. v. Autuori*,
  212 F.3d 105 (2d Cir. 2000) ..........................................................32

*U.S. v. Barfield*,
  447 F.2d 85 (5th Cir. 1971)...........................................................19

*U.S. v. Breedlove*,
  204 F.3d 267 (D.C. Cir. 2000) .......................................................12

*U.S. v. Brown*,
  508 F.3d 1066 (D.C. Cir. 2007) .....................................................25

*U.S. v. Burnett*,
  827 F.3d 1108 (D.C. Cir. 2016) .......................................................8

*U.S. v. Cades*,
  495 F.2d 1166 (3d Cir. 1974) ........................................................19

*U.S. v. Clark*,
  156 F.4th 664 (D.C. Cir. 2025)......................................................13

*U.S. v. Cunningham*,
  145 F.3d 1385 (D.C. Cir. 1998) .......................................................9

*U.S. v. DeFries*,
  129 F.3d 1293 (D.C. Cir. 1997) ....................................................3-4

*U.S. v. Descent*,
  292 F.3d 703 (11th Cir. 2002).......................................................10

*U.S. v. Gaudin,*
515 U.S. 506 (1995) .............................................................. 15

*U.S. v. Gooding,*
No. 23-3177, 2024 WL 2132055 (D.C. Cir. May 9, 2024) ................... 19

*U.S. v. Hammoude,*
51 F.3d 288 (D.C. Cir. 1995) .............................................. 27

*U.S. v. Han,*
962 F.3d 568 (D.C. Cir. 2020) ........................................ 8, 10

*U.S. v. Hartsel,*
199 F.3d 812 (6th Cir. 1999) ........................................ 28-29

*U.S. v. Izydore,*
167 F.3d 213 (5th Cir. 1999) ............................................ 29

*U.S v. Jesenik,*
152 F.4th 924 (9th Cir. 2025) ........................................... 32

*U.S. v. Johnson,*
519 F.3d 478 (D.C. Cir. 2008) .......................................... 29

*U.S v. Jones,*
482 F.2d 747 (D.C. Cir. 1973) .......................................... 25

*U.S. v. Kepler,*
74 F.4th 1292 (10th Cir. 2023) ......................................... 19

*U.S. v. Laureys,*
653 F.3d 27 (D.C. Cir. 2011) ........................................... 18

*U.S. v. Linares,*
367 F.3d 941 (D.C. Cir. 2004) ........................................... 8

*U.S. v. Lopez,*
4 F.4th 706 (9th Cir. 2021) ............................................ 15

*U.S. v. Natale,*
719 F.3d 719 (7th Cir. 2013).................................................................15

*U.S. v. Olano,*
507 U.S. 725 (1993)......................................................................21-22

*U.S. v. Parker,*
133 F.3d 322 (5th Cir. 1998).................................................................30

*U.S. v. Phillips,*
704 F.3d 754 (9th Cir. 2012).................................................................28

*U.S. v. Powell,*
652 F.3d 702 (7th Cir. 2011) ................................................................25

*U.S. v. Raper,*
676 F.2d 841 (D.C. Cir. 1982) ........................................................ 11, 19

*U.S. v. Reid,*
533 F.2d 1255 (D.C. Cir. 1976) ............................................................27

*U.S. v. Rodgers,*
419 F.2d 1315 (10th Cir. 1969).............................................................19

*U.S. v. Scott,*
150 F.4th 580 (D.C. Cir. 2025).............................................................29

*U.S. v. Shields,*
844 F.3d 819 (9th Cir. 2016) ...............................................................32

*U.S. v. Spinner,*
152 F.3d 950 (D.C. Cir. 1998) ......................................................29-30, 35

*U.S. v. Spriggs,*
102 F.3d 1245 (D.C. Cir. 1996) ............................................................12

*U.S. v. Staten,*
581 F.2d 87 (D.C. Cir. 1978).................................................................19

*U.S. v. Sun-Diamond Growers of Cal.,*
138 F.3d 961 (D.C. Cir. 1998) ............................................................... 33

*U.S. v. Tavares,*
844 F.3d 46 (1st Cir. 2016) ................................................................... 29

*U.S. v. Wilson,*
605 F.3d 985 (D.C. Cir. 2010) ........................................................ 14-15

*U.S. v. Young,*
470 U.S. 1 (1985)................................................................................... 22

*Washington v. Recuenco,*
548 U.S. 212 (2006)............................................................................... 25


## RULES AND GUIDELINES

Fed. R. Crim. P. 30(b)............................................................................. 10

Criminal Jury Instructions for the District of Columbia ............ 17-18, 20


## MODEL JURY INSTRUCTIONS

First Circuit Court of Appeals, *Pattern Criminal Jury Instructions
for the District Courts of the First Circuit* ........................................... 20

Third Circuit Court of Appeals, Model Criminal Jury Table of
Contents and Instructions (Jan. 2025)............................................... 20

Fifth Circuit Court of Appeals, *Pattern Jury Instructions
(Criminal Cases)* (2024).................................................................... 20

Sixth Circuit Court of Appeals, *Pattern Criminal Jury Instructions*
(May 1, 2025) ................................................................................ 20-21

Seventh Circuit Court of Appeals, *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* (2023) .................21

Eighth Circuit Court of Appeals, *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* (2025).......21

Ninth Circuit Court of Appeals, *Manual of Model Jury Instructions for the District Courts of the Ninth Circuit* (March 2026).......................21

Tenth Circuit Court of Appeals, *Criminal Pattern Jury Instructions* ................................................21

## **INTRODUCTION**

After a nine-day trial, Mr. Murali Yamuzala Venkata was convicted for conspiracy, theft of government property, wire fraud, aggravated identity theft, and destruction of records. But Mr. Venkata's trial was fundamentally flawed. After assuring Mr. Venkata that the jury would receive his requested theory-of-defense instruction and after closing arguments, the district court recanted and denied him the instruction. Moreover, the district court did not instruct the jury on all the essential elements which it must find to convict Mr. Venkata as an aider and abettor. The government seeks to label these errors harmless, but a jury this poorly instructed cannot be harmless. Considered together, these errors rendered Mr. Venkata's trial fundamentally unfair and require this Court to vacate all of his convictions and remand for a new trial.

At a minimum, the government utterly failed to prove that anyone—let alone Mr. Venkata—ever committed wire fraud. The government did not prove that the charged interstate wire had any connection to the alleged scheme. The government did not prove that Edwards had any obligation to disclose his entire business plan to

Paradis.  And the government did not prove that the alleged omission was material to any planned transaction.  These are all necessary elements of wire fraud.  This Court should, therefore, order a judgement of acquittal for Mr. Venkata's wire fraud count.

<u>**ARGUMENT**</u>

## I.     MR. VENKATA WAS ENTITLED TO HIS THEORY-OF-DEFENSE INSTRUCTION

Defendants who proffer *any* evidence of their theory of the case are entitled to an instruction presenting that theory to the jury.  Here, Mr. Venkata pointed to ample evidence that he was merely acting at the direction of his supervisor and, therefore, did not have the necessary *mens rea* to commit conspiracy, theft, or wire fraud.  The district court, however, denied Mr. Venkata his theory-of-defense instruction.

### A.     The Bar to Receive a Jury Instruction is Low

The government does not dispute that a court must provide a requested instruction if there is "*any* evidence fairly tending to bear upon the issue … however weak." *Belton v. U.S.*, 382 F.2d 150, 155 (D.C. Cir. 1967) (emphasis added).  Defendants are entitled to instructions even if

the proffered evidence "is weak, insufficient, inconsistent, or of doubtful credibility." *U.S. v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997).

Despite this well-settled standard, the government argues that the district court did not err because there is evidence contradicting Mr. Venkata's theory. This changes nothing.

The government is wrong to assert that there was no evidence warranting the instruction. The government, instead, is disagreeing with what the evidence means. For example, in asserting that there is no evidence that Patel could authorize Mr. Venkata's actions, GB29-30, the government asks this Court to disregard the evidence concerning Patel's control over every aspect of his work life. A2109-11.[1] The government asserts that the tasks Patel assigned Mr. Venkata could not be considered "routine," but Mr. Venkata has provided evidence that Patel routinely asked other employees for information which she then passed on to Edwards. A1699-1703 (Judy Kuo); A1564-66 (Andrew Liao).

---

[1] Cites to GB## are to the government's response brief. Cites to OB## are to Mr. Venkata's opening brief. Cites to A#### are to Mr. Venkata's appendix. Cites to Supp.App.### are to the government's supplemental appendix.

3

The government faults Mr. Venkata for ignoring evidence indicating that he was aware of the scheme, GB31, but ignores that both Patel and Edwards testified that they never told Mr. Venkata about the plan to sell software to Agriculture-OIG.  A1155 (Edwards); A2194 (Patel).  When there is evidence cutting in both directions, the tie goes to the proponent of the jury instruction.  *See DeFries*, 19 F.3d at 1308.  Here, that is Mr. Venkata.

At bottom, the government would impose a "preponderance of the evidence standard in order to be entitled to [a requested jury] instruction."  *Id.*  But Mr. Venkata must show only that *some* evidence supports his theory of the case.  *See Belton*, 382 F.2d at 155.  Mr. Venkata has met his burden.

### B.    The *Mens Rea* State Instructions Did Not Convey Mr. Venkata's Theory

The government claims that the *mens rea* instructions given for each count incorporated the substance of Mr. Venkata's theory-of-defense instruction.  GB32.  That is not the case.

***Theft.***  An instruction that the "government must prove beyond a reasonable doubt that Mr. Venkata personally acted knowingly and with

4

the intent to deprive the owner of the use or benefit of the property," does not inform the jury that it should acquit if it believes that Mr. Venkata acted only at Patel's direction. *Contra* GB33.

The government's argument ignores that a reasonable jury could believe that it was required to convict even if Mr. Venkata was merely acting at the behest of Patel so long as Mr. Venkata knew that property was leaving DHS-OIG headquarters. Without Mr. Venkata's proposed instruction, the jury did not know that it should acquit if it found that Mr. Venkata was acting only to mollify his supervisor.

***Wire fraud.*** The government argues that the wire fraud instructions accounted for Mr. Venkata's theory of the case because this Court has held that "where the instructions required the jury to find specific intent to defraud, the failure to give a separate good-faith instruction is not reversible error." GB34. But Mr. Venkata never requested a "good-faith" instruction. Rather, Mr. Venkata asked the district court to instruct that he was reasonably acting under the apparent authority of Patel, and therefore, lacked any fraudulent intent. His theory had nothing to do with "good faith" bargaining at issue in the

5

government's cited authority. Cases about "good faith" instructions, therefore, have no application here.

*Conspiracy.* The government argues that Mr. Venkata's requested instruction was unnecessary because the conspiracy instructions required finding that Mr. Venkata "'voluntarily and intentionally' joined the conspiracy 'with the intent to advance or further the unlawful object of the conspiracy,'" and that "'unknowingly acting in a way that helps the participants,' would not suffice," GB34-35 (quoting A2457). But Mr. Venkata's theory falls somewhere in between these two instructions.

Mr. Venkata's proposed instruction would inform the jury that it should acquit him of conspiracy because following Patel's instructions did not necessarily mean that Mr. Venkata had agreed to enter a criminal conspiracy. The jury was never instructed on Mr. Venkata's theory that his intent to complete the tasks assigned by his supervisor meant that he never had any intent to further any criminal conspiracy between Edwards and Patel.

6

The government's last-ditch reliance on the district court's instruction that "Mr. Venkata contends that he did not have the required state of mind for counts one, two and 11," fares no better. This argument ignores that a theory-of-defense instruction is required because Mr. Venkata presented a "more involved theory involving 'law' or fact, or both, that is not so obvious to any jury." *Laughlin v. U.S.*, 474 F.2d 444, 455 (D.C. Cir. 1972). The district court cannot refuse to instruct the jury on the defendant's theory at all.

The government maintains that the district court had no obligation to "'give special emphasis' to the sparse facts Venkata contended supported his 'apparent authority' theory." GB35 (quoting *Laughlin v. U.S.*, 385 F.2d 287, 294 (D.C. Cir. 1967)). But *Laughlin* concerned a defendant requesting an instruction *after* the jury had already been charged which essentially restated the defendant's testimony. *Laughlin* has no application here where Mr. Venkata did not testify, and his requested instruction did not emphasize any particular facts.

In passing, the government asserts that Mr. Venkata's proposed instruction could not be given to the jury because it "incorporated an

7

undefined legal term, 'apparent authority,' that was likely to confuse the jury." GB36. But the government forgets that the last-discussed instruction did not include the term "apparent authority." OB33. Regardless, the government has no response to Mr. Venkata's argument that there is no reason that the jury would ever know that "apparent authority" was a legal term.

## C.    The Government Must Prove Harmlessness

It is the government's burden to prove that the district court's reversal on the theory-of-defense instruction was harmless. *U.S. v. Burnett*, 827 F.3d 1108, 1119 (D.C. Cir. 2016). Specifically, the government must prove that this error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *U.S. v. Linares*, 367 F.3d 941, 952 (D.C. Cir. 2004) (quoting *Kotteakos v. U.S.*, 328 U.S. 750, 776 (1946)).

The government notes that harmlessness is evaluated by looking at "the language of the instructions, the arguments of counsel, and the evidence itself." GB36 (quoting *U.S. v. Han*, 962 F.3d 568, 574 (D.C. Cir. 2020)). The government, however, proceeds only on a theory that the

evidence makes the district court's error harmless. But "where the evidence is even slightly ambiguous or conflicting, or where the error at issue may otherwise have tipped the scales towards a guilty verdict, the Government is unable to make such a showing, and the verdict must be reversed." *U.S. v. Cunningham*, 145 F.3d 1385, 1396 (D.C. Cir. 1998).

The government's argument in favor of harmless error is merely another recitation of the DHS-OIG rules and user agreements which omit a glaring piece of conflicting evidence—**both Patel and Edwards testified that they never told Mr. Venkata about any criminal scheme.** A1155 (Edwards); A2194 (Patel). Both Patel and Edwards were testifying pursuant to plea agreements. Both had already pleaded guilty. Neither had an incentive to lie. This evidence precludes the government from meeting its burden to prove that the district court's error was harmless beyond a reasonable doubt.

The government likewise ignores that the district court denied Mr. Venkata his theory-of-defense instruction *after* his counsel had presented her closing argument under the belief that the agreed-upon theory-of-defense instruction would be given. This alone was prejudicial.

9

District courts generally must finalize jury instructions prior to the presentation of closing arguments. *See* Fed. R. Crim. P. 30(b). Courts have recognized the prejudice of changing an instruction after closing arguments when the "change in the instructions is substantial, when the instructions repudiate counsel's arguments, or when the instructions impair the effectiveness of those arguments." *U.S. v. Descent*, 292 F.3d 703, 707 (11th Cir. 2002). Here, the failure to give Mr. Venkata's requested instruction was prejudicial both because it was a "substantial" change from the pre-closing instructions and because the change "impair[ed] the effectiveness of [his counsel's] arguments." *Id.*

The government also asserts harmlessness because Mr. Venkata's theory was "incredible." GB37 (citing *Han*, 962 F.3d at 574). *Han*, however, concerned a defendant who sought a theory-of-defense instruction that 22 million fraudulently obtained dollars were actually personal loans. *See id.* Mr. Venkata's theory that he acted only at the direction of Patel was not incredible like the preposterous theory in *Han*.

Finally, the prejudicial effect of this instruction cannot be separated from other deficiencies in the jury instructions like the district court's

10

failure to instruct on all essential elements.  *See infra* Pts. II, III.  For these reasons, the government has failed to meet its burden to show that the district court's error was harmless, and Mr. Venkata's convictions must be reversed.

## II.    THE DISTRICT COURT DID NOT INSTRUCT ON ALL THE ELEMENTS OF AIDING AND ABETTING

There are four essential elements to aiding and abetting an underlying criminal offense:  (1) intent to facilitate a crime; (2) guilty knowledge; (3) actually assisting or participating; and (4) that the offense was committed in its entirety by someone other than the defendant.  *See U.S. v. Raper*, 676 F.2d 841, 849 (D.C. Cir. 1982).  A jury must find all four of these elements beyond a reasonable doubt to convict a defendant for aiding and abetting an underlying offense.  Here, the district court never required the jury to find beyond a reasonable doubt (or even at all) that either Edwards or Patel committed each element of the underlying offenses before convicting Mr. Venkata as an aider and abettor to their scheme.  This is reversible error.

11

### A.    Plain Error Review Does Not Apply

The government asserts that Mr. Venkata's aiding and abetting argument should be reviewed for plain error. GB40-42. Not so. Mr. Venkata submitted jury instructions to the court which included all the necessary elements of aiding and abetting. A0135-36. When the government proposed deleting the portion of those instructions that included the element at issue here, Mr. Venkata suggested deleting the government's proposed elements and continued to request his proposed instruction including all of the essential elements. A0165. Ultimately, Mr. Venkata objected to the inclusion of the aiding and abetting instruction at the charge conference. A2241-46. His claim that the jury was not properly instructed, therefore, should be reviewed *de novo*.

Mr. Venkata's objection was not too general to preserve his claims. *Contra* GB41-42 (citing *U.S. v. Spriggs*, 102 F.3d 1245, 1259 (D.C. Cir. 1996); *U.S. v. Breedlove*, 204 F.3d 267, 270 (D.C. Cir. 2000)). *Breedlove* reviewed for plain error because the argument on appeal "barely resemble[d]" the objection below. 204 F.3d at 270. That is not the case here, where Mr. Venkata proposed jury instructions including the proper

12

elements all along. *U.S. v. Clark*, 156 F.4th 664, 675-76 (D.C. Cir. 2025), similarly does not apply because the defendant in *Clark* twice informed the district court that he did *not object* to the given jury instruction. *Contra* GB41. That is completely at odds with what happened here, where Mr. Venkata twice objected to the given aiding and abetting instruction and never withdrew this objection. Mr. Venkata's argument, therefore, should be reviewed *de novo*.

Mr. Venkata succeeds under *de novo* review because the district court failed to instruct on all the elements of the offense. *See Neder v. U.S.*, 527 U.S. 1, 15 (1999) (constitutional error to omit a jury instruction); *see also infra* Pt. II.B.1 (discussing error under the plain error standard). This error may be subject to harmless error review, *Neder*, 527 U.S. at 8, but for the reasons discussed below, the government cannot meet its burden of proving that this error was harmless beyond a reasonable doubt, *see id.* at 15; *see also infra* Pt. II.B.3 (discussing prejudice under plain error review). Mr. Venkata's convictions, therefore, must be vacated.

13

## B.    The Instruction was Plainly Erroneous

Even under plain error review, Mr. Venkata's convictions must be reversed.  To succeed on plain error review, Mr. Venkata must show that there was "an error"; that the error was "clear or obvious"; and that the error "affected [his] substantial rights."  *Molina-Martinez v. U.S.*, 578 U.S. 189, 194 (2016).  Mr. Venkata has done so here.

### 1.    The district court erred by omitting an element.

The government does not contest that to convict someone under an aiding and abetting theory, the jury must find beyond a reasonable doubt that someone other than the defendant committed each element of the underlying offense.  GB42-43.  The district court did not instruct the jury as to this element.  This was error.

The government maintains that the district court did not err by omitting an essential element of an offense from its charge to the jury because the instructions "as a whole" stated the governing law and applicable standards.  GB43 (quoting *U.S. v. Wilson*, 605 F.3d 985, 1018 (D.C. Cir. 2010) (per curiam)).  But that is the standard for assessing whether the district court has erred by omitting supplemental

14

instructions or in its choice of language in particular instructions. *See Wilson*, 605 F.3d at 1018. The government has not pointed to any authority that this Court can find an omitted element of an offense hidden inside other language of the jury instructions. Nor can it. Omitting an essential element of the offense from the jury instructions is *per se* constitutional error, *U.S. v. Natale*, 719 F.3d 719, 733 (7th Cir. 2013), in "violation of due process." *U.S. v. Lopez*, 4 F.4th 706, 730 (9th Cir. 2021) (citing *U.S. v. Gaudin*, 515 U.S. 506, 509-10 (1995)).

Regardless, the district court erred even under the government's incorrect standard. "[A]s a whole," *Wilson*, 605 F.3d at 1018, it is obvious that the jury was not required to find that someone else committed every element of the underlying offense for Mr. Venkata to be convicted as an aider and abettor.

First, the elements of aiding and abetting about which the district court instructed were preceded by an instruction that said, "To find that the Defendant aided and abetted in committing a crime, you must find that . . . ." A0230. This is consistent with instructions on the elements of the substantive offenses. For each, the jury was given a list of elements

15

that it must find beyond a reasonable doubt to convict. A0227 (conspiracy); A0228 (theft); A0234 (wire fraud); A0237 (identify theft); and A0240 (destruction of records). The elements of those offenses were listed out for the jury—none of the elements were hidden in general instructions. *See id.* The jury, then, reasonably believed that it had no obligation to make any findings on issues not included on these lists.

The fact that the district court used the words "committed," "commission," and "crime" in passing did not sufficiently instruct the jury that it must find beyond a reasonable doubt that someone else committed each element of the underlying offense. *Contra* GB44-45. At best, these terms instructed the jury that an aider and abettor had to be connected with some nefarious conduct—but nothing in the instructions required the jury to find that the nefarious conduct in question satisfied each element of an underlying offense. Regardless, these words were used only in the description of aiding and abetting the theft charge, but not in the instruction for aiding and abetting wire fraud, A0236, or aiding and abetting aggravated identify theft, A0239.

16

Finally, it makes no difference that the district court separately instructed the jury that it must agree on "what property was stolen or knowingly converted." GB45. This was an instruction concerning which property was the object of Patel and Edwards's plan. It was not a requirement that the jury find beyond a reasonable doubt that the taking away of that property also satisfied every other element of the offense of theft of government property. Moreover, this argument obviously has no application to Mr. Venkata's charge for aiding and abetting wire fraud.

In a last-ditch effort, the government argues that the district court did not err because the Red Book did not require the district court to instruct the jury on the omitted element. GB45-46. The government refers to this element as "an optional supplemental" or "supplemental language," added only to "dispel any doubt that the aider and abettor may be convicted even if the principal is not." GB46. This blinks reality.

The Red Book's requirement is not optional. The Red Book provides that the element missing here "*should be given* in cases in which the principal offender is not on trial with the defendant." Criminal Jury Instructions for the District of Columbia ("Red Book") § 3.200, Comment

17

(emphasis added). "As several courts have recognized, context is the key to determining whether the term 'should' carries a mandatory or permissive meaning." *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 634 (D.D.C. 2018). The context here is plain. The government's own cited authority notes that it must "be established that the act constituting the offense was in fact committed by someone," before another can be convicted for aiding and abetting this offense. *Gray v. U.S.*, 260 F.2d 483, 484 (D.C. Cir. 1958) (quoting *Meredith v. U.S.*, 238 F.2d 535, 542 (4th Cir. 1956)). Given the mandatory nature of this element, the mandatory nature of this instruction cannot be doubted. Failing to instruct on this element was error.

### 2. The error was obvious.

"Generally an error is plain if it contradicts circuit or Supreme Court precedent." *U.S. v. Laureys*, 653 F.3d 27, 32 (D.C. Cir. 2011) (quoting *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009)). An error is also plain if it "violates an absolutely clear legal norm." *Sealed Case*, 573 F.3d at 851 (quotation marks omitted).

18

Here, the omitted element was an obvious error because it violated circuit precedent: "It is well established that there must be a guilty principal before a second party can be found to be an aider or abettor." *In re Nofziger*, 956 F.2d 287, 291 (D.C. Cir. 1992); *see also Raper*, 676 F.2d at 849 (citing *U.S. v. Staten*, 581 F.2d 87, 886 (D.C. Cir. 1978); *U.S. v. Cades*, 495 F.2d 1166, 1167 (3d Cir. 1974); *U.S. v. Barfield*, 447 F.2d 85, 89 (5th Cir. 1971); *U.S. v. Rodgers*, 419 F.2d 1315, 1317 (10th Cir. 1969)).

The government, however, ignores reality by arguing that the error is not clear because the "district court delivered the standard Red Book Instruction No. 3.200," and faults Mr. Venkata for not citing any authority calling a pattern jury instruction's "validity into question." GB47. According to the government, it is never an obvious error to deliver pattern jury instructions as written. GB47 (citing *U.S. v. Gooding*, No. 23-3177, 2024 WL 2132055, at \*2 (D.C. Cir. May 9, 2024) (per curiam) (unpublished); *U.S. v. Kepler*, 74 F.4th 1292, 1313 (10th Cir. 2023)). But this rule—assuming it is a rule at all—has no application here, where the district court did not properly deliver the model

19

instruction in its entirety. The use of incorrect Red Book language, therefore, cannot insulate the district court's error from correction.

Pattern jury instructions of the different federal courts show that the district court's instruction violated a "clear legal norm." *Sealed Case*, 573 F.3d at 851. These model jury instructions overwhelmingly include a requirement that a jury find that someone else committed every element of an underlying offense before it can find that a defendant aided and abetted the offense. *See* First Circuit Court of Appeals, *Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 4.18.02(a) ("First, that the crime of [insert charged crime] was actually committed by someone;"); Third Circuit Court of Appeals, Model Criminal Jury Table of Contents and Instructions § 7.02 (Jan. 2025) ("First: That (name of alleged principal) committed the offense(s) charged by committing each of the elements of the offense(s) charged"); Fifth Circuit Court of Appeals, *Pattern Jury Instructions (Criminal Cases)* § 2.04 (2024) ("First: That the offense of (list offense) was committed by some person"); Sixth Circuit Court of Appeals, *Pattern Criminal Jury Instructions* § 4.01 (May 1, 2025) ("First, that the crime of _____ was

20

committed"); Seventh Circuit Court of Appeals, *The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit* § 5.06(A) (2023) ("1. The crime of ____ was committed, as set forth on page ____ of these instructions."); Eighth Circuit Court of Appeals, *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* § 5.01 (2025) ("For you to find the defendant guilty of (insert principal offense) by reason of aiding and abetting, the [government] [prosecution] must prove beyond a reasonable doubt that all of the elements of (describe principal offense) were committed by some person or persons"); Ninth Circuit Court of Appeals, *Manual of Model Jury Instructions for the District Courts of the Ninth Circuit* § 4.1 (March 2026) ("First, someone else committed [specify crime charged]"); Tenth Circuit Court of Appeals, *Criminal Pattern Jury Instructions* § 2.06 ("First: every element of the charged crime [as outlined in Instruction ___] was committed by someone other than the defendant").

### 3. The district court's error affected Mr. Venkata's substantial rights.

Whether the district court's error affected Mr. Venkata's substantial rights is simply a question of prejudice. *U.S. v. Olano*, 507

U.S. 725, 734 (1993). Specifically, the question is whether the error "had an unfair prejudicial impact on the jury's deliberations." *U.S. v. Young*, 470 U.S. 1, 17 n.14 (1985). Here, there can be no doubt that the omission of an element in the aiding and abetting instruction prejudiced Mr. Venkata.

The jury obviously relied on the flawed instructions because Mr. Venkata was prosecuted as an aider and abettor to stealing from DHS-OIG and defrauding Agriculture-OIG. The government presented no evidence that Mr. Venkata was a principal actor in Edwards's scheme to steal from DHS-OIG and then defraud Agriculture-OIG. Indeed, the government has not argued that Mr. Venkata was not prejudiced because he could have been convicted as a principal or as a co-conspirator.

The special verdict form further clarifies that Mr. Venkata was convicted as an aider and abettor. It required the jury to agree on exactly which property it was convicting Mr. Venkata of stealing or converting. Supp.App.162. The jury concluded that Mr. Venkata was responsible for stealing or converting DHS-OIG's EDS (as well as its code and database files), USPS-OIG's case management system, the STARS database, and

22

the PARIS code, as well as the identifying information of DHS and USPS employees. Yet, the government only ever introduced evidence of Mr. Venkata personally possessing the USPS-OIG property. *See* A2328-29. The jury, then, necessarily convicted Mr. Venkata of aiding and abetting Edwards and Patel, who were the only two who stole or converted DHS—OIG property.

The government argues that Mr. Venkata was not prejudiced because "Edwards' and Patel's commission of the underlying offenses was not seriously disputed at trial," given that the jury heard that both Edwards and Patel pleaded guilty to crimes. GB48-49. But Edwards and Patel did not plead guilty to all crimes relevant here. Edward pleaded guilty to one count of conspiracy to commit theft, and one count of theft of government property and Patel pleaded guilty to one count of conspiracy to commit theft. GB03. Neither was even convicted of conspiring to defraud, let alone substantive wire fraud—a crime under which the government urged the jury to convict Mr. Venkata as an aider and abettor. *See* A2329.

23

The district court's failure to instruct created a lower standard of liability for Mr. Venkata—he could be convicted for aiding and abetting an offense even if the jury did not believe the offense was ever actually committed.  Mr. Venkata's convictions must be overturned.

Finally, the effect of this error cannot be considered in isolation. The prejudicial effect of this instruction cannot be separated from the error of denying his theory-of-defense instruction.  *See supra* Pt. I; *infra* Pt. III.

## III. THE CUMULATIVE ERRORS REQUIRE REVERSAL OF ALL COUNTS

The government asserts that even in light of the district court's egregious errors, this Court must still affirm Mr. Venkata's destruction of records conviction.  GB21 n.2.  Not so.  Mr. Venkata has consistently argued that the district court's errors require a new trial on all counts. OB23, OB46, OB47, OB52, OB71.  To avoid a new trial, the government must prove that the cumulative effect of the district court's multiple errors did not affect the jury's deliberation.  A new trial is required on all counts.

"[A]lthough certain errors standing alone might be insufficient to overturn a verdict, these errors may exert a cumulative effect such as to warrant reversal." *U.S. v. Brown*, 508 F.3d 1066, 1076 (D.C. Cir. 2007) (quoting *U.S v. Jones*, 482 F.2d 747, 749 n.2 (D.C. Cir. 1973)). When multiple "errors, in the context of the entire trial, were so severe as to have rendered his trial fundamentally unfair," the trial must be reversed. *U.S. v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011); *Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006) ("fundamentally unfair" trial must be reversed). "The critical inquiry is an analysis of the 'probable impact, appraised realistically, of the particular [errors] upon the jury's factfinding function.'" *Brown*, 508 F.3d at 1076 (quoting *Jones*, 482 F.2d at 749 n.2) (quotation marks omitted) (alteration in original)).

These errors necessarily infected the jury's deliberations as to Mr. Venkata's destruction of records charge. By permitting the jury to convict Mr. Venkata on a lower standard of proof without the benefit of his theory-of-defense instruction, the district court predisposed the jury to convict Mr. Venkata on his destruction of records charge. At a minimum, the government has not met its burden of showing that the

25

error did not have such an effect. All of Mr. Venkata's convictions must be vacated and his case remanded for a new trial.

## IV. THE GOVERNMENT DID NOT PROVE WIRE FRAUD

At a minimum, the court must vacate Mr. Venkata's fraud charge. The government has not pointed to any evidence (1) proving that the phone call was essential to Edwards's scheme, (2) proving that Edwards had an obligation to reveal his entire business model to Paradis, or (3) that it was material to Paradis that Edwards never consulted existing software while building his new program. A judgment of acquittal is required.

### A. Mr. Venkata's Sufficiency Arguments Are Reviewed De Novo

The government argues that two of Mr. Venkata's "specific objections" should be reviewed for plain error because they were not raised in the district court. Not so. Mr. Venkata raised a general objection to the sufficiency of the evidence on all counts before the district court. A1933 ("Your Honor, at this point we'd like to move for Rule 29, judgment of acquittal on all the separate counts. We'll move generally, and then I'll speak to the specifics."). This general motion "preserve[d]

26

the full range of challenges" to the sufficiency of the evidence on all counts. *U.S. v. Hammoude*, 51 F.3d 288, 291 (D.C. Cir. 1995).

### B.    The Interstate Wire Had No Connection to the Scheme

At brass tacks, this is a case of government overreach. The government charged Mr. Venkata with a federal felony offense with a twenty-year statutory maximum based on a single phone call from Edwards advising that he was running late. The government's attempt to label this courtesy call as a "step in the plot" falls flat and the Court should order a judgment of acquittal.

The government relies on *U.S. v. Reid*, 533 F.2d 1255, 1260 n.19 (D.C. Cir. 1976), to argue that the interstate wire requirement is essentially meaningless—asserting that the wire can be "relatively tenuous[ly]" connected to the fraudulent scheme to support a federal criminal charge. But *Reid* did not speak to the relationship necessary between the wire and the scheme to support a conviction. Indeed, the defendant in *Reid* never argued that the mailings in question were not in furtherance of the scheme. *Id.* at 1264 n.33.

27

The government may wish it so, but the interstate wire requirement is not meaningless, and the government must prove that the charged interstate wire was a "misuse of the instrumentality," *U.S. v. Alston*, 609 F.2d 531, 536 (D.C. Cir. 1979), and a "step in [the] plot," *Schmuck v. U.S.*, 489 U.S. 705, 711 (1989) (alteration in original).

But here, the government has not proven that the phone call was anything more than a "byproduct of th[e] scheme." *U.S. v. Phillips*, 704 F.3d 754, 763 (9th Cir. 2012). And that is not enough to sustain a wire fraud conviction. *Id.* Indeed, the government has no response to Mr. Venkata's argument that the phone call was entirely ancillary to Edwards's scheme because the scheme would have continued regardless of the phone call.

At best, the Edwards phone call was a "step in the plot" of the theft of government property charge. *Schmuck*, 489 U.S. at 711. But the phone call bears no connection to Edwards's plan to sell software to Agriculture-OIG. Such a weak link between the call and the scheme cannot support the weight of a serious wire fraud conviction. *See U.S. v.*

28

*Hartsel*, 199 F.3d 812, 818 (6th Cir. 1999); *U.S. v. Tavares*, 844 F.3d 46, 59 (1st Cir. 2016).

The Court's analysis is limited to this single phone call. The government indicted Mr. Venkata on this call. A0060-61. The government relied only on this call at trial and in its post-trial briefing. A2330; (ECF No.169 at 16-17). And the government never raised any other communication in its response brief. GB54-57. Nor could it. This Court can only affirm Mr. Venkata's wire fraud conviction based on a wire whose interstate nature was proved to the jury beyond a reasonable doubt. *See U.S. v. Scott*, 150 F.4th 580, 588 (D.C. Cir. 2025); *U.S. v. Izydore*, 167 F.3d 213, 220 (5th Cir. 1999) (reversing for lack of interstate nexus). Regardless, the government has waived any argument that Mr. Venkata's conviction could be sustained by evidence of other communications. *U.S. v. Johnson*, 519 F.3d 478, 489 (D.C. Cir. 2008).

It is "a manifest miscarriage of justice to let a conviction stand if the government failed to present any evidence on an essential element of the crime." *U.S. v. Spinner*, 152 F.3d 950, 956 (D.C. Cir. 1998). Mr. Venkata's wire fraud conviction, therefore, must be vacated even under

29

a plain error standard. Indeed, a wire fraud conviction premised on a single courtesy phone call is exactly the kind of case where the "evidence on a key element of the offense was so tenuous that a conviction would be shocking." *Id.* (quoting *U.S. v. Parker*, 133 F.3d 322, 328 (5th Cir. 1998)).

### C.    Everything Edwards Told Paradis Was True

The government's theory of fraudulent conduct hinged on a single omission by Edwards—Edwards never told Paradis that he was building the new software by consulting the existing DHS-OIG and USPS-OIG software. In closing, the government reminded the jury of the omission in question—"The *omission*: 'Did you tell Mr. Paradis that you were building this system on a foundation of EDS and PII?' 'No.'" A2330 (emphasis added). But the government never pointed to any evidence obligating Edwards to reveal this information. And the government does not contest that an omission cannot amount to a fraudulent misrepresentation when there is no obligation to reveal the omitted information. GB57-59.

30

Recognizing the flaw in its argument, the government now points to "misleadingly incomplete claims" that it says are fraudulent "half-truths," rather than omissions. GB57-58. Per the government, "the difference between a pure omission and a half-truth is the difference between a child not telling his parents he ate a whole cake and telling them he had dessert." GB58 (quoting *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024)). But in this hypothetical, there is an existing, special relationship between the parent and child. A child has an obligation to reveal that he ate a whole cake to his parents regardless of whether they ask. The government has conceded that no such relationship exists here.

There were no "half-truths" in this case. The government points to evidence that Edwards often explained to Paradis how the new software would work. Particularly, Edwards explained how the new program would be superior to DHS-OIG's and USPS-OIG's current software. The government introduced no evidence to indicate that any of these statements were untrue or even half-untrue. The government continues to assert that these statements obligated Edwards to inform Paradis

31

exactly how he was developing the new software. But why? The government has utterly failed to explain why this fact would be the "other half" to Edwards's statements to Paradis about the functionality of the new program. Indeed, these facts bear no resemblance to the government's cited authority where statements were found to be fraudulent half-truths. *See U.S. v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000) ("upbeat" statement that company was doing well was a fraudulent half-truth because it did not reveal variance in actual numbers).

The government cannot even maintain its new half-truth theory. After conclusively stating that Edwards's statements were half-truths, the government again asserts that Edwards's scheme was fraudulent because the "*omission*" was "misleading in context." GB59 (emphasis added). And the government's own cited authority acknowledges that "wire fraud can be premised on such an omission theory only if the defendant had a special 'trusting relationship' with the victim." *U.S v. Jesenik*, 152 F.4th 924, 938 (9th Cir. 2025) (quoting *U.S. v. Shields*, 844 F.3d 819, 823 (9th Cir. 2016)); GB57. Mr. Venkata, therefore, cannot be held liable for Edwards's actions because they were never fraudulent.

32

### D.    The Omission Was Not Material

The government now asserts that Edwards's omission was "material" because it was a "deceitful assurance[] of legality." GB61 (quoting *U.S. v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 972 (D.C. Cir. 1998)). But Edwards never made (and the government does not point to) any "assurance[] of legality," let alone a "deceitful" one. The government introduced no evidence that it was material to Paradis that Edwards never consult with existing software in building his new program. The Court's analysis could end here.

The government cites *Kousisis* for the idea that failing to inform one party of a lack of compliance with the law is necessarily a material omission. GB61 (citing *Kousisis v. U.S.*, 605 U.S. 114, 162 (2025) (Sotomayor, J., concurring)). But this ignores an elephant in the room. The defendants in *Kousisis* had affirmatively lied to the government about their compliance with terms of a fully executed contract—terms which created mutual obligations between the parties. This bears no resemblance to the facts here, where Edwards (and Mr. Venkata) were

prosecuted for Edwards failing to reveal the details of his production process without an obligation to do so. *See supra* Pt. IV.C.

The government continues to argue that Paradis would not have engaged in any negotiations with Edwards had he known that Edwards was building his software by consulting existing software. GB59-62. But this distorts Paradis's testimony. Paradis testified only that he would not have entered into any transaction where Edwards was selling him *stolen* goods. A1465. And the government's own citations reveal that Edwards never hid the fact that he was consulting existing software from Paradis. Edwards told Paradis he had "completely re-wrote investigations, hotline, admin, and subpoena." GB58 (quoting Supp.App.222). He told Paradis that he "*re*-wrote" the different aspects of the code. Obviously, then, Edwards was not hiding that he was consulting other software. Edwards told Paradis that his team "broke it apart, and each template we built back the way it's supposed to load." Supp.App.242. This was a conversation about the existing software and Edwards was explaining how his software was "exactly the same plus 25 percent more" because it was a better, newer version of the *existing*

34

programs.  Supp.App.242.  Paradis, therefore, knew all along that Edwards was consulting existing programs in building his own.  This clarifies that Paradis's testimony concerned only purchasing stolen goods, which was never at issue here.  Because the question of whether Edwards consulted other software was never material to Paradis, the government failed to present evidence of materiality, and it did not carry its burden to establish every element of the crime charged.  Mr. Venkata's fraud conviction must be vacated.  *Spinner*, 152 F.3d at 956.

35

## <u>CONCLUSION</u>

Mr. Venkata's trial was flawed in many ways. The district court refused a mandatory theory-of-case instruction and then failed to fully instruct on the theory of liability that underpinned Mr. Venkata's convictions. To top it all off, the government failed thrice over to introduce sufficient evidence of wire fraud. The cumulative weight of these errors requires vacating all of Mr. Venkata's convictions and remanding for a new trial. At a minimum, the Court should order a judgment of acquittal on Mr. Venkata's wire fraud count.

Respectfully submitted,

A. J. Kramer
Federal Public Defender


/s/
Matthew L. Farley
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500
Matthew_Farley@fd.org

36

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Reply Brief was prepared in Century Schoolbook 14-point proportionally spaced font and contains 6,497 words in compliance the type-volume limitations of Fed. R. App. P. 32(a)(7).

_____/s/_____
Matthew L. Farley
Assistant Federal Public Defender
